## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL,<br><br>Defendant | Civil Action No. 1:24-cv-03686<br><br>The Honorable Jennifer H. Rearden<br><br><u>CLASS ACTION</u> |
| PAUL HARTMANN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL,<br><br>Defendants. | Civil Action No. 1:24-cv-04662<br><br>The Honorable Jennifer H. Rearden<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE PENSION FUNDS'
MOTION FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   PRELIMINARY STATEMENT ......................................................................................... 1

II.  FACTUAL BACKGROUND............................................................................................. 2

III. ARGUMENT...................................................................................................................... 3

    A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED........................................................ 4

    B.   LEGAL STANDARD FOR LEAD PLAINTIFF APPOINTMENT.................................................... 6

    C.   THE PENSION FUNDS' MOTION IS TIMELY ...................................................................... 7

    D.   THE PENSION FUNDS HAVE THE LARGEST FINANCIAL INTEREST IN
        THE RELIEF SOUGHT BY THE CLASS AND ARE THUS THE PRESUMPTIVE
        LEAD PLAINTIFF ........................................................................................................ 7

    E.   THE PENSION FUNDS SATISFY RULE 23'S TYPICALITY AND ADEQUACY
        REQUIREMENTS........................................................................................................... 8

        1.   The Pension Funds' Claims Are Typical ................................................................. 9

        2.   The Pension Funds Are Adequate............................................................................ 9

        3.   The Pension Funds Are the Type of Lead Plaintiff Envisioned
            by the PSLRA ...................................................................................................... 10

    F.   THE COURT SHOULD APPROVE THE PENSION FUNDS' SELECTION OF
        COUNSEL .................................................................................................................. 12

IV.  CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) .................................................................................................6

*Bishop v. N.Y. City Dep't of Housing Pres. & Dev.*,
  141 F.R.D. 229 (S.D.N.Y. 1992) .................................................................................................9

*In re Braskem S.A. Sec. Litig.*,
  Nos. 15 Civ. 5132(PAE), 15 Civ. 5183(PAE),
  2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015) .............................................................................8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ..................................................................................................5

*Francisco v. Abengoa, S.A.*,
  No. 15 Civ. 6279 (ER), 2016 WL 3004664 (S.D.N.Y. May 24, 2016) ......................................8

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................................................7

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ......................................6

*Hom v. Vale, S.A.*,
  No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .....................................10

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) .................................................................................................9

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ......................................................................................................5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) .........................................................................................8

*Lax v. First Merchs. Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .....................................................7

*Lopez v. CTPartners Exec. Search Inc.*,
  No. 15 Civ. 1476(PAE), 2015 WL 2431484 (S.D.N.Y. May 18, 2015) ....................................9

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993)............................................................................................5

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
  2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017)..........................................................6, 7

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...............................................................................7

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................................7

*Snyder v. Bauzun Inc.*,
  No. 1:19-cv-11290 (ALC), 2020 WL 5439763 (S.D.N.Y. Sept. 8, 2020)...................7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................8

**Statutes**

15 U.S.C. § 78u-4 (a)(3)(B)(i) ............................................................................. *passim*

Securities Exchange Act of 1934 .............................................................................1, 5

**Other Authorities**

Fed. R. Civ. P. 23.................................................................................................. *passim*

Fed. R. Civ. P. 42(a) .................................................................................................1, 5

H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .......................10

Oklahoma Law Enforcement Retirement System ("OLERS"), Local 353, I.B.E.W. Pension Fund ("Local 353 PF"), and City of Pontiac Reestablished General Employees' Retirement System ("PGERS") (collectively, the "Pension Funds") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D of the Securities Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and Federal Rule of Civil Procedure 42 ("Rule 42"), for an order: (i) consolidating the above-captioned related securities class actions (the "Related Actions"); (ii) appointing the Pension Funds as Lead Plaintiff in the class action pending against Inari Medical, Inc. ("Inari" or the "Company"), William Hoffman ("Hoffman"), Andrew Hykes ("Hykes"), and Mitch C. Hill ("Hill") (collectively, the "Defendants"); (iii) approving their selection of Grant & Eisenhofer P.A. ("G&E") and Robbins Geller Rudman & Dowd LLP ("RGRD") as Lead Counsel for the class; and (iv) granting such other and further relief as the Court may deem just and proper.

