# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL, <br><br> Defendants. | Civ. A. No. 1:24-cv-03686 (JHR) (JW) |
| PAUL HARTMANN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL, <br><br> Defendants. | Civ. A. No. 1:24-cv-04662 (JHR) (JW) |

**MOVANT PAUL HARTMANN'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    Mr. Hartmann Is the Most Adequate Plaintiff and the Presumptive Lead Plaintiff ........... 3

    A.    Mr. Hartmann Has the Largest Financial Interest of any Lead Plaintiff Movant Under All Relevant Factors ......................................................................... 3

    B.    Mr. Hartmann Has Made the Required Showing That He Is Qualified Under Rule 23 ................................................................................................................ 5

II.    Lawyer-Driven Groups Are Disfavored Because They Are Not in the Best Interests of the Class and Contravene the Intent of the PSLRA ........................................ 7

    A.    The Group Members Had No Pre-Litigation Relationship, and the Group Was Created by Its Lawyers (Factors 1 and 5) ........................................................ 7

    B.    The Group Has Had De Minimis Involvement in the Related Actions and Its Purported Plans for Cooperation are Deficient (Factors 2 and 3)...................... 8

    C.    Institutional Investor Status Alone Cannot Salvage a Lawyer-Driven Group (Factor 4) ............................................................................................... 11

    D.    The Group's Asserted Losses Cannot Be Credited Because OLERS Did Not Submit Its Transactions with Its Certification. ............................................ 12

    E.    The Group's Two Co-Lead Counsel and Additional Counsel Structure is Wasteful and Inefficient.................................................................................... 13

III.    Conclusion ........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berdeaux v. OneCoin Ltd.*,
  No. 19 Civ. 4074 (VEC), 2019 WL 3815147 (S.D.N.Y. July 11, 2019) ................................... 14

*Cohen v. Luckin Coffee Inc.*,
  No. 1:20 Civ. 01293 (LJL), 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ............................... 8

*Feierstein v. Correvio Pharma Corp.*,
  No. 19 Civ. 11361 (VEC), 2020 WL 946230 (S.D.N.Y. Feb. 25, 2020) .................................. 14

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017) ................................................................................. 7, 11

*Goldenberg v. NeoGenomics, Inc.*,
  No. 22 Civ. 10314 (JHR), 2023 WL 6389101 (S.D.N.Y Oct. 2, 2023) ......................... 3, 4, 5, 6

*Gronich v. Omega Healthcare Inv'rs, Inc.*,
  No. 17 Civ. 9024 (NRB), 2018 WL 1626078 (S.D.N.Y. Mar. 27, 2018) .................................. 5

*Hom v. Vale, S.A.*,
  No. 1:15 Civ. 9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ................................... 4

*In re Allergan PLC Sec. Litig.*,
  No. 18 Civ. 12089 (CM)(GWG), 2020 WL 5796763 (S.D.N.Y. Sept 29, 2020) .................... 14

*In re Bear Stearns Co. Inc. Deriv., & ERISA Litig.*,
  No. 08 M.D.L. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ............................................... 4

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ..................................................................................... 4

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y.1998) ...................................................................................... 3, 4

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ................................................................................. 8, 11

*Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*,
  No. 15 Civ. 3599 (KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ........................ 7, 8, 9

*Jakobsen v. Aphria, Inc.*,
  No. 18 Civ. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ............................. 10

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................. 4

*Karp v. Diebold Nixdorf Inc.*,
   No. 19 Civ. 6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .................................. 13

*Khunt v. Alibaba Grp. Holding Ltd.*,
   No. 15 Civ. 0759 (CM), 2015 WL 1954134 (S.D.N.Y. May 1, 2015)...................................... 7

*Lax v. First Merch. Acceptance Corp.*,
   No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)................................................. 3, 4

*Logan v. QRx Pharma Ltd.*,
   No. 15 Civ. 4868 (PAE), 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015).................................. 5

*Osorio-Franco v. Spectrum Pharm. Inc.*,
   No. 22 Civ. 10292 (VEC), 2023 WL 2586909 (S.D.N.Y. Mar. 21, 2023)................................. 7

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .................................................................................. 9

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18 Civ. 12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) .............................. 13

*Rodriguez v. Draftkings, Inc.*,
   No. 21 Civ. 05739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)............................... 13

*Varghese v. China Shenguo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................... 3, 4, 7, 8

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................... 1, 2, 6

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 1, 5, 6

Fed. R. Civ. P. 42 .................................................................................................... 1

Presently pending before the Court in the above captioned related actions (the "Related Actions") are two competing motions for lead plaintiff appointment (ECF Nos. 13, 18)[1] under the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).[2]

The PSLRA establishes a presumption that the plaintiff "most capable of adequately representing the interests of class members" is the movant that has the "largest financial interest" in the relief sought by the Class and that "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Paul Hartmann ("Mr. Hartmann") has made the required showing that he is qualified under Rule 23, and that he has the largest financial interest of any of the lead plaintiff movants during the Class Period,[3] as set forth in the chart below:

| Lead Plaintiff Movant | Asserted Losses |
| --- | --- |
| Mr. Hartmann | **$716,873** |
| Oklahoma Law Enforcement Retirement System ("OLERS") | **$272,993** |
| City of Pontiac Reestablished General Employees' Retirement System ("PGERS") | **$185,352** |
| Local 353, I.B.E.W., Pension Fund ("Local 353") | **$419,145** |

---

[1] A third motion was filed on behalf of Arvin Nazeradeh-Yazdi. ECF No. 16. On July 26, 2024, Mr. Nazeradeh-Yazdi filed a notice of non-opposition to the competing motions. ECF No. 21.

[2] Citations to "ECF No. __" refer to docket entries in the first-filed action, *Michiana Area Electrical Workers' Pension Fund v. Inari Medical, Inc., et al.*, No. 24 Civ. 03686 (JHR). Each of the pending motions support consolidation of the Related Actions under Rule 42 of the Federal Rules of Civil Procedure. ECF Nos. 13, 16, 18. Accordingly, the Court may grant the motions to consolidate because they are unopposed.

[3] Both the Group and Mr. Hartmann utilized the longest possible class period (March 10, 2021 through February 28, 2024) in their opening briefs to determine their respective financial interests for purposes of appointing a lead plaintiff for the Related Actions. ECF Nos. 14, at 2-3, 19 at 1.

1

Accordingly, under the PSLRA, Mr. Hartmann is the "most adequate plaintiff" and the presumptive lead plaintiff, and his motion should be granted.

Three unrelated investors, OLERS, PGERS, and Local 353, have banded together and moved for lead plaintiff as a group (the "Group"). ECF No. 18. However, as shown above, none individually asserts a greater financial interest than Mr. Hartmann.  For this reason alone, the Group's motion should be denied.  Moreover, the Court should not permit the Group to aggregate their respective losses for purposes of determining which investor has the largest financial interest because its members have no prior relationship with one another, the Group was cobbled together by counsel in a transparent effort to manufacture the largest financial interest in the Related Actions, and the Group lacks the ability to function cohesively and to effectively manage the litigation apart from its lawyers.  Such a structure is not in the best interests of the class in the Related Actions and is contrary to the purposes of the PSLRA to avoid lawyer-driven litigation. Accordingly, the Court should follow the numerous authorities outlined below that have rejected groups of unrelated investors from serving as lead plaintiff.

Moreover, even assuming, *arguendo*, that the Court permits the members of the Group to aggregate their individual losses (which it should not given the facts here), the losses asserted by OLERS cannot be credited.  OLERS failed to submit its transactions in Inari common stock with its sworn certification which is required by the PSLRA, calling into question both the validity of its asserted financial interest and its adequacy to serve as lead plaintiff for the Related Actions. *See* 15 U.S.C. § 78u–4(a)(2)(A)(iv) (stating plaintiff's certification shall set "forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint").  Moreover, that the Group's three members and its three law firms carelessly overlooked such a fundamental defect in the Group's lead plaintiff application—

2

and still have not corrected it—raises serious questions about both the Group's adequacy and its ability to effectively function in the best interests of the class. After deducting OLERS' unsubstantiated financial interest, the Group's losses are $604,497, which is substantially less than Mr. Hartmann's losses of $716,873.

Finally, the Group, which proposes a two co-lead law firm and additional counsel structure, has failed to show that a three law firm structure to litigate the Related Actions would serve the best interests of the class. A three-lead plaintiff group of unrelated investors led by three law firms is a bloated, wasteful and inefficient structure that will inevitably be controlled by the lawyers who created it, rather than by the lead plaintiffs as the PSLRA requires, and will result in unnecessary expenses and duplication of effort. The Group's proposal for a three law firm structure is not aligned with the best interests of the class and should be rejected.

For the reasons outlined above and explained further below, Mr. Hartmann is the "most adequate plaintiff" and the presumptive lead plaintiff under the PSLRA. His motion should be granted and all competing motions should be denied.

## I.    Mr. Hartmann Is the Most Adequate Plaintiff and the Presumptive Lead Plaintiff

### A.    Mr. Hartmann Has the Largest Financial Interest of any Lead Plaintiff Movant Under All Relevant Factors

Courts in this District rely on the factors derived from *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), to determine which lead plaintiff-movant has the largest financial interest. *See Goldenberg v. NeoGenomics, Inc.*, No. 22 Civ. 10314 (JHR), 2023 WL 6389101, at *3 (S.D.N.Y Oct. 2, 2023) (Rearden, J.); *Varghese v. China Shenguo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2008). The *Lax/Olsten* factors are: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the

3

class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. *See Goldenberg*, 2023 WL 6389101, at *3; *Varghese*, 589 F. Supp. 2d at 395 (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

As noted above, both Mr. Hartmann and the Group defined the "Class Period" in their opening briefs as March 10, 2021 through February 28, 2024, which is consistent with the authority in this District that the "lead plaintiff analysis should utilize the most inclusive class period" when initial complaints allege multiple periods. *In re Bear Stearns Co. Inc. Deriv., & ERISA Litig.*, No. 08 M.D.L. 1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009); *Hom v. Vale, S.A.*, No. 1:15 Civ. 9539 (GHW), 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (colleting cases); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) ("I find that the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members . . .").

As set forth in the chart below, Mr. Hartmann has a significantly greater financial interest under all *Lax/Olsten* factors than the individual members of the Group during the Class Period (March 10, 2021 through February 28, 2024). Mr. Hartmann has a significantly larger loss ($716,873) than each individual member of the Group ($272,993, $185,352, and $419,145, respectively). Mr. Hartmann purchased significantly more total shares (99,327) and net-shares (19,287) during the Class Period than each individual member of the Group (as well as more than double the total shares of the three members combined), and has significantly greater net-expenditures ($1,545,897) than each individual member of the Group.

| Movant | Total Shares | Net Shares | Net Expenditures | Loss |
|---|---|---|---|---|
| **Mr. Hartmann** | 99,327 | 19,287 | $1,545,897 | $716,873 |
| **OLERS** | 7,409 | 6,322 | $550,757 | $272,993 |
| **PGERS** | 14,150 | 1,477 | $256,219 | $185,352 |
| **Local 353** | 19,706 | 13,863 | $1,015,026 | $419,145 |

**B.**    **Mr. Hartmann Has Made the Required Showing That He Is Qualified Under Rule 23**

Mr. Hartmann satisfies Rule 23's typicality and adequacy requirements. Mr. Hartmann has demonstrated his willingness to serve as and assume the responsibilities of a lead plaintiff, and he has filed one of the Related Actions. *See* ECF Nos. 15-3 (Mr. Hartmann's sworn certification pursuant to the Private Securities Litigation Reform Act of 1995, dated June 17, 2024), 15-6 (Declaration of Paul Hartmann, dated July 11, 2024); *Hartmann* Action, ECF No. 1. At this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Goldenberg*, 2023 WL 6389101, at *3; *Gronich v. Omega Healthcare Inv'rs, Inc.*, No. 17 Civ. 9024 (NRB), 2018 WL 1626078, at *3 (S.D.N.Y. Mar. 27, 2018).

The typicality requirement of Rule 23(a) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *See Goldenberg*, 2023 WL 6389101, at *4. The claims asserted by Mr. Hartmann are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. He purchased Inari common stock, as did each member of the proposed class, at prices artificially inflated by Defendants' allegedly false and misleading statements and was damaged thereby. *See Goldenberg*, 2023 WL 6389101, at *4 (finding typicality requirement met where movants' claims and injuries arose from same conduct from which other class members' claims and injuries arose); *Logan v. QRx Pharma Ltd.*, No. 15 Civ.

5

4868 (PAE), 2015 WL 5334024, at \*3 (S.D.N.Y. Sept. 14, 2015) (same).  Thus, Mr. Hartmann satisfies the typicality requirement of Rule 23(a).

As to adequacy, under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  A lead plaintiff is adequate when: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Goldenberg*, 2023 WL 6389101, at \*4. Here, Mr. Hartmann's interests are aligned with the members of the proposed class, and there is no evidence of any antagonism between Mr. Hartmann's interests and those of the class.  As detailed above and in his motion, Mr. Hartmann's claims raise similar questions of law and fact as claims of the members of the class, and his claims are typical of the members of the class. Moreover, he has selected Kaplan Fox & Kilsheimer LLP, a firm with significant experience in litigating securities class actions, as his counsel.  *See* ECF No. 15-5 (Kaplan Fox firm resume).

Accordingly, Mr. Hartmann is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, he has the largest financial interest and is qualified under Rule 23.

Mr. Hartmann's status as the presumptively most adequate plaintiff may be rebutted only upon **proof** by a member of the purported class that he "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render [Mr. Hartmann] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists. Mr. Hartmann should therefore be appointed lead plaintiff for the Related Actions.

**II.     Lawyer-Driven Groups Are Disfavored Because They Are Not in the Best Interests of the Class and Contravene the Intent of the PSLRA**

The Group is a lawyer-driven artifice of unrelated plaintiffs that were cobbled together by their respective lawyers in an effort to manufacture the "largest financial interest." There is no evidence that the members of the Group chose counsel, rather than vice versa. To allow an aggregation of unrelated plaintiffs to serve as lead plaintiff defeats the purpose of choosing a lead plaintiff under the PSLRA and should be rejected.

The majority view among courts within the Second Circuit is that a necessary prerequisite to showing that a proposed group would best serve the class is whether it has the ability to function cohesively and to effectively manage the litigation apart from lawyers. *See Varghese*, 589 F. Supp. 2d at 392; *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 494 (D. Conn. 2017); *Khunt v. Alibaba Grp. Holding Ltd.*, No. 15 Civ. 0759 (CM), 2015 WL 1954134, at *7 (S.D.N.Y. May 1, 2015); *Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*, No. 15 Civ. 3599 (KMW), 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015).

Group-lead plaintiff applicants have the burden of demonstrating that their appointment is in the best interests of the class, considering whether the Group has: (1) a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *See Varghese*, 589 F. Supp 3d at 392; *Osorio-Franco v. Spectrum Pharm. Inc.*, No. 22 Civ. 10292 (VEC), 2023 WL 2586909, at *1 (S.D.N.Y. Mar. 21, 2023) (citing *Varghese*, 589 F. Supp. 2d at 392); *Teva*, 302 F. Supp. 3d at 494 (same). The Group's motion does not come close to meeting its burden.

**A.   The Group Members Had No Pre-Litigation Relationship, and the Group Was Created by Its Lawyers (Factors 1 and 5)**

The Group's Joint Declaration (the "Group Declaration," (ECF No. 20-4)) provides no

7

indication of a pre-existing relationship among any of its members or that the members have any experience working together.  Courts in this District have declined to aggregate groups of investors with little to no pre-litigation relationship. *See Int'l Union of Operating Engineers*, 2015 WL 7018024, at *3 (declining to aggregate group of unrelated investors whose only pre-litigation connection was membership in professional organization); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (finding that group of institutional investors with no prior relationship beyond common membership in certain professional organizations failed to establish meaningful pre-existing relationship for purposes of loss aggregation).   Further, the Group Declaration indicates that its members were introduced to each other by counsel.  ECF No. 20-4.  Specifically, the Group Declaration states that members of the Group "expressed an interest ***to their respective counsel***" in forming a group, in effect, admitting that the members of the Group had no pre-litigation relationship and that the Group's lawyers contrived it for purposes of aggregating their losses. ECF No. 20-4, ¶¶6, 8. (Emphasis added).

These facts show that the Group's three law firms, not the Group members, created the Group and would control the action if appointed, which contravenes the purpose of the PSLRA. *See Cohen v. Luckin Coffee Inc.*, No. 1:20 Civ. 01293 (LJL), 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (rejecting group with no pre-existing relationship that did not know each other before counsel introduced them); *Varghese*, at 392-93 (collecting cases denying proposed motions for lead plaintiff where the proposed group was assembled as makeshift by attorneys for purpose of amassing aggregation of investors purported to have greatest financial interest in action). These factors weigh against appointment of the Group.

**B.    The Group Has Had De Minimis Involvement in the Related Actions and Its Purported Plans for Cooperation are Deficient (Factors 2 and 3)**

The Group has provided a few conclusory and boilerplate statements that its members have

8

a "shared perspective" (ECF No. 20-4, ¶8), and that its members are "motivated to recover the significant losses" they incurred—generic assertions that any member of the class could make. ECF No. 20-4, ¶5.  There is no evidence demonstrating that the members of the Group have any substantive plans for cooperation or how these three unrelated entities scattered across North America (Oklahoma, Michigan and Canada) would cooperate in decision-making and act as a cohesive group. Despite not knowing each other, as evidenced by their statement that they "received each other's contact information" (ECF No. 20-4, ¶8), the Group members baldly assert that "we anticipate arriving at joint decisions consensually." ECF No. 20-4, ¶8. The Group Declaration states that the members "conferred about our leadership and oversight of this litigation," but provide no details regarding when or how they conferred or whether they conferred directly or through their respective counsel. ECF No. 20-4, ¶8.  Importantly, the members of the Group have neither indicated how they would proceed in the event that their respective decision-makers disagree, nor explained the division of authority and responsibility among its three law firms.  This may create an untenable decision making process that may not adequately protect class members.

The Group's conclusory assertions "are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *Int'l Union of Operating Engineers*, 2015 WL 7018024, at *4; *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation.");

9

*Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019). In *Jakobsen*, the Court found that the assertion in the group's joint declaration that the group "discussed further on a conference call the respective responsibilities of counsel and the lead plaintiff, including a protocol for maintaining in regular contact with each other and with counsel to ensure that the group incorporates an effective and efficient method of decision-making during the course of the litigation" to be "vague" and "conclusory," and rejected the group. *Id*. This Court should find the same here, where the Group Declaration's assertions relating to the Group's plans for cooperation are far more threadbare.

In an attempt to provide a reason for the Group's formation, the three members attest that they joined forces because they determined "they could maximize the Class's recovery by combining their experience and jointly seeking appointment as Lead Plaintiff." ECF No. 20-4, ¶6. Far from providing a cohesive plan for representation in the best interests of the class, this assertion suggests that none of the three members believes it can provide adequate representation on its own.

Moreover, in a tell-tale sign of lawyer-driven litigation, rather than operating as a cohesive unit and developing a means and process to oversee and monitor counsel's work, which is required by a lead plaintiff, the Group has delegated this responsibility to counsel: "[w]e have directed the Firms to prosecute this case in the most efficient manner possible and without any duplication of services." ECF No. 20-4, ¶9. Further, there is no indication that the Group members have resolved any potential discrepancies regarding fees in their separate retainer agreements among the Group's three law firms. This further demonstrates a lack of evidence of cohesion and that, if the Court were to appoint the Group to serve as lead plaintiff, the litigation would be controlled by the Group's lawyers.

Accordingly, these factors weigh against appointing the Group.

10

**C.**      **Institutional Investor Status Alone Cannot Salvage a Lawyer-Driven Group (Factor 4)**

While the Group asserts that it is comprised of sophisticated institutional investors (ECF 19 at 1), courts have determined that this fact alone is not enough to overcome the drawbacks from unrelated groups of investors serving as lead plaintiff. In *In re Petrobras Securities Litigation*, 104 F. Supp. 3d 618, 622-23 (S.D.N.Y. 2015), the court rejected a group comprised of three sophisticated state retirement systems represented by two law firms with "no obvious affinity between the states" and "no prior relationship . . . beyond common membership in certain professional organizations." 104 F. Supp. 3d at 622; *see also Teva*, 302 F. Supp. 3d at 493. There is no evidence in the Group Declaration that justifies the proposed three-plaintiff group as lead plaintiff for the Related Actions, particularly given the lack of any pre-existing relationship. Accordingly, the Group's members' purported status as institutional investors is insufficient to overcome all of the deficiencies in its application.

Moreover, while each member of the Group purports to be an institutional investor, the Group ignores that appointing three unrelated lead plaintiffs for the Related Actions will result in inefficiencies and wasteful duplication. For example, if the Court appoints three lead plaintiffs, each member of the Group would have to collect and produce documents, respond to defendants' written discovery, and prepare for and sit for at least three depositions.

Finally, while the Group identifies actions in which its members are serving as members of "small cohesive groups," the appointment of the groups in these actions was either unopposed or by stipulation, and therefore should be accorded little to no weight. *See Ohio Carpenters Pension Fund v. Norfolk S. Corp.*, No. 1:23 Civ. 04068 (S.D.N.Y.), ECF No. 95 (unopposed group motion); *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 3:22 Civ. 03023 (N.D. Cal.), ECF No. 42 (unopposed group motion); *In re Eargo, Inc. Sec. Litig.*, No. 3:21

11

Civ. 08597 (N.D. Cal.), ECF No. 35 (stipulation appointing group formed after lead plaintiff motion-filing deadline); *see also Martin v. BioXcel Therapeutics, Inc.*, No. 3:23 Civ. 00915 (D. Conn.), ECF No. 79 (group appointed after lead plaintiff motion-filing deadline at suggestion of court); *Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings, Inc.*, No. 1:22 Civ. 08971 (S.D.N.Y.), ECF No. 22 (group motion unopposed); *Lee v. Goldman Sachs Grp., Inc.*, No. 1:22 Civ. 00169 (S.D.N.Y.), ECF No. 33 (group motion for "Discovery" action unopposed); *Azar v. Grubhub Inc.*, No. 1:19 Civ. 07665 (N.D. Ill.), ECF No. 21 (group motion unopposed); *Logan v. ProPetro Holding Corp.*, No. 7:19 Civ. 00217 (W.D. Tex.), ECF No. 42 (group motion unopposed); *Santore v. Ixia*, No. 2:13 Civ. 08440 (C.D. Cal.), ECF No. 40 (group motion unopposed); *Ross v. Career Educ. Corp.*, No. 1:12 Civ. 00276 (N.D. Ill.), ECF No. 30 (group motions resolved by stipulation); *Northumberland Cnty. Ret. Sys. v. GMX Resources Inc.*, No. 5:11 Civ. 00520 (W.D. Ok.), ECF No. 94 (group motion unopposed).

For these reasons, the Group has failed to meet its burden under all of the factors considered by courts within the Second Circuit and therefore the Court should reject the artificial grouping for purposes of determining the largest financial interest.

**D.     The Group's Asserted Losses Cannot Be Credited Because OLERS Did Not Submit Its Transactions with Its Certification.**

Even assuming, *arguendo*, that the Court accepts the lawyer-driven Group, collectively, the Group's asserted losses are less than Mr. Hartmann's losses.  Here, OLERS failed to provide its transactions in its PSLRA certification, which was signed under oath, ECF No. 20-1, at 4-5, and its losses should not be credited. After discarding OLERS' unsubstantiated losses, the Group's financial interest is $604,497, which is less than Mr. Hartmann's losses of $716,873.

Furthermore, OLERS' careless error in failing to provide its transactions with its PSLRA certification calls into doubt OLERS' adequacy to serve as lead plaintiff and the ability of this

12

unwieldy lawyer-driven group to function effectively and cohesively.  Indeed, in the two weeks since the Group's defective filing, the Group and its lawyers have neither provided an explanation for the Group's failure nor attempted to correct it.  Courts in this District have disqualified lead plaintiff movants on adequacy grounds due to "significant errors and inconsistencies" in their motion papers. *Rodriguez v. Draftkings, Inc.*, No. 21 Civ. 05739 (PAE), 2021 WL 5282006, at *5, 9-10 (S.D.N.Y. Nov. 12, 2021) (finding lead plaintiff movant's careless errors in PSLRA certification weigh heavily against movant's appointment as lead plaintiff); *see also Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (finding that errors in lead plaintiff movant's PSLRA certification "speak[s] to a level of carelessness" and causes doubt as to whether the movant possesses the necessary adequacy and sophistication to be lead plaintiff); *Karp v. Diebold Nixdorf Inc.*, No. 19 Civ. 6180 (LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (finding that error in movant's PSLRA certification and lapse in time correcting the error "indicat[ed] to the Court a 'certain carelessness about detail that undermines the adequacy' of the [movant] as lead plaintiff…"). Here, OLERS' error is more serious and disqualifying because it failed to submit proof of its financial interest with its certification.[4]

**E.      The Group's Two Co-Lead Counsel and Additional Counsel Structure is Wasteful and Inefficient**

Conspicuously missing from the Group's motion is any stated justification for a two firm co-lead counsel and additional counsel structure for the Related Actions. The Group provides no information regarding why the appointment of two law firms as co-lead counsel and a third

---

[4] Any post-motion effort by OLERS to correct its error would be insufficient to rehabilitate its defective motion, and heavily weighs against OLERS' adequacy to serve as lead plaintiff for the Related Actions. *See Rodriguez,* 2021 WL 5282006 at *9 (disqualifying lead plaintiff movant who filed inaccurate PSLRA certification even after movant submitted "corrected" PSLRA certification fixing its errors).

additional counsel is necessary, or even beneficial, and how responsibilities would be divided to avoid duplication or minimize unnecessary costs.

Absent compelling or unique circumstances (none of which are present in the Related Actions), courts in the Second Circuit disfavor multiple law firms in class litigation because such structures lead to wasteful expenses and duplication, none of which is in the best interests of a class. *See, e.g., In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG), 2020 WL 5796763, at \*4-\*6 (S.D.N.Y. Sept 29, 2020) (rejecting co-lead counsel due to tendency of multiple firms to "inflate legal fees"); *Feierstein v. Correvio Pharma Corp.*, No. 19 Civ. 11361 (VEC), 2020 WL 946230, at \*2 (S.D.N.Y. Feb. 25, 2020) (rejecting the appointment of two law firms because the movant "has not explained why two law firms are necessary to litigate this action"); *Berdeaux v. OneCoin Ltd.*, No. 19 Civ. 4074 (VEC), 2019 WL 3815147, at \*1 (S.D.N.Y. July 11, 2019) (rejecting group motion and two co-lead law firm proposal because motion did not explain why the retention of two law firms is appropriate and necessary to adequately represent the putative class, and noting court was "keen on avoiding duplicative work in litigating this case, particularly as it bears on the approval of any class-wide settlement that provides for attorneys' fees, costs, and expenses."). Accordingly, the Court should not saddle the class with such a structure because it is not in the best interests of the class.

## III.    Conclusion

For the reasons set forth in his motion and set forth above, Mr. Hartmann respectfully requests that the Court grant his motion and deny all competing motions.

Dated:  July 26, 2024                    Respectfully submitted,

                                         /s/   *Jeffrey P. Campisi*
                                         Jeffrey P. Campisi
                                         Pamela Mayer
                                         Brandon Fox

14

**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
jcampisi@kaplanfox.com
pmayer@kaplanfox.com
bfox@kaplanfox.com

*Attorneys for Movant Paul Hartmann and Proposed
Lead Counsel for the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey P. Campisi, hereby certify that, on July 26, 2024, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/      Jeffrey P. Campisi*
Jeffrey P. Campisi
