**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff <br><br> v. <br><br> INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL, <br><br> Defendant | Civil Action No. 1:24-cv-03686 <br><br> The Honorable Jennifer H. Rearden <br><br> <u>CLASS ACTION</u> |
| PAUL HARTMANN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL, <br><br> Defendants. | Civil Action No.: 24-4662 <br><br> The Honorable Jennifer H. Rearden <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PENSION FUNDS'**
**MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF**
**<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   ARGUMENT................................................................................................................ 1

    A.    The Pension Funds Are a Proper "Group" Under the PSLRA ...................................... 1

        1.    Courts in the Second Circuit Routinely Reject Attempts to Restrict Groups
            to Only Those with a Pre-Litigation Relationship .................................................2

        2.    The Pension Funds' Cohesion Is Evidenced by Their Declaration which
            Outlines Their Plans for Cooperation and Advocacy..............................................3

        3.    Appointing the Pension Funds as Lead Plaintiff Is Aligned with the
            PSLRA's Preference that Institutional Investors Oversee Securities
            Litigation ................................................................................................................6

    B.    Mr. Hartmann Has Not Rebutted the Presumption that the Pension Funds Are the
        Most Adequate Lead Plaintiff ................................................................................... 7

    C.    Mr. Hartmann Cannot Satisfy Rule 23's Typicality Requirement ................................ 9

III.  CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batter v. Hecla Mining Co.*,
No. 19-CV-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...............................9

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) .......................................................................................10

*Born v. Quad/Graphics, Inc.*,
No. 19-CV-10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ..................................10

*Brady v. Top Ships Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018) ..................................................................................4

*Cohen v. Luckin Coffee Inc.*,
No. 1:20-CV-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...............................3

*Crass v. Yalla Grp. Ltd.*,
No. 21 CIV. 6854 (PAE), 2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021)..................................4

*Cushman v. Fortress Biotech, Inc.*,
No. 20-CV-5767(KAM)(RLM), 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021)............. *passim*

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................................2

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................................7

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)....................................................................................6

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)...........................................................................................6

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)................................................................................1, 4

*Hansen v. Ferrellgas Partners, L.P.*,
No. 16-CV-7840 (RJS), 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017) ..................................4, 8

*Huang v. Airmedia Group, Inc.*,
No. 1:15-CV-4966 (ALC), 2015 WL 10846763 (S.D.N.Y. Nov. 10, 2015) ............................8

*Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*,
   No. 15 Civ. 3599 (KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ...........................3, 5

*Jakobsen v. Aphria, Inc.*,
   No. 18 Civ. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ..............................5

*Juliar v. Sunopta Inc.*,
   No. 08 CIV. 1070 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) .................................6

*Karp v. Diebold Nixdorf Inc.*,
   No. 19 Civ. 6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................................8

*Labul v. XPO Logistics, Inc.*,
   No. 3:18-CV-2062 (VLB), 2019 WL 1450271 (D. Conn. Apr. 2, 2019) .................................7

*Lavin v. Virgin Galactic Holdings, Inc.*,
   No. 21-CV-3070 (ARR) (TAM), 2021 WL 5409798 (E.D.N.Y. Sept. 17,
   2021) .................................................................................................................................4, 7

*Malasky v. IAC/Interactivecorp*,
   No. 04 CIV 7447 (RJH), 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004).................................6

*May v. Barclays PLC*,
   No. 23-CV-2583 (LJL), 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) .............................2, 3

*Okaro v. Icahn Enterprises L.P.*,
   No. 1:23-CV-21773-KMM, 2023 WL 8101048 (S.D. Fla. Nov. 20, 2023) ............................8

*Omdahl v. Farfetch Ltd.*,
   No. 19-CV-8657 (AJN), 2020 WL 3072291 (S.D.N.Y. June 10, 2020) .................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................................7

*Pack v. LuxUrban Hotels Inc.*,
   No. 24 CIV. 1030 (PAE), 2024 WL 3046258 (S.D.N.Y. June 18, 2024) ...............................2

*In re Paysafe Ltd. Sec. Litig.*,
   No. 21-CV-10611 (ER) (KHP), 2024 WL 1636415 (S.D.N.Y. Apr. 16, 2024)....................2, 4

*Peneycad v. RTX Corp.*,
   No. 3:23-CV-1035(JAM), 2024 WL 1932632 (D. Conn. May 2, 2024)........................ *passim*

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015).................................................................................3, 6

iii

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................................5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................7

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18 Civ. 12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ..............................9

*Reimer v. Ambac Fin. Grp., Inc.*,
   No. 08 CIV. 1273(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008)...................................6

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)...............................................................................9

*Rodriguez v. Draftkings, Inc.*,
   No. 21 Civ. 05739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ..........................9, 10

*In re Sequans Commc'ns S.A. Sec. Litig.*,
   289 F. Supp. 3d 416 (E.D.N.Y. 2018) .............................................................................2

*In re Sesen Bio, Inc. Sec. Litig.*,
   No. 21 CIV. 7025 (AKH), 2022 WL 3996712 (S.D.N.Y. Sept. 1, 2022)...............................3

*Silverberg v. Dryships, Inc.*,
   No. 17CV4547SJFARL, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ..............................8

*Simmons v. Spencer*,
   No. 13-cv-8216 (RWS), 2014 WL 1678987 (S.D.N.Y. Apr. 25, 2014)..................................3

*In re SLM Corp. Sec. Litig.*,
   No. 08-cv-1029, 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ..............................................8

*Stoopler v. Direxion Shares ETF Tr.*,
   No. 09 CIV. 8011 RJH, 2010 WL 3199679 (S.D.N.Y. Aug. 12, 2010) .................................10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   No. 20-CV-8585 (LJL), 2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) .....................................7

*Vale v. McGuinn*,
   No. 09 CIV. 3807 (RMB), 2009 WL 3297490 (S.D.N.Y. Oct. 13, 2009)...............................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................3, 4

**Statutes**

15 U.S.C. §78u-4 .......................................................................................... *passim*

iv

**Other Authorities**

Fed. R. Civ. P. 23.............................................................................................................1, 10

## I.    PRELIMINARY STATEMENT

The Pension Funds[1] are the presumptive "most adequate plaintiff" pursuant to the PSLRA. They: (i) are a permissible "group" as demonstrated by their joint declaration evincing their desire to work together, cohesiveness, and extensive lead plaintiff experience; (ii) have the greatest financial interest having sustained a LIFO loss of *$877,491*, which is approximately *$160,000 greater* than the loss Paul Hartmann claims; and (iii) readily satisfy Rule 23's typicality and adequacy requirements because their claims arise from the same course of events as the claims of all other class members and their interests are aligned with the interests of other class members.

Knowing this, Mr. Hartmann asks this Court to toss aside decades of jurisprudence and to ignore the text of the PSLRA, and deem the Pension Funds an impermissible group whose losses must be disaggregated simply because they do not have a pre-existing relationship.  Indeed, all of his challenges to the Pension Funds' adequacy are speculative and fall far short of the "exacting proof" mandated by the PSLRA.  Mr. Hartmann's arguments are nothing more than a last-ditch effort to remain a lead plaintiff candidate despite his ineligibility for the PSLRA's presumption due to his smaller financial interest and failure to satisfy Rule 23's typicality requirement given his atypical trading which subjects him to unique defenses.  Because the Pension Funds are a permissible group under the PSLRA and because they have the largest financial interest in the actions, they are the presumptive lead plaintiff and should be appointed lead plaintiff for the class.

## II.    ARGUMENT

### A.    THE PENSION FUNDS ARE A PROPER "GROUP" UNDER THE PSLRA

The PSLRA creates a rebuttable presumption that the "person or group of persons" with the greatest financial interest in the litigation is the "most adequate plaintiff." *Goldstein v. Puda*

---

[1] The Pension Funds are: Oklahoma Law Enforcement Retirement System ("OLERS"), Local 353, I.B.E.W. Pension Fund ("Local 353 PF"), and City of Pontiac Reestablished General Employees' Retirement System ("PGERS").

*Coal, Inc.*, 827 F. Supp. 2d 348, 353 (S.D.N.Y. 2011). The text of the statute explicitly instructs that a *group* may be afforded the presumption of lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Funds – a group of three sophisticated institutional investors that oversee billions of dollars in assets and have extensive experience leading classes of investors in securities class actions – indisputably constitute a permissible group under the PSLRA. And because the Pension Funds have the greatest financial interest in the actions with a LIFO loss of $877,491, they are the presumptive lead plaintiff under the PSLRA.

### 1.    Courts in the Second Circuit Routinely Reject Attempts to Restrict Groups to Only Those with a Pre-Litigation Relationship

Mr. Hartmann argues that the Pension Funds should not be recognized as a permissible group because they lack a prelitigation relationship, were "cobbled together" by their lawyers, and are unable to demonstrate their cohesion. Opp. Br.[2] at 2, 7. But because the PSLRA lacks this restrictive language, courts regularly hold that "the lack of a pre-litigation relationship is not fatal to a group's attempt to be appointed lead plaintiff." *Peneycad v. RTX Corp.*, No. 3:23-CV-1035(JAM), 2024 WL 1932632, at *7 (D. Conn. May 2, 2024) (internal quotations and citation omitted). *See also In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 424 (E.D.N.Y. 2018) ("It is not the case that where there are co-lead plaintiffs there must be some pre-existing, pre-litigation relationship."). Indeed, the "majority view" is that "unrelated investors may aggregate." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005); *see also Pack v. LuxUrban Hotels Inc.*, No. 24 CIV. 1030 (PAE), 2024 WL 3046258, at *3, *6 (S.D.N.Y. June 18, 2024) (appointing group of unrelated investors as lead plaintiff); *In re Paysafe Ltd. Sec. Litig.*, No. 21-CV-10611 (ER) (KHP), 2024 WL 1636415, at *7 (S.D.N.Y. Apr. 16, 2024) (same); *May v.*

---

[2] References to "Opp. Br." are to Movant Paul Hartmann's Memorandum of Law in Further Support of His Motion for Consolidation of the Related Actions, Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel, and in Opposition to Competing Motions at ECF 23.

*Barclays PLC*, No. 23-CV-2583 (LJL), 2023 WL 5950689, at \*19 (S.D.N.Y. Sept. 13, 2023) (same); *In re Sesen Bio, Inc. Sec. Litig.*, No. 21 CIV. 7025 (AKH), 2022 WL 3996712, at \*3 (S.D.N.Y. Sept. 1, 2022) (same).[3]

In fact, small groups of institutional investors—even when they are previously unrelated––are "presumptively cohesive." *Simmons v. Spencer*, No. 13-cv-8216 (RWS), 2014 WL 1678987, at \*5 (S.D.N.Y. Apr. 25, 2014). One court has even suggested that "a group of diverse investors who did not know each other previously *could be in a better position to represent a large and diverse class of investors than one investor would be*." *Cushman v. Fortress Biotech, Inc.*, No. 20-CV-5767(KAM)(RLM), 2021 WL 1526172, at \*2 (E.D.N.Y. Apr. 19, 2021). Consequently, Hartmann's fixation on the nature of the relationship between the Pension Funds is misplaced.

### 2.    The Pension Funds' Cohesion Is Evidenced by Their Declaration which Outlines Their Plans for Cooperation and Advocacy

The Pension Funds' Joint Declaration demonstrates their ability and desire to work cohesively to prosecute the actions on behalf of the class. *See* ECF 20-4. Nevertheless, Mr. Hartmann falsely asserts that the Joint Declaration: (i) fails to justify having a "three-plaintiff group as lead plaintiff;" (ii) is "threadbare" and "boilerplate;" and (iii) does not provide any substantive plans for cooperation. Opp. Br. at 8-9. These arguments are unavailing.

---

[3] The cases Mr. Hartmann cites in his attempt to cast the Pension Funds as a lawyer-created group are distinguishable. In *Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*, No. 15 Civ. 3599 (KMW), 2015 WL 7018024, at \*3 (S.D.N.Y. Nov. 12, 2015), the investor group was disqualified because it was assembled by its lawyers. *See infra* n.5 for further analysis. In *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015), the court declined to appoint the group because it was "subject to various unique defenses regarding its trading patterns and public statements." In *Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at \*5 (S.D.N.Y. June 12, 2020), the group was a "random assemblage" of five investors that provided no information about their sophistication or dispute resolution mechanisms. In *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, the group provided no proof of its "ability to work together" and did "not inform the Court whether its members have ever communicated with each other or plan to do so in the future, or if they are even aware of each other's existence." 589 F. Supp. 2d. at 394, 392 (S.D.N.Y. 2008). Conversely, here, the Pension Funds have provided evidence of their (i) sophistication; (ii) decision to work together; (iii) meeting in which they discussed plans for overseeing the litigation; and (iv) plans to communicate in the future. *See* Joint Declaration at ECF 20-4.

Courts use the following *Varghese* factors to assess whether a group can function cohesively: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392.  On balance, these factors weigh in favor of appointing the Pension Funds as lead plaintiff.

Decades of jurisprudence instruct that joint declarations which outline an investor group's ability to work cooperatively, understanding of their fiduciary obligations, and their "preparedness to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated" are sufficient to demonstrate that a group is cohesive and permissible under the PSLRA.  *See, e.g.*, *Paysafe*, 2024 WL 1636415, at *3-4 (finding unrelated group cohesive where its members attested that "they fully understand the Lead Plaintiff's responsibilities and obligations to the class" and appointing group as lead plaintiff); *Crass v. Yalla Grp. Ltd.*, No. 21 CIV. 6854 (PAE), 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021); *Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840 (RJS), 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017), at *4; *Goldstein*, 827 F. Supp. 2d at 357.[4]  Indeed, a joint declaration containing just a "*relatively boilerplate recitation of a conference call*," and which discusses the "background of the litigation," and "reasons for seeking joint appointment," can support a finding of cohesion.  *Peneycad*, 2024 WL 1932632, at *8.

---

[4] *See also Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070 (ARR) (TAM), 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021); *Cushman*, 2021 WL 1526172, at *2-3; *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 347 (E.D.N.Y. 2018) (group of three unrelated individuals was permissible despite that their "declaration f[ell] short of some more detailed submissions demonstrating plans for joint case management," because the "declaration and the group's subsequent briefing demonstrate[d] that the group [was] sufficiently cohesive" so there was no reason to "depart[] from the presumption in favor of the group with the largest financial interest.").

4

The Pension Funds' Joint Declaration is more than sufficient to demonstrate their cohesion. The Pension Funds have attested that they "conferred about [their] leadership and oversight of this litigation" and that they "will coordinate with each other to exercise joint decision-making on matters pertaining to this litigation as appropriate." ECF 20-4, ¶ 8, ¶ 9. Declarations such as these are routinely found sufficient in this Circuit.[5]

Finally, Mr. Hartmann speculates as to how the Pension Funds will be able to cooperate given that they are "scattered" across North America. Opp. Br. at 9. This is nonsensical. Today's technology defies geographical limitations, and these funds all operate in the same hemisphere. "Time difference will not hinder their ability to communicate." *Cushman*, 2021 WL 7449182, at *2, *3 (rejecting geographic differences as a valid challenge to a group's cohesiveness and stating: "The court does not doubt that, in this era, two people will be able to remain in contact with each other, despite the fact that they may not live near each other.").[6]

---

[5] The cases Mr. Hartmann cites in an attempt to cast the Pension Funds' Joint Declaration as conclusory are off base. In *FXCM Inc*, 2015 WL 7018024, at *4, movants did not proffer any evidence to suggest that the group was formed independent of counsel. In *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, one group member did not actually own the securities at issue and thus did not have standing. 275 F.R.D. 187, 191 (S.D.N.Y. 2011). After disaggregating that member's losses from the group's, the group no longer had the greatest financial interest. *Id.* In *Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3-4 (S.D.N.Y. Mar. 27, 2019), the joint declaration did not explain the group members' "business expertise" or "history of monitoring or participating in the litigation." Here, the Joint Declaration is far more robust and demonstrative of the Pension Funds' cohesion than those in the foregoing cases. The Pension Funds have declared that they themselves, not their counsel, were the ones who expressed an interest in collaborating with each other; the members each state their respective business titles, *see, e.g.*, Joint Declaration, ECF 20-4 at ¶ 2 ("I, Duane Michael, am the Executive Director of OLERS"); and their experience participating in litigation, *see, e.g.*, *id.* ¶ 3 ("Local 353 PF has prior experience serving as lead plaintiff").

[6] Mr. Hartmann's argument "there is no indication that the Group members have resolved any potential discrepancies regarding fees in their separate retainer agreements among the Group's three law firms" (Opp. Br. at 10) is yet another conclusory assertion that should not be afforded any weight by this Court.

### 3. Appointing the Pension Funds as Lead Plaintiff Is Aligned with the PSLRA's Preference that Institutional Investors Oversee Securities Litigation

It is well-settled that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447 (RJH), 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (collecting cases). This preference "has even led courts to appoint an institutional investor with a slightly smaller financial interest than another lead plaintiff movant who was an individual investor." *Peneycad*, 2024 WL 1932632, at *6. Indeed, courts consider the sophistication factor to weigh in favor of grouping when the group consists of institutional investors with significant assets under management and "track records of successfully serving in lead plaintiff groups under the PSLRA." *Id.* at *9 (citation omitted).

Courts in this district regularly appoint groups of institutional investors as lead plaintiff in furtherance of Congress's goal of encouraging institutional investor involvement in class actions. *See, e.g.*, *Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing group of two institutional investors to serve as lead plaintiff and noting that there is a "presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs."); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 1273(NRB), 2008 WL 2073931, at *5 (S.D.N.Y. May 9, 2008) (appointing group of three institutional investors to serve as lead plaintiff).[7]

---

[7] Mr. Hartmann leans on *Petrobras* and *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017) to argue that institutional investor status does not *ipso facto* outrank individual investor status. Opp. Br. at 11. But in neither case did the court appoint an individual investor over an institutional investor. Additionally, in *Petrobras*, the court held that the group was not cohesive because of the following facts which are not present here: (i) the group's financial interest in the litigation was convoluted as the three retirement systems had 19 different member funds that invested in Petrobras securities; (ii) one group member had a "hands-off attitude;" and (iii) that same member was subject to unique defenses regarding its trading patterns. 104 F. Supp. 3d at 623. *Teva* is also inapt because there, the court was concerned that the action would be lawyer-controlled given that the investor group failed to explain how its members "were introduced to each other." 302 F. Supp. 3d at 494.

6

**B.**     **MR. HARTMANN HAS NOT REBUTTED THE PRESUMPTION THAT THE PENSION FUNDS ARE THE MOST ADEQUATE LEAD PLAINTIFF**

After the lead plaintiff presumption attaches, as it has here, "the competing movants are given the opportunity to rebut the presumption." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 413 (S.D.N.Y. 2004). The "presumption may be rebutted only upon *proof* by a member of the purported plaintiff class that the presumptively most adequate plaintiff" is atypical or inadequate. *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

Mr. Hartmann has offered not even a shred of the "exacting proof" required under the PSLRA to rebut the presumption that the Pension Funds are the most adequate lead plaintiff. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012). Instead, he advances specious arguments that appointing unrelated movants will inevitably result in "inefficiencies and wasteful duplication." Opp. Br. at 11. Courts routinely reject these types of speculative arguments. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-CV-8585 (LJL), 2021 WL 148752, at *5 (S.D.N.Y. Jan. 15, 2021) ("courts have made clear, however, that mere speculation is insufficient to rebut the presumption of adequacy"); *Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *9 (D. Conn. Apr. 2, 2019) ("Proof of inadequacy, and not merely speculation, is required to rebut the presumption of most adequate plaintiff.").[8] Additionally, Mr. Hartmann's concerns about having multiple law firms represent the class are unfounded as courts routinely appoint co-lead counsel. *See, e.g.*, *Omdahl v. Farfetch Ltd.*, No. 19-CV-8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020); *Lavin,* 2021 WL 5409798, at *8.

---

[8] In some cases, a co-lead plaintiff structure has been found to "help to ensure that adequate resources and experience are available to the prospective class in the prosecution of the action." *Pirelli*, 229 F.R.D. at 420. Indeed, in *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998), this court stated that "multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiffs' counsel."

7

Unable to adduce any proof that disqualifies the Pension Funds from lead plaintiff appointment, Mr. Hartmann seizes on a good faith, inadvertent error made by counsel. Specifically, in the course of filing the Berger Declaration (ECF 20) in support of the Pension Funds' motion for lead plaintiff, Schedule A was inadvertently omitted from OLERS's Certification. *See* Supplemental Declaration of Caitlin M. Moyna, ECF 25 ("Moyna Decl.") at ¶ 2. Counsel for the Pension Funds did not learn about this until after business hours on July 26, 2024. *Id.* The next business day, counsel corrected the error with the Moyna Decl., containing OLERS's Schedule A of its Class Period transactions in Inari common stock, and making clear that the Schedule A was attached to the certification OLERS signed. This good faith mistake "do[es] not strike at the heart of Rule 23's adequacy requirement." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015). Mr. Hartmann's classification of the omission of OLERS's Schedule A as a "conspicuous" and "significant error[]" (Opp. Br. at 13) thus rings hollow. *In re SLM Corp. Sec. Litig.*, No. 08-cv-1029, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties."); *Vale v. McGuinn*, No. 09 CIV. 3807 (RMB), 2009 WL 3297490, at *4 (S.D.N.Y. Oct. 13, 2009) (rejecting argument that a movant's "deficient" or "incomplete" PSLRA certification indicated he was inadequate); *Hansen*, 2017 WL 281742, at *5 (allowing correction of certification); *Huang v. Airmedia Group, Inc.*, No. 1:15-CV-4966 (ALC), 2015 WL 10846763, at *2 (S.D.N.Y. Nov. 10, 2015) (same).[9]

---

[9] *See also Silverberg v. Dryships, Inc.*, No. 17CV4547SJFARL, 2018 WL 10669653, at *3 n.2 (E.D.N.Y. Aug. 21, 2018) (permitting late filed, corrected certification because "corrections to the certification do not prejudice any party to this litigation, or any LP movant"); *Okaro v. Icahn Enterprises L.P.*, No. 1:23-CV-21773-KMM, 2023 WL 8101048, at *3 (S.D. Fla. Nov. 20, 2023) ("any alleged deficiency in any [m]ovant's certification is not a determinative factor in the selection of [l]ead [p]laintiff").

Although the Schedule A was inadvertently omitted from its certification, OLERS's Class Period transactions were provided to the Court on July 12, 2024 in the loss chart. *See* Exhibit B to the Berger Declaration, ECF 20-2. These transactions are identical to those listed in OLERS's Schedule A that is now before the Court. *Compare* ECF 20-2 *with* OLERS's Schedule A (ECF 25). This fact is critical, and differentiates this case from those Mr. Hartmann cites. In each of those, there were discrepancies between the transactions used for loss calculations and those attached to the movant certifications. *See Rodriguez v. Draftkings, Inc.*, No. 21 Civ. 05739 (PAE), 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) (certification transactions were inconsistent with loss calculation transactions, which obfuscated the movant's "actual trading activity"); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (movant omitted certain transactions to increase losses, which the court characterized as "gamesmanship"); *Karp v. Diebold Nixdorf Inc.*, No. 19 Civ. 6180 (LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (error caused movant's loss calculation to be overstated by *34%*).

Because the omission of OLERS's Schedule A was an inadvertent error that has been timely rectified, Mr. Hartmann's attempts to discredit OLERS' adequacy should be rejected. The "goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes—rather it was to promote a client-driven rather than lawyer-driven process—and the statute seeks to do so by favoring institutional investors who suffered the greatest financial losses over other parties." *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014).

### C.    MR. HARTMANN CANNOT SATISFY RULE 23'S TYPICALITY REQUIREMENT

Mr. Hartmann is subject to unique defenses that render him atypical. *Batter v. Hecla Mining Co.*, No. 19-CV-05719 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020). He has a $63,000 *net gain* on his investment in Inari common stock under the *Michiana* class period. ECF 22 at 9. In fact, Mr. Hartmann is both a "net seller" and a "net gainer" because he sold 2,560

9

more shares during the *Michiana* class period than he purchased. *Id.* at 9-10. This "status effectively disqualifies [Hartmann] from representing a class defined by the shorter, [*Michiana*] period." *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020). As a net seller and a net gainer, Mr. Hartmann "may in fact have profited, rather than suffered, as a result of the inflated stock prices," *id.* (citation omitted), and thus, he is inadequate under Rule 23. Mr. Hartmann's standing is therefore dependent on the Court accepting his self-serving expansion of the Class Period.

Finally, Mr. Hartmann's trading suggests that he was "a serial in-and-out trader of [Inari] stock during the Class Period." *DraftKings*, 2021 WL 5282006, at *7. Such trading could "compromise his claims and his adequacy as a class representative." *Id.* "That potential to distract militates against his appointment." *Id.*; *see also Stoopler v. Direxion Shares ETF Tr.*, No. 09 CIV. 8011 RJH, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), *as corrected* (Aug. 16, 2010) (day traders vulnerable to unique defenses); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (in-and-out trader found inadequate because it "may be unable to demonstrate loss causation.").

## III.    CONCLUSION

Mr. Hartmann has failed to rebut the presumption that the Pension Funds are the most adequate plaintiff. Consequently, the Pension Funds' motion should be granted.

Dated: New York, New York
       August 2, 2024

<div style="margin-left:40%">

*/s/ Daniel L. Berger*
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500

</div>

Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com

*/s/ Samuel H. Rudman*
Samuel H. Rudman
David A. Rosenfeld
**ROBBINS GELLER RUDMAN
& DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Tel.: (631) 367-7100
Fax: (631) 367-1173
Email: srudman@rgrdlaw.com
Email: drosenfeld@rgrdlaw.com

*Proposed Lead Counsel for Proposed Lead
Plaintiff*

**ASHERKELLY**
Michael J. Asher
Jacqueline A. Kelly
Cynthia J. Billings-Dunn
25800 Northwestern Highway, Suite 1100
Southfield, MI 48075
Tel.: (248) 746-2710
Email: masher@asherkellylaw.com
Email: jkelly@asherkellylaw.com
Email: cbdunn@asherkellylaw.com

*Additional Counsel*

11