## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL,<br><br>Defendants. | Civ. A. No. 1:24-cv-03686 (JHR) (JW)<br><br>**ORAL ARGUMENT REQUESTED** |
| PAUL HARTMANN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCH C. HILL,<br><br>Defendants. | Civ. A. No. 1:24-cv-04662 (JHR) (JW) |

**MOVANT PAUL HARTMANN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................................. ii

A.    The Class Period Alleged in the *Hartmann* Action Guides the Court's
Determination of the Lead Plaintiff under the PSLRA ........................................................ 2

B.    The Group's Defense against Mr. Hartmann is Based on Speculation and Is
Not Unique .......................................................................................................................... 4

C.    The Group's Suggestion That the Court Should Consider the Shorter Class
Period is Not in the Best Interests of the Class .................................................................... 7

D.    The Group's Motion Should Be Summarily Dismissed for Disqualifying
Defects ................................................................................................................................ 10

E.    Conclusion ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Born v. Quad/Graphics, Inc.*,
No. 19 Civ. 10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020)................................. 6, 7

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................................... 2

*Eichenholz v. Verifone Holdings, Inc.*,
No. 07 Civ. 06140 (MHP), 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ............................. 8

*Fishbury Ltd. V. Connetics Corp.*,
No. 06 Civ. 11496 (SWK), 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2016) ............................. 5

*Grand Lodge of Pa. v. Peters*,
No. 8:07 Civ. 479-T26 (EAJ), 2007 WL 1812641 (M.D. Fla. June 22, 2007).......................... 8

*Hachem v. Gen. Elec. Inc.*,
No. 17 Civ. 8457 (JMF),  2018 WL 1779345 (S.D.N.Y. Apr. 11, 2018)............................... 10

*Hartel v. SelectQuote, Inc.*,
No. 21 Civ. 6903 (AKH), 2022 WL 4057445 (S.D.N.Y. Sept. 2, 2022)................................... 5

*Hevesi v. Citigroup Inc.*,
366 F. 3d 70 (2d Cir. May 7, 2004) ....................................................................................... 5

*Hom v. Vale S.A.*,
No. 1:15 Civ. 9539 (GHW), 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ................................. 8

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)..................................................................................... 8

*In re Elan Corp. Sec. Litig.*,
No. 08 Civ. 08761 (AKH), 2009 WL 1321167 (S.D.N.Y. May 11, 2009) .............................. 3

*In re Facebook Inc., IPO Sec. & Der. Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................................. 7

*In re Imax Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011)................................. 5

*Lemm v. New York Community Bancorp, Inc.*,
No. 24 Civ. 1118 (NRM), 2024 WL 2022213 (E.D.N.Y. May 7, 2024)............................. 7, 10

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
No. 3:15 Civ. 3415-D, 2016 WL 1625774 (N.D. Tex. Apr. 25, 2016)  ............................... 3, 8

*Turner v. ShengdaTech, Inc.*,
 No. 11 Civ. 1918 (TPG), 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ..................................... 9

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
 reprinted in 1995 U.S.C.C.A.N. 730 (1995) ............................................................................. 7

After two rounds of briefing, it is undisputed that lead plaintiff movant Paul Hartmann ("Mr. Hartmann") has the largest financial interest in Related Actions among any of the individual movants, having suffered $716,873 in losses on his investments in Inari Medical, Inc. ("Inari") common stock during the longest-filed Class Period alleged in the *Hartmann* Action (March 10, 2021 through February 28, 2024).[1]  Mr. Hartmann's loss is significantly greater than the losses asserted by competing movants OLERS ($272,993), PGERS ($185,352) and Local 353 ($419,145), who, as explained in Mr. Hartmann's opposition brief, are members of a group of unrelated investors created by their lawyers whose losses should not be aggregated.  *See* ECF No. 23 ("Hartmann's Opp."), at 2-3, 7-14 (arguing that lawyer-driven groups cannot aggregate losses in attempt to claim the largest financial interest).  Mr. Hartmann is thus entitled to a strong presumption that he is the "most adequate plaintiff" which can only be rebutted with proof of inadequacy or atypicality.

As explained below, no such "proof" exists and the Group's arguments to the contrary are nothing more than rank speculation.  In an effort to contrive a "unique defense" against Mr. Hartmann, the Group speculates that if this Court were to hypothetically at some point in the future adopt the truncated class period alleged in the *Michiana* Action (February 24, 2022 through February 28, 2024), Mr. Hartmann would be atypical of the class because he is a "net seller" and "net gainer" during that period. *See* ECF No. 22, Pension Funds Memo. of Law in Opp. to Competing Lead Pls. (the "Group Opp."), at 8-11.  However, the Group premised its entire attack on Mr. Hartmann on an alleged dispute between Mr. Hartmann and Mr. Nazerzadeh-Yazdi (*Id.*, at 1, 9) that does not exist because Mr. Nazerzadeh-Yazdi has withdrawn from the lead plaintiff contest.  ECF No. 21 (notice of non-opposition).  The Group's speculation should be rejected out

---

[1] Unless otherwise noted, all capitalized terms are defined in Mr. Hartmann's opposition brief. *See* ECF No. 23. All citations to "ECF No. __" refer to docket entries in the *Michiana* Action, unless otherwise noted.

of hand because it mischaracterizes the record, ignores the Group's inconsistent conduct and contradictory arguments, and contravenes the well-established rule that for purposes of determining a lead plaintiff, the longest potential class period should be considered.[2]

**A.      The Class Period Alleged in the *Hartmann* Action Guides the Court's Determination of the Lead Plaintiff under the PSLRA**

Both Mr. Hartmann and the Group agree that for purposes of determining the "largest financial interest" under the PSLRA, courts in this District "apply the longest class period to the lead plaintiff inquiry." Group Opp., at 11.  Indeed, with respect to the one movant who had advocated for the shorter class period alleged in the *Michiana* Action (Mr. Nazerzadeh-Yadzi, who has since withdrawn from contention), the Group argues that his assertions that the shorter class period is the proper period are of "no moment" and assails Mr. Nazerzadeh-Yadzi for "fail[ure] to comply with even the most basic requirement of the PSLRA" because he did not submit his transactions covering the longer class period alleged in the *Hartmann* Action. *Id*., at 11.

The Group fails to identify any basis for the Court to find at an early stage of the litigation that the longer class period alleged in the *Hartmann* Action is not plausible.  The alleged misrepresentations that start the class period alleged in the *Michiana* Action (which was filed by one of the Group's three law firms), are the same or similar to the alleged misrepresentations alleged on March 10, 2021, the start of the class period in the *Hartmann* Action.  *Compare Michiana* Action, ECF No. 1, ¶¶22-24, *with Hartmann* Action, ECF No. 1, ¶¶26-28.  Furthermore, the complaint in the *Hartmann* Action alleges scienter by way of massive insider sales by Defendants William Hoffman (former Inari President and CEO with net sales of over $126 million), Andrew Hykes (Inari's President and CEO with net sales of over $22 million) and Mitch

---

[2] Additionally, during the class period alleged in the *Hartmann* Action, Mr. Hartmann held more shares at the time of the corrective disclosure than any of the Group members, and he is not subject to any argument that he is an "in and out" trader without standing to assert loss causation under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

C. Hill (Inari's CFO with net sales of over $19 million), and over $174 million in a public offering of inflated stock by Inari during the class period alleged in the *Hartmann* Action, allegations conspicuously missing from the *Michiana* Action complaint. *See Hartmann* Action, ECF No. 1, ¶¶90-94.   The allegations in the *Hartmann* Action are at least as plausible as the allegations in the *Michiana* Action, and, in fact, are stronger. *See In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761 (AKH), 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (applying plausibility standard and finding longer-pleaded class period as plausible as shorter-pleaded period).

Indeed, until they faced a challenge from Mr. Hartmann, the Group's members each embraced the longer class period alleged in the *Hartmann* Action.   The Group moved to consolidate the *Hartmann* Action and the *Michiana* Action, each member of the Group identified the longer class period alleged in the *Hartmann* Action on their certifications as the class period, and the Group applied the longer class period alleged in the *Hartmann* Action for purposes of determining its members' respective financial interests—conduct that shows that the Group saw merit in Mr. Hartmann's allegations and the class period alleged in the *Hartmann* Action.   ECF Nos. 19 ("Group Mem. of Law"), 20-1 (Group member PSLRA certifications).   That the Group moved asserting a financial interest using the longer class period alleged in the *Hartmann* Action (Group Mem. Of Law at 1, 8) demonstrates that the Group "not only believes the allegations supporting the longer class period are plausible, [but also that] they are meritorious."  *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, No. 3:15 Civ. 3415-D, 2016 WL 1625774, at *4 (N.D. Tex. Apr. 25, 2016). Moreover, that the Group's motion did not mention its losses for the shorter period shows that at that time its members did not consider them relevant to the determination of their members' financial interest.

During the longer class period alleged in the *Hartmann* Action, Mr. Hartmann undeniably

3

has the largest financial interest of any individual movant.

**B.    The Group's Defense against Mr. Hartmann is Based on Speculation and Is Not Unique**

Recognizing that Mr. Hartmann has the largest financial interest during the longer class period alleged in the *Hartmann* Action, the Group, in essence, asks the Court to ignore the Group's conduct, arguments and the law in this District.  The Group speculates that if, in the future, for reasons they do not explain, the Court were to adopt the shorter class period alleged in the *Michiana* Action, then Mr. Hartmann may be considered a "net seller" and subject to a unique defense. Group Opp., at 8-10.  The Group's argument does not hold up under scrutiny and it is far from the proof required to disqualify Mr. Hartmann.

There is nothing in the Group's motion that substantiates why or how the Court could or should adopt the shorter class period alleged in the *Michiana* Action, or adopt some other period. The Group does not identify any basis for the Court to reject the class period alleged in *Hartmann* in favor of the class period alleged in the *Michiana* Action, or in favor of some other period not yet considered.  On the contrary, as outlined above, all indications are that the Group supports and believes in the merits of the longer class period alleged in the *Hartmann* Action.  The Court should see the Group's argument for what it is—self-serving speculation that it not unique to Mr. Hartmann.

In every securities class action there is a risk that at a later stage in the litigation the class period may be modified based on the facts, law and circumstances that later transpire. Defendants in securities litigation move to dismiss in nearly every case and invariably advocate for dismissal of the case or at least for the shortest possible class period in order to limit the size and scope of the class.  Based on the anticipated consolidated complaint and briefing on Defendants' motion to dismiss in the Related Actions, the Court may uphold the class period alleged in the *Hartmann*

4

Action, or adopt some unforeseen class period based on the facts and law. This is a dynamic in every securities class action and there is nothing unique or special at issue here. Accordingly, court have found that there is no requirement that a lead plaintiff purchase shares throughout the entire class period. *See In re Imax Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2011 WL 1487090, at *7 n.6 (S.D.N.Y. Apr. 15, 2011) (noting that lead plaintiff need not "purchase shares throughout a class period. That is not the law in this Circuit."). However, if after appointing Mr. Hartmann as lead plaintiff in the Related Actions the Court were to adopt a shorter class period, any deficiencies "can be corrected by the designation of other members of the purported class as named plaintiffs or class representatives." *Fishbury Ltd. v. Connetics Corp.*, No. 06 Civ. 11496 (SWK), 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2016); *Hevesi v. Citigroup Inc.*, 366 F. 3d 70, 83 (2d Cir. May 7, 2004) (finding that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

While the Group argues that a lead plaintiff must maintain standing "***for the entire duration of this litigation***," (Group Opp., at 9) the risk that the class period may be altered during the course of the litigation by the Court's rulings is not unique to Mr. Hartmann and applies to all member of the class, including the Group. For example, the Group's final purchase of Inari common stock was on January 25, 2024. If the Court were to determine in the future that the proper class period beings on January 26, 2024, the Group would not have standing because it did not purchase any shares of Inari common stock after that date. For this reason, courts in this District find that at the lead plaintiff stage in the litigation, it is inappropriate for the courts to determine the earliest possible date on which investors were deceived. *See Hartel v. SelectQuote, Inc.*, No. 21 Civ. 6903 (AKH), 2022 WL 4057445, at *2 (S.D.N.Y. Sept. 2, 2022) ("Even if a shorter class period is adopted later in the litigation, that is insufficient to render the [lead plaintiff movant] an

5

inadequate lead plaintiff at this stage of the litigation"). It would be improper to reject Mr. Hartmann as presumptive lead plaintiff on the basis of the Group's speculation.

The only authority in support of the Group's argument, *Born v. Quad/Graphics, Inc.*, No. 19 Civ. 10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020), is an outlier case where the court had good reason to deviate from the well-settled rule that the longest possible class period is used to determine a lead plaintiff. In *Born*, there were troubling facts that caused the court to disregard the longer class period. In *Born*, the complaint alleging the longer class period (*Bloom v. Quad/Graphics, Inc.*, No. 19 Civ. 11860 (S.D.N.Y. filed Dec. 27, 2019)) was filed on behalf of a plaintiff whose PSLRA certification, signed six days before the complaint was filed, did not certify that she had authorized its filing, as required by the PSLRA. *See Born v. Quad/Graphics, Inc.*, No. 19 Civ. 10376 (VEC), ECF No. 43, at 1, 8 (plaintiff who filed *Bloom* complaint did not include authorization language in certification as required by the PSLRA); *Bloom v. Quad/Graphics, Inc.*, No. 19-cv-11860, ECF No. 1-1. Although the opposing movants in *Born* disputed whether the plaintiff in *Bloom* reviewed the filed complaint, it is undisputed that the plaintiff's PSLRA certification was signed six days prior to the *Bloom* complaint being filed and that the PSLRA certification did not contain the required authorization language. Furthermore, it was argued that the longer class period was implausible and not substantiated because there were no well-plead allegations supporting the longer class period. *Born v. Quad/Graphics, Inc.*, No. 19 Civ. 10376 (VEC), ECF No. 43, at 5. Finally, there was evidence that the plaintiff asserting the longer class period was a figurehead whose lawyer filed the complaint and alleged a longer period, effectively decreasing the plaintiff's losses as compared to the shorter period, to maximize the losses of a separate client who was seeking appointment as lead plaintiff. *Id.* at 2, 7-8. Based on this troubling record, the court in *Born* had good reason to decline to credit the longer class period.

The "net seller" defense only materialized *after* the court adopted the shorter class period. None of the unusual facts and circumstances in the *Born* action exist here and there is nothing in the record that warrants the Court rejecting the longer class period alleged in the *Hartmann* Action.

To rebut the presumption entitling Mr. Hartmann to appointment as lead plaintiff, the PSLRA requires the Group to provide "exacting proof" that the presumptive lead plaintiff is inadequate. *In re Facebook Inc., IPO Sec. & Der. Litig.*, 288 F.R.D. 26, 39 (S.D.N.Y. 2012). All the Group has offered is speculation, which falls short of the required "proof" to rebut the presumption that Mr. Hartmann is the "most adequate plaintiff." *See Lemm v. New York Community Bancorp, Inc.*, No. 24 Civ. 1118 (NRM), 2024 WL 2022213, at *5 (E.D.N.Y. May 7, 2024) (finding that "[c]onclusory assertions and mere speculation will not suffice" in rebutting presumption).

## C.    The Group's Suggestion That the Court Should Consider the Shorter Class Period is Not in the Best Interests of the Class

By suggesting that the Court consider the shorter class period alleged in the *Michiana* Action for lead plaintiff purposes, the Group risks jeopardizing the longer class period and minimizes the size and scope of the class—conduct contrary to the best interests of the class. Worse yet, the Group's argument that the Court consider the shorter class period alleged in the *Michiana* Action raises the risk that the Group's financial interests in this litigation would be reduced by over 50%. *See* Group Opp., at 4.  The fact that the Group would take a position that potentially limits its members' recovery raises serious questions as to whether its members have, at best, relinquished control of the litigation to its lawyers, or at worst, are not even aware of arguments against their best interests and the interests of the class. *See* Hartmann Opp., at 7-10, 13. This type of lawyer-driven litigation is precisely what the PSLRA was enacted to prevent. *See* H.R. Conf. Rep. No. 104-369, at *31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 370 (1995) (stating PSLRA

7

enacted to prevent "manipulation by class action lawyers of the clients whom they purportedly represent").

The Group baselessly asserts that "expanding the class period by nearly a year" "conveniently allowed Mr. Hartmann to claim losses associated with his investment which he did not suffer under the *Michiana* class period." Group Opp., at 9. Far from acting in his own interests, Mr. Hartmann's complaint expanded the size and scope of the class. In sharp contrast, the Group's arguments minimize the size and scope of the class. The Group's arguments contrary to the best interests of the class demonstrate that the concerns and risks of this lawyer-driven group of which Mr. Hartmann has warned (Hartmann Opp., at 2, 7-10, 12-13), have already come to pass, providing yet another reason to reject its motion.

Courts justifiably view arguments that minimize the size and scope of the class with skepticism because such arguments are likely advocated to favor the movant's individual interests. *See Eichenholz v. Verifone Holdings, Inc.*, No. 07 Civ. 06140 (MHP), 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (stating courts are "wary of arguments advocating a shorter Class Period" because they are likely only advocated because "it was in the best interest of that particular plaintiff only."); *Town of Davie*, 2016 WL 1625774, at *4 (applying longer class period when that period "benefits all plaintiffs because their financial interests are significantly larger in the longer class period than in the shorter class period"); *see also Hom v. Vale S.A.*, No. 1:15 Civ. 9539 (GHW), 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (same). Another reason for skepticism is that courts are wary of adjudicating the merits of competing class periods at an early juncture in the litigation. *See Grand*

8

*Lodge of Pa. v. Peters*, No. 8:07 Civ. 479-T26 (EAJ), 2007 WL 1812641, at \*2 (M.D. Fla. June 22, 2007) ("[Movant] asks this Court to delve into the merits of the claims and to define the Class Period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed. This it cannot do.").

Furthermore, the Group insinuates that the filing of the *Hartmann* Action was somehow "last-minute" or improper. *See* Group Opp., at 9.  This is wrong.  Mr. Hartmann filed his complaint more than four weeks before the lead plaintiff motion deadline, expanding the Class Period by less than a year. The complaint in the *Hartmann* Action names the same defendants, relies on the same legal theories and claims under the Securities Exchange Act of 1934, and concerns the same securities as the *Michiana* Action (Inari common stock).  Moreover, upon filing his complaint, Mr. Hartmann published notice informing investors in Inari common stock of the expanded Class Period. *See* ECF No. 15-2. That notice was clearly sufficient to apprise class members of the expanded Class Period, evidenced by the fact that the Group moved for lead plaintiff status under the expanded Class Period alleged in *Hartmann* Action without the slightest mention of their losses in the *Michiana* Action. *See* ECF Nos. 19, at 1, 20-1.[3]

It is not uncommon or unusual for multiple complaints to be filed in securities litigation. Courts in this District have accepted complaints filed as late as ***the same day*** that the lead plaintiff motions were due and that expanded the class period by nearly ***two years***. *See Turner v. ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at \*2-3 (S.D.N.Y. Dec. 6, 2011) (finding that new complaint filed by counsel same day lead plaintiff motions were due was proper because newly-filed action "proceed[ed] against the same defendants as the first-filed [] action,

---

[3] However, in the Group's motion, OLERS failed to disclose its transactions in Inari common stock for *any* period in its PSLRA Certification. As argued in Mr. Hartmann's opposition brief and further explained below, this error alone renders OLERS inadequate to serve as lead plaintiff in the Related Actions and is a basis to summarily reject the Group's motion.

relie[d] on the same legal theories as that action, and concerns the same type of securities as that action"). The Group's counsel are well-aware that in securities litigation multiple complaints, with different class periods and different theories of the case are commonplace, and indeed, have filed actions that expanded the class period on behalf of clients in other actions. *See Lemm v. New York Community Bancorp, Inc.*, Nos. 24 Civ. 903 (JRC) 24 Civ. 1118 (JRC), 2024 WL 2022213, at *2 (E.D.N.Y. May 7, 2024) (noting that complaint, filed by one of the Group's law firms, alleged longer class period than the first-filed action); *Hachem v. Gen. Elec. Incl.*, Nos. 17-CV-8457 (JMF), 18-CV-1404 (JMF), 2018 WL 1779345 (S.D.N.Y. Apr. 11, 2018) (same).

**D.      The Group's Motion Should Be Summarily Dismissed for Disqualifying Defects**

Finally, the Group failed to submit OLERS' transactions with its PSLRA certification, a fundamental defect that the Group admits is "particularly troubling" and "a basis for summarily rejecting [its] lead plaintiff motion." Group Opp., at 8, 11-12 (arguing Mr. Nazerzadeh-Yadzi's failure to submit transactions for class period alleged in the *Hartmann* Action is "disqualifying"). While the Group's counsel submitted an amended certification after the lead plaintiff deadline passed and after Mr. Hartmann had raised this concern (ECF No. 25), the Group's steps to rehabilitate its motion are, by its own admission, too late. The Group unequivocally asserts that "failure to file a comprehensive Certification by the 60-day deadline is a basis for summarily rejecting" a lead plaintiff motion. Group Opp., at 12. Accordingly, the Group's motion suffers from an additional disqualifying infirmity and for this reason it may be summarily rejected.

**E.      Conclusion**

For the reasons set forth in his motion and set forth above, Mr. Hartmann respectfully requests that the Court grant his motion and deny the Group's motion.

Dated:  August 2, 2024                             Respectfully submitted,

                                                   /s/    Jeffrey P. Campisi
                                                   Jeffrey P. Campisi
                                                   Pamela Mayer
                                                   Brandon Fox
                                                   **KAPLAN FOX & KILSHEIMER LLP**
                                                   800 Third Avenue, 38th Floor
                                                   New York, NY 10022
                                                   Telephone: (212) 687-1980
                                                   Facsimile: (212) 687-7714
                                                   jcampisi@kaplanfox.com
                                                   pmayer@kaplanfox.com
                                                   bfox@kaplanfox.com

                                                   *Attorneys for Movant Paul Hartmann and Proposed*
                                                   *Lead Counsel for the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Jeffrey P. Campisi, hereby certify that, on August 2, 2024, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/     Jeffrey P. Campisi*
Jeffrey P. Campisi