## I.    PRELIMINARY STATEMENT

The complaints filed in the respective Related Actions assert that Inari and certain of its officers violated Sections 10(b) and 20(a) of the Exchange Act, 15. U.S.C. §§ 78j(b) an 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  These claims are asserted on behalf of all persons and entities, other than Defendants, who purchased or otherwise acquired Inari common stock between March 10, 2021 through February 28, 2024, inclusive (the "Class Period").

The Pension Funds – a group of sophisticated institutional investors that collectively oversee billions of dollars in assets and have extensive experience serving as lead plaintiff – respectfully submit that they should be appointed as Lead Plaintiff on behalf of purchasers and acquirers of Inari common stock during the Class Period.  The Pension Funds satisfy all prerequisites to be appointed as Lead Plaintiff.

1

## II.    FACTUAL BACKGROUND

As alleged in the complaints filed in the Related Actions, Inari is incorporated in Delaware and has principal executive offices in California.  ECF No. 1 at ¶ 17.[1]  Inari manufactures a variety of medical products including catheter-based mechanical thrombectomy devices and their accessories.  *Id.*  Inari's products are intended to improve outcomes for patients suffering from venous thromboembolism ("VTE"), a condition that occurs when a blood clot forms in a vein, and other vascular diseases such as chronic venous disease, small vessel thrombosis, arterial thromboembolism and chronic-limb-threatening ischemia.  *Id.* at ¶¶ 2, 17.  Inari's common stock trades on the NASDAQ under the ticker symbol "NARI."  *Id.* at ¶ 12.  Defendant Hoffman was Inari's President and Chief Executive Officer ("CEO") during the Class Period until January 1, 2023, at which point he was replaced by Defendant Hykes.  *Id.* at ¶ 13.  Defendant Hykes is currently Inari's President and CEO, as well as a member of the Board of Directors.  *Id.* at ¶ 14.  Defendant Hill was the Company's Chief Financial Officer during the Class Period.  *Id.* at ¶ 15.

The complaints filed in the Related Actions allege that throughout the Class Period, Defendants made materially false and misleading statements and omitted to disclose material information regarding Inari's revenues and expenses.  *Id.* at ¶ 18.  In particular, Defendants consistently stated that Inari had achieved "record revenue" driven by "the strength in [its] core VTE business," yet omitted to disclose that a substantial portion of the Company's expenses were used to improperly compensate health care professionals for using Inari's products in violation of the federal Anti-Kickback Statute ("AKS") and Civil False Claims Act.  *Id.* As the complaints

---

[1] References to "ECF No. 1" are to the first-filed complaint captioned, *Michiana Area Elec. Workers' Pension Fund v. Inari Medical, Inc.*, No. 1:24-cv-03686-JHR (S.D.N.Y.).  For ease, unless otherwise indicated, we have cited only to the complaint filed in the *Michiana* action; however, as indicated, the allegations in the *Hartmann* complaint overlap considerably.

allege, the AKS prohibits the exchange, or offer to exchange, anything of value in an effort to induce or reward the referral of business reimbursable by federal health care programs. *Id.* at ¶ 19. Meanwhile, the False Claims Act makes it unlawful to submit, or cause to be submitted, claims for payment to federal health care programs that are known to be false or fraudulent. *Id.* Inari's business practices were therefore unsustainable as a result of Defendants violating these statutes. *Id.* at ¶ 20.

The truth was revealed to investors on February 28, 2024, when, after market hours, Inari reported its financial results on Form 10-K for its fiscal year ending December 31, 2023. *Id.* at ¶ 54. The Form 10-K disclosed that Inari had received a civil investigative demand from the U.S. Department of Justice, Civil Division in connection with an investigation under the AKS and False Claims Act, requesting information and documents pertaining to meals and consulting service payments provided to health care professionals. *Id.* Analysts swiftly reacted to these announcements, with Piper Sandler downgrading Inari from overweight to neutral and lowering its price target from $85 per share to $55 per share. *Id.* at ¶ 57. As a result of this news, Inari's stock price dropped $17.44 per share over the subsequent trading days from a closing price of $58.26 per share on February 28, 2024 to a closing price of $40.82 per share on March 5, 2024, representing a decline of nearly 30%. *Id.* at ¶ 58.

## III.    ARGUMENT

The PSLRA sets forth a three-step process for the appointment of a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). Under the PSLRA, the Court is required to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who can make a prima facie showing of the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Funds have

incurred significant recoverable losses in connection with their purchases of Inari common stock during both of the class periods alleged in the Related Actions.  Because the Pension Funds have good reason to believe that they possess the largest financial interest in the Related Actions, they are the "most adequate plaintiff."

The Pension Funds also satisfy Rule 23's requirements because their claims are typical of those of the class, and they will fairly and adequately represent the interests of the class.  The Pension Funds are sophisticated institutional investors with a substantial financial interest in the pending litigation and have significant experience supervising and monitoring outside counsel. The Pension Funds understand the PSLRA's requirements for serving as Lead Plaintiff and are fully prepared to vigorously advocate to achieve the most desirable outcome for all class members.

The Pension Funds' selection of G&E and RGRD as Lead Counsel further underscores their adequacy.  As discussed in Section III.F, *infra*, G&E and RGRD are preeminent plaintiffs' firms nationally recognized for recovering billions of dollars on behalf of defrauded investors in an array of complex securities class actions.  This Court should grant the Pension Funds' motion for appointment as Lead Plaintiff and approve their selection of G&E and RGRD as Lead Counsel.

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Two related securities class actions have been filed in this Court: *Michiana Area Elec. Workers' Pension Fund v. Inari Medical, Inc.*, No. 1:24-cv-03686-JHR (S.D.N.Y.) (the "*Michiana* Action" and the Complaint filed therein at ECF No. 1, the "*Michiana* Compl.") and *Hartmann v. Inari Medical, Inc.*, No. 1:24-cv-04662-JHR (S.D.N.Y.) (the "*Hartmann* Action" and the Complaint filed therein at ECF No. 1, the "*Hartmann* Compl.").  Aside from the fact that the *Hartmann* Compl. alleges a longer Class Period, i.e., March 10, 2021 through February 28, 2024, inclusive (¶ 1), than the *Michiana* Compl., which alleges a Class Period beginning on February 24, 2022 and ending on February 28, 2024, inclusive (¶ 1), the Related Actions are substantially

4

similar and should therefore be consolidated. First, the nature of the fraud is identical in the Related Actions – that is, both the *Hartmann* and *Michiana* Actions allege that Defendants defrauded investors when they stated that Inari's revenue growth and expansion was attributed to marketing and sales activities, when, in actuality, the Company's financial success was due to improper bribes and illegal payments made to healthcare providers in violation of federal law. *See Michiana* Compl. at ¶¶ 6, 18; *Hartmann* Compl. at ¶¶ 3, 6. Second, the Related Actions challenge many of the same false and misleading statements. *Compare Michiana* Compl. at ¶ 22 (challenging as false and misleading Defendant Hoffman's February 23, 2022 statement that Inari's "fourth quarter was again successful and productive") *with Hartmann* Compl. at ¶ 51 (same); *Compare Michiana* Compl. at ¶ 47 (challenging as false and misleading Defendant Hykes' November 1, 2023 statement that "Revenue in Q3 was $126.4 million, up 31% year-over-year . . .") *with Hartmann* Compl. at ¶ 83 (same). Third, the Related Actions contain the same exact corrective disclosure, i.e., the February 28, 2024 news that Defendants had received a civil investigative demand in December 2023 from the U.S. Department of Justice "requesting information primarily related to meals and consulting service payments provided to healthcare professionals." *Michiana* Compl. at ¶ 54; *Hartmann* Compl. at ¶ 85.

Where, as here, the actions involve common questions of law or fact, consolidation of the related actions is appropriate. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). The PSLRA provides that if "'more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed,'" the court must decide the motion for consolidation before appointing lead plaintiff. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting 15 U.S.C. § 78u-4(a)(3)(A)(ii)).

"Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). *See also In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions with different class periods).

The Related Actions were both: (i) filed in this District; (ii) are pending before the same judge; and (iii) assert the same wrongdoing. For these reasons, and the reasons discussed above, the *Michiana* Action and the *Hartmann* Action should be consolidated. *See Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation is "particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports") (internal quotations omitted).

### B. LEGAL STANDARD FOR LEAD PLAINTIFF APPOINTMENT

The PSLRA requires courts to consider motions filed on behalf of individuals or entities seeking to be appointed lead plaintiff of a class action in response to a published notice of class action by the later of (i) 60 days after the date of publication or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017).

### C.   THE PENSION FUNDS' MOTION IS TIMELY

On May 13, 2024, statutory notice was published alerting investors that a class action lawsuit had been filed against Inari and the Individual Defendants and of the right to move the Court to be appointed as lead plaintiff by July 12, 2024.  *See* Declaration of Daniel L. Berger ("Berger Decl."), Ex. C.  Because the Pension Funds' motion for appointment as Lead Plaintiff has been filed by the statutory deadline, the Pension Funds are eligible for appointment as Lead Plaintiff.  *Snyder v. Bauzun Inc.*, No. 1:19-cv-11290 (ALC), 2020 WL 5439763, at *3 (S.D.N.Y. Sept. 8, 2020).

### D.   THE PENSION FUNDS HAVE THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS AND ARE THUS THE PRESUMPTIVE LEAD PLAINTIFF

The Pension Funds should be appointed Lead Plaintiff in this Action because they are the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also ZTO Express*, 2017 WL 5256769, at *1. Here, to their knowledge, the Pension Funds have the largest financial interest in the relief sought by the class.  Under the PSLRA, movants' financial interests "in the relief sought by the class" are the most significant factors in determining who is the "most adequate" lead plaintiff.  *See id.*; *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011).

Courts in this District use the "*Olsten-Lax*" factors to assess which lead plaintiff movant has the most substantial financial interest.  *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  The *Olsten-Lax* factors, or, the "'(1) the total number of shares purchased during the class

period; (2) the [number of] net shares purchased during the class period . . .; (3) the [total] net funds expended during the class period . . .; and (4) the approximate losses suffered,'" are readily satisfied here. *Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 WL 3004664, at *4-5 (S.D.N.Y. May 24, 2016). The fourth factor – the magnitude of the loss suffered – is widely recognized as the most determinative factor. *Id.* (citing *In re Braskem S.A. Sec. Litig.*, Nos. 15 Civ. 5132(PAE), 15 Civ. 5183(PAE), 2015 WL 5244735, at *4 (S.D.N.Y. Sept. 8, 2015)). To the best of the Pension Funds' knowledge, no other investor has suffered greater losses. *See* Berger Decl., Ex. B (Combo Loss Chart).

| Fund | Total Number of Shares Purchased | Net Number of Shares Purchased | Net Funds Expended | LIFO Losses |
|---|---|---|---|---|
| OLERS | 7,409 | 6,322 | $550,757 | $272,993 |
| PGERS | 14,150 | 1,477 | $256,219 | $185,352 |
| Local 353 | 19,706 | 13,863 | $1,015,026 | $419,145 |
| **Total** | **41,265** | **21,662** | **$1,822,002** | **$877,491** |

To the Pension Funds' knowledge, no other plaintiff has a larger financial interest in the relief sought by the class than that of the Pension Funds. *See* Berger Decl., Ex. A.

### E. THE PENSION FUNDS SATISFY RULE 23'S TYPICALITY AND ADEQUACY REQUIREMENTS

In addition to possessing a significant financial interest, a lead plaintiff movant must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff appointment stage, the presumptive lead plaintiff need only make a "preliminary showing of typicality and adequacy" pursuant to Rule 23. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003)).

### 1.      The Pension Funds' Claims Are Typical

Rule 23(a) requires a lead plaintiff movant to establish that its claims are typical of those of the class.  Typicality is satisfied "where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ. 1476(PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (internal quotations omitted).  Claims need not be identical to satisfy the typicality requirement; indeed, "'the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Housing Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

The Pension Funds' claims are typical of the proposed class.  Like all other class members, the Pension Funds: (i) purchased Inari common stock during the Class Period; (ii) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (iii) were damaged as a result.  For these reasons, the Pension Funds satisfy the typicality requirement of Rule 23.

### 2.      The Pension Funds Are Adequate

The Pension Funds also satisfy the adequacy requirement of Rule 23.  Rule 23(a)(4) provides that a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In determining whether a movant is adequate, courts consider whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."

*Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at \*6 (S.D.N.Y. Mar. 7, 2016) (internal citation omitted).

The Pension Funds satisfy these elements. The Pension Funds are qualified, experienced, and able to conduct the litigation. The Pension Funds' interests are aligned with those of the other class members and are not antagonistic in any way. Additionally, because the Pension Funds incurred substantial financial losses as a result of Defendants' misrepresentations and omissions, they have an interest in vigorously prosecuting the action on behalf of the class.

### 3.   The Pension Funds Are the Type of Lead Plaintiff Envisioned by the PSLRA

The Pension Funds are sophisticated fiduciaries that collectively oversee billions of dollars in assets for their members and beneficiaries. The Pension Funds are precisely the type of institutional investors that Congress sought to encourage to participate in securities class actions through the enactment of the PSLRA. *See* H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). The Pension Funds also have prior experience serving as lead plaintiffs and as class representatives in securities class actions. For example, OLERS served as lead plaintiff in *Logan v. ProPetro Holding Corp.*, No. 7:19-cv-00217 (W.D. Tex.) (recovering $30 million for the class); *Santore v. Ixia*, No. 2:13-cv-08440 (C.D. Cal.) ($3.5 million recovery); *Northumberland Cnty. Ret. Sys. v. GMX Resources Inc.*, No. 5:11-cv-00520 (W.D. OK.) ($2.7 million recovery); *Ross v. Career Educ. Corp.*, No. 1:12-cv-00276 (N.D. Ill.) ($27.5 million recovery) and is currently serving as lead plaintiff in *Martin v. BioXcel Therapeutics, Inc.*, No. 3:23-cv-00915 (D. Conn.); *Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings, Inc.*, No. 1:22-cv-08971 (S.D.N.Y.); and *Lee v. Goldman Sachs Grp., Inc.*,

10

No. 1:22-cv-00169 (S.D.N.Y.).  Local 353 PF is currently serving as lead plaintiff as part of small cohesive groups in *In re Eargo, Inc. Sec. Litig.*, No. 3:21-cv-08597 (N.D. Cal.) and *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 3:22-cv-03023 (N.D. Cal.); and PGERS served as lead plaintiff in *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162 (W.D. Ark.) ($160 million recovery); *Azar v. Grubhub Inc.*, No. 1:19-cv-07665 (N.D. Ill.) ($42 million recovery) and is currently serving as lead plaintiff as part of a small group in *Ohio Carpenters Pension Fund v. Norfolk S. Corp.*, No. 1:21-cv-04068 (S.DN.Y.).

As set forth in greater detail in the Joint Declaration submitted herewith (*see* Berger Decl., Ex. D), the Pension Funds fully understand the obligations of a lead plaintiff to absent class members under the PSLRA and are willing and able to undertake the responsibilities of lead plaintiff in this litigation to ensure vigorous and efficient prosecution.  The Pension Funds' collaboration in this litigation follows from their roles as fiduciaries to their respective members, their shared goals and interests in maximizing fund assets, and their previous experience serving as representative plaintiffs as part of small groups in securities litigation.  Moreover, before filing this motion, representatives of the Pension Funds discussed, among other things, the lead plaintiff process, the merits of the claims and the status of the litigation, and the Pension Funds' plans and strategy for the joint prosecution of this action and directing counsel.  *See id*.  Thus, the Pension Funds have demonstrated their incentive and commitment to vigorously prosecute this case in a cohesive and coordinated fashion, and the ability to supervise and monitor counsel.

11

F.    THE COURT SHOULD APPROVE THE PENSION FUNDS' SELECTION OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel to represent the class, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Pension Funds have selected G&E and RGRD to serve as lead counsel in this case.[2]

G&E is among the preeminent securities class action law firms in the country and has served as lead or co-lead counsel in several complex securities fraud actions. G&E has recovered and collected billions of dollars for shareholders, including as lead counsel in some of the largest securities class actions in history such as: *In re Tyco Int'l Ltd. Sec. Litig.*, No. 02-cv-1335 (D.N.H.) ($3.2 billion recovery); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-9866 (S.D.N.Y.) ($486 million recovery); *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02-cv-910 (S.D.N.Y.) ($448 million recovery); *In re Marsh & McLennan Cos. Sec. Litig.*, MDL No. 1744 (S.D.N.Y.) ($400 million recovery); *In re Refco, Inc., Sec. Litig.*, No. 05-cv-8626 (S.D.N.Y.) ($367 million recovery); *In re GM Corp. Sec. Litig.*, MDL No. 1749 (E.D. Mich.) ($303 million recovery); *In re Oxford Health Plans, Inc., Sec. Litig.*, MDL No. 1222 (S.D.N.Y.) ($300 million recovery); and *In re Safety-Kleen Corp. Bondholders Litig.*, No. 00-cv-1145-17 (D.S.C.) ($276 million recovery).

RGRD, a 200-attorney nationwide law firm with offices in New York and several other states, specializes in complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts in this district and throughout the country have noted RGRD's reputation for excellence, which has resulted in the appointment of RGRD attorneys to lead roles in hundreds of complex class action

---

[2] For a detailed description of G&E and RGRD's track records, resources, and attorneys, please see https://www.gelaw.com/ and https://www.rgrdlaw.com. Electronic or paper versions of the Firms' resumes are available upon the Court's request, if preferred.

securities cases. *See e.g.*, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.) (Concerning RGRD's role as lead counsel in recovering $1.025 billion for the class in a securities case, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [RGRD]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783-LAP (S.D.N.Y.) (Concerning RGRD's role as lead counsel in recovering $272 million for the class of MBS purchasers, stating: "Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement," and acknowledging "plaintiffs' counsel's success in the Second Circuit essentially changing the law. I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute. . . . Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job."). RGRD's extensive experience serving as lead counsel in securities class actions supports appointment here.[3]

Moreover, G&E and RGRD have a history of successfully prosecuting securities fraud class actions together, including having recently recovered $47 million on behalf of injured

---

[3] *See, e.g.*, *In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Fund v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

investors in *Deka Investment GMBH v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-02129-K (N.D. Tex.).

Based upon G&E and RGRD's experience and track record as counsel in securities class actions, the Pension Funds' selection of lead counsel is reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request that this Court consolidate the Related Actions, grant their motion for Lead Plaintiff, and approve their choice of counsel as Lead Counsel for the class.

Dated: New York, New York
July 12, 2024

Respectfully submitted,

/s/ Daniel L. Berger
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com

/s/ Samuel H. Rudman
Samuel H. Rudman
David A. Rosenfeld
**ROBBINS GELLER RUDMAN & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Tel.: (631) 367-7100
Fax: (631) 367-1173
Email: srudman@rgrdlaw.com
Email: drosenfeld@rgrdlaw.com

*Proposed Lead Counsel for Proposed Lead Plaintiff*

14

**ASHERKELLY**
Michael J. Asher
Jacqueline A. Kelly
Cynthia J. Billings-Dunn
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Tel.: (248) 746-2710
Email: masher@asherkellylaw.com
Email: jkelly@asherkellylaw.com
Email: cbdunn@asherkellylaw.com

*Additional Counsel*

15