```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

                                      : Docket #24cv03686
 MICHIANA AREA ELECTRICAL WORKERS'
 PENSION FUND,                        :

                  Plaintiff,          :

  - against -                         :

 INARI MEDICAL, INC., et al.,         : New York, New York
                                        March 19, 2025
                  Defendants.         :

--------------------------------------- :


                     PROCEEDINGS BEFORE
              THE HONORABLE JENNIFER E. WILLIS,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff Paul        KAPLAN FOX & KILSHEIMER LLP
Hartmann:                 BY:  JEFFREY CAMPISI, ESQ.
                          800 Third Avenue, 38th Floor
                          New York, New York 10022


For Plaintiff Pension     ROBBINS GELLER RUDMAN & DOWD LLP
Funds (Movant):           BY:  DAVID ROSENFELD, ESQ.
                          58 South Service Road, Suite 200
                          Melville, New York 11747

                          GRANT & EISENHOFER P.A.
                          BY:  CAITLIN MOYNA, ESQ.
                          485 Lexington Avenue, 29th Floor
                          New York, New York 10017




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

APPEARANCES CONTINUED:

For Defendants:            LATHAM & WATKINS LLP
                           BY:  KEVIN MCDONOUGH, ESQ.
                           1271 Avenue of the Americas
                           New York, New York 10020

3

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|

None

PROCEEDINGS                    4

THE CLERK:  All rise.  The Honorable Jennifer Willis presiding.

THE COURT:  You may be seated.

THE CLERK:  Good afternoon, (inaudible) on two cases, Michiana (inaudible) 24cv3686.  The second case is (inaudible).  Would the parties introduce themselves.

MR. JEFFREY CAMPISI:  Good afternoon, Your Honor, Jeff Campisi, Kaplan Fox & Kilsheimer for Paul Hartmann, (indiscernible).

THE COURT:  Good afternoon.

MR. DAVID ROSENFELD:  Good afternoon, Your Honor, David Rosenfeld from Robbins Geller Rudman & Dowd on behalf of the Pension Funds and also (indiscernible).

MS. CAITLIN MOYNA:  Good afternoon, Your Honor, Caitlin Moyna, Grant & Eisenhofer, also on behalf of the

MR. DEMARCO:  THE COURT:  I understand we do have a representative from defendants in the back.

MR. KEVIN McDONOUGH:  And good afternoon, Your Honor, Kevin McDonough from Latham & Watkins on behalf of the defendants.

THE COURT:  And good afternoon to you as well, sir.  So I presume someone offered you a corner upfront, and you have elected to sit back there in the far away corner?

PROCEEDINGS                    5

MR. McDONOUGH:  Your Honor, I didn't want to pick sides as between the plaintiffs, but I'm happy to sit wherever's most convenient for the Court.

THE COURT:  I had indicated in advance that if you chose, you didn't need to come, not that there's any problem with you being here, based on the assumption that you sort of wouldn't be taking a position and likely would not have much to say.  So if you are fine, you know, back there in the cheap seats, that is certainly all right, and I'll sort of make sure I make a mental note to, some point before we adjourn, to check in with you just to see if there is something that you wanted to add to any discussion.

MR. McDONOUGH:  Thank you, Your Honor.  I appreciate that.

THE COURT:  All right, so we are here I'll call it for sort of two motions primarily, and the first is a motion to consolidate which was only posed by the defendant.  So I wanted to let you know, yes, (indiscernible) obviously to grant that, and I anticipate having a short written order sort of going through the factors and the considerations which I will follow sometime soon on the docket.  But that will be granted, so we need not have any argument about that.

PROCEEDINGS                    6

That then moves us to the question of who should be lead plaintiff, Paul Hartmann, or the collection for Pension Funds and who should be lead counsel.  I think what I'll do is I'll start with arguments from Paul Hartmann, and obviously am in receipt of the papers from everyone, but it was Hartmann who requested oral arguments.  And as I believe I said in my order scheduling this, I didn't necessarily look at this as a case where oral argument was really required, but, again, you know, to the extent that I was supposed to be working my way towards a decision and one party did want to be heard orally, I decided no harm and in letting you sort of come here and have your say.  So I will turn first to Paul Hartmann for your argument as to why Paul Hartmann is the more appropriate lead plaintiff.

MR. CAMPISI:  Thank you, Your Honor.  Do you prefer argument here or at the podium?

THE COURT:  Whatever you propose, sir.

MR. CAMPISI:  So Mr. Hartmann, you know, thanks the Court for the opportunity.  I understand Your Honor didn't think this argument was essential, so I'll keep my remarks brief, but do thank you for the opportunity.  Mr. Hartmann is not here today, he wanted to be here,

PROCEEDINGS                    7

but I gave him Your Honor's order and said that I didn't think it was necessary, but he is available by phone if the Court has questions.  And it's set out in his declaration which is ECF 15-6, he's a sophisticated business executive, he has experience as a fiduciary, and he's an experienced investor.

Your Honor, no one, between the competing movants, is disputing the statutory framework, the largest financial interest, the movant with the largest financial interest is presumed to be the lead plaintiff. The issue is whether Mr. Hartmann who has by far the largest financial interest under all the relevant economic metrics or the group of three unrelated investors is the presumptive lead plaintiff.  So to whom is the presumption attach?

Your Honor, on page 5 of Mr. Hartmann's opposition brief, it's at ECF 23 at 5, the chart shows that Mr. Hartmann alone has the largest financial interest across all the factors that courts consider in determining the presumptive lead plaintiff.  Mr. Hartmann's loss of approximately 716,000 is 287 percent greater than Pontiac's, 162 percent greater than Oklahoma's, and 71 percent greater than Local 353, and that's on the most important factor, the loss.

PROCEEDINGS                    8

So while some courts have considered groups and have appointed groups, you know, courts look at groups on a case by case basis, and the core issue is whether the group as proposed is in the best interest of the class. The Court should reject this group and appoint Mr. Hartmann under the circumstances in this case for the three following reasons.

You know, first, the group has failed to meet its burden of showing that the group rather than its lawyers form the group. While collectively the funds have a greater financial interest than Mr. Hartmann, none of them alone has a larger financial interest then Mr. Hartmann. In other words, aggregation is essential --

THE COURT: Well, but that, is that actually - there are so many factors in this case. We're looking at sort of what are (indiscernible), certainly the question of how they were formed and other things matter. Like did the lawyers find them, did they find the lawyers? If the idea that it's only as a collective that they then meet the financial threshold, I did not look at that as being one of the requirements, sort of factors articulated in (indiscernible) which I'm assuming taking my case from in terms of what to look at

PROCEEDINGS                    9

to determine if it's appropriate.

MR. CAMPISI:  So, Your Honor, I think this would go to who formed the group.  Did the lawyers form the group or did the investors form the group?  And the aggregation point which I'm going to get to in a minute, I think goes to the point that here, under these circumstances, it's clear the lawyers created this group.  You know, what happened here and the timetable I think illustrates this, Your Honor, very clearly.

So Oklahoma, one of the members of the group, is represented by the same counsel that filed the first case, the Michiana case, which was filed on May 13.  On June 18 Mr. Hartmann filed his case, and when he filed his complaint, he attached his certification that had his financial interest disclosed.  None of the funds separately at that point in time had a greater financial interest than Mr. Hartmann.  So the lawyers put together this group, seeing Mr. Hartmann's financial interest, and put together a large enough financial interest in the aggregate to take the presumption from Mr. Hartmann.

In the group declaration which appears to have been drafted hours before the lead plaintiff deadline of July 6 talks about how the group reached out to its lawyers, and the lawyers got together and put the group

PROCEEDINGS                    10

together.  You know, it was their lawyers who came together and chose the plaintiffs to aggregate rather than the lead plaintiffs.  There's nothing in the declaration that says the lead plaintiffs called each other and said let's get together because we have common interests.  The lawyers did that, and the lawyers put the group together.  There's no evidence in the declaration that any of these funds have any relationship before their lawyers put them together.

The PSLAR was enacted to transfer primary control of the securities litigation from lawyers to investors, and this group does the opposite by ensuring that the lawyers who are the undisputed matchmakers here are the drivers.  The group cites several cases that say that the group aggregation is permissible, but in none of those authorities was it necessary to aggregate.  I think that's the key point.  In the cases they cite *Penicad, LuxUrban, Espeed, Sequans, Fortress Bayous*, and others.  Those groups were found to be okay and not lawyer driven because they didn't need to aggregate. One member of the group alone was the largest in terms of financial interests.  So the court did not see there are any need for lawyers to put together a group.  So that's a factor that is Wargazy (phonetic).  I think

PROCEEDINGS                    11

that goes to show the Court that the --

THE COURT:  I guess I'll ask you the converse question then.  Are there cases where a court has concluded that certainly, yes, courts have said it's okay to have a group and let's sort of analyze why this is an appropriate group.  And you point out that in none of your case did you have to have this aggregation which sort of shows the strategic workings of the lawyers, per your argument, but are there cases where the aggregation was required, and as a result a court said this to me suggests that this is not appropriate because this would have had to make the grouping over, you know, in order to overcome the financial interest of, you know, some individual.

MR. CAMPISI:  Sure, the cases we cite in our brief, there's the *Teva* case.  Judge Underhill in Connecticut rejected the group under the, you know, having found that the aggregation was necessary to obtain the financial interest.  There are other cases that we've cited in our brief.  The *FXCM* case.  There's the *Petrobras* case, *Pfizer* case.  A number of courts have looked at this issue and said the aggregation is necessary to get to that point where they have the largest financial interest, that's problematic, and that

PROCEEDINGS                    12

suggests (indiscernible) group.

Unless Your Honor has questions about the formation of the group, I wanted to touch on two other points.

THE COURT:  Not at this time, no.

MR. CAMPISI:  The second point, there's cause for the Court to not even consider one of the members of the group's financial interest.  That's Oklahoma.  The Oklahoma certification that was filed at the lead plaintiff deadline, the statutory deadline, it didn't include the transactions.  That's what the statute requires.  This deficiency was not remedied until it was brought to the group's attention through Mr. Hartmann's opposition brief.

You know, what's interesting is that the group before this issue hit their radar, they were of the position that not filing a certification or having some defect was a fatal flaw, and this is at ECF 22 at 12. And they said, and this is, quote, "Failure to file a comprehensive certification by the 60-day deadline is a basis for summarily rejecting a lead plaintiff motion." That's the group's language, not Mr. Hartmann.  So the statutory deadline passed, they submitted an amended certification saying, well, now it's harmless error.

PROCEEDINGS                    13

They were speaking out of both sides of the mouth.  I think that the number of cases we cite in our briefs where a defective filing is rejected, and if the Court were to do that here, Oklahoma's loss of 272,000 would be excluded from the group, and that would leave Mr. Hartmann's 716,000 versus a collective of Pontiac and Local 353 with 604,000.  So Mr. Hartmann would be the largest if the Court were to set aside Oklahoma's losses through their defective filing.

THE COURT:  Let me just ask you most about that particular argument because obviously there's sort of two different timeframes in the different complaint.  So the argument that you just made to eliminate Oklahoma, you know, how it would affect the relative losses of Mr. Hartmann compared to the other three, does that hold true if you were to use the timing from the Pension Funds?

MR. CAMPISI:  Your Honor, you're referring to the Michiana class period?

THE COURT:  Yes.

MR. CAMPISI:  If the Court were to adopt that period which we argue in our brief would be premature and should not be considered at this point in time.  The longest period is what's operative.  But if that were,

PROCEEDINGS                    14

if we were looking at the shorter period, the Funds would have a larger loss.  And as we set forth in our reply brief, that is, you know, would not be appropriate now, it's speculative, and there's a plausible basis for Mr. Hartmann's complaint.  So the longest class period is what applies here.  When the group filed its motion, it filed for the longer period, its losses were for the longer period.  They weren't looking at the shorter period.  So while I appreciate Your Honor's question in terms of how we were evaluating it, it was looking at the longer period for that analysis.

            (pause in proceeding)

            MR. CAMPISI:  Unless Your Honor has more questions about that point, I was going to get to my third point.

            Finally, courts are clear that whenever a group of funds applies to be lead plaintiff, the structure proposed must be found to be in the best interest of the class.  There's nothing in the record that suggests this is case is overly complicated that requires three funds and three law firms.  The group doesn't explain the need for three law firms, does not disclose any agreements among them and whether there are any inconsistencies in their fee agreements that could lead to disagreements

PROCEEDINGS                    15

and contention later.  We raised this in the papers. The group ignored that point, said it was speculative, but I think it's an important point because if there are serious disagreements, that would not be in the best interests of the class.

THE COURT:  But I guess to their point about this sort of being speculative, you frame it as the group doesn't provide a rationale for why three law firms would need to be involved.  There's something inherently prejudicial to the best needs of the class in having there being one law firm, other than this idea of that, in theory, down the road, maybe a dispute, you know, arises between law firm 1 and law firm 2, but that, I mean does that really mean that having them, the collective with multiple law firms is actually not in the best interest of the class?

MR. CAMPISI:  Two points.  Here, the Funds' declaration talks about two law firms, but there's a third law firm that's on the papers, Asher Kelly firm, it's not even mentioned in the declaration.  It's not even clear whether the Funds know of this firm.  And if they did not retain this firm, how can they exercise oversight?  That's the whole point of the PSLRA for the firm to exercise, for the investors to exercise

PROCEEDINGS                    16

oversight over the lawyers, not the other way around, and this firm appears on the papers, and it's completely unexplained.

And to your point, Your Honor, I think Judge McMahon's decision in the *Owerdy* (phonetic) case kind of gets to the problem that happens where you have these structures that are multiple law firms and multiple plaintiffs, it leads to inefficiency, duplication, and waste of resources.  The other case that Judge Caproni and the one main case doesn't like the structure either. At the outset the courts are looking at these things based on experience that these things inevitably happen. So while I appreciate the point that this could be somewhat speculative, it's early, in appointing the lead plaintiff, the Court should be jealously guarding the interest of the class and to avoid things that may happen down the road.

What's telling I think in terms of who's running this group so far is some of the arguments they made.  In denigrating Mr. Hartmann's complaint, which we think is totally baseless and there's no merit to it, they argue that the Michiana, the shorter period may apply here, and that's a concern for the Court.  You know, in effect they're arguing for a shorter period

PROCEEDINGS                  17

which makes, which would exclude people from the class, and what's really telling is that with the shorter period their own clients' financial interests would be reduced substantially.  That's in their papers.  They'd see their financial interest shrink by over 50 percent.  So there's a question of whether this group of funds, the investors themselves were even aware the lawyers had asserted these arguments.

And who benefits from such an argument?  It's not the class, it's not these investors.  They would have a lesser of a financial interest.  You know, it would benefit the lawyers who could gain control of the case.  So that's another thing to think about in terms of lawyer driven litigation.

Finally, Your Honor, unless you have questions about that last point, the group's reply raised for the first time an argument that Mr. Hartmann, they claim he's an in and out trader.  He's not an in and out trader that's ineligible.  An in and out trader that's ineligible would be one where at the time of a corrective disclosure the investor held no shares, so would have no economic interest in what happened when the truth was disclosed.  Mr. Hartmann held shares at the corrective disclosure.  He has economic loss, as the

PROCEEDINGS                    18

Supreme Court has outlined in the *Dura Pharmaceuticals* case.

And I'll just note that we went back and looked at the group's transactions on this, and we noted that Pontiac was an in and out trader when they sold out on August 17, 2021, and then got back into the stock in October of 2021.  They're an in and out trader just like Mr. Hartmann is, but it doesn't matter.  It's not an ineligible in and out trader because they held shares in the class period.

And the final thing I'll mention, Your Honor, is they raised what they call a unique defense against Mr. Hartmann.  They say if the Court at some point down the road were to adopt the Michiana case class period, then that could be an issue because Mr. Hartmann is what they call a net seller and has a gain.  We laid in our reply brief why we don't think this has any merit.  I won't waste time on that.  It's in our reply brief.  But I wanted to point out that if you look at both Pontiac and Local 353's transactions in the shorter period, they have problems too.  I have a chart I can hand up that just shows that they have in some respects (inaudible) issues, and – (pause).

The point here is, Your Honor, that we don't

PROCEEDINGS                    19

think that there are unique defenses.  Mr. Hartmann does think there are unique defenses.  Mr. Hartmann doesn't think they should be considered at this point in time and that there's no merit, but pointing out that the Funds which didn't disclose the line item data for each of them, they'd have issues too.  So this is something that we don't think the Court should even get into at this juncture, but the Court should know that they've got problems as well.  I don't have anything further, Your Honor, unless you have questions for me.  Thank you.

THE COURT:  I do not, thank you.

MR. ROSENFELD:  Thank you, Your Honor.  Your Honor, our clients have the largest financial interest in this case.  They are a proper group of institutional investors who made the determination to pursue this case together based on their past experience serving together as part of a lead plaintiff group.  And they thought it would be beneficial in this case as well which is why they joined together in this case.

I'd like to point out that Mr. Campisi mentioned today his client Mr. Hartmann's background and experience as an investor.  What he failed to mention and what Mr. Hartmann failed to mention anywhere in his

PROCEEDINGS                    20

declaration is his experience supervising counsel. And, Your Honor, as Your Honor knows, the PSLRA provides one thing for the investor to do, a lead plaintiff, and that lead plaintiff's job is to select counsel and that is their only function. That's specifically specified in the PSLRA. No mention has been made here today or in any of the papers of Mr. Hartmann's experience overseeing counsel.

And none of the cases that he cites arguing against the group does he point out any single case where you find an individual investor, a retail investor like himself who is appointed as the plaintiff over a group of institutional investors. In every single one of his cases you either have an individual competing against an individual group of investors, and then the court deciding that that individual group of retail investors has made an adequate showing of its adequacy, and, therefore, it then went ahead and appointed retail investor as the lead plaintiff. Or you have groups of institutional investors competing against a single institutional investor, and in that instance some courts have found that they prefer the single institutional investor over the group institutional investors. But in none of the cases, there's not a single case cited

PROCEEDINGS                    21

anywhere in their brief talking about a situation like here where you have an individual investor trying to unseat a presumptively plaintiff group of institutional investors.

THE COURT:  It seems to me, look, we're sort of looking through the factors, this question of, you know, there's precedent for a group of institutional investors versus a single institutional investor, we're sort of teeing up a different issue there.  We're looking kind of what is the first factor, the idea of --

MR. ROSENFELD:  (indiscernible) relationship?

THE COURT:  I'm sorry?

MR. ROSENFELD:  The first factor I believe is the --

THE COURT:  Right, a previous relationship and then also the fifth factor, sort of the who's choosing counsel, who's the one sort of driving the bus, if you will, and that what you're talking about is you're looking at some other factors, this idea of, you know, professional institutional investors versus sort of an individual is going to this question about, you know, sophistication and the like.  And so while I certainly grant you all of those things are baked into the factors.  I guess to me I'd like to try to disentangle

PROCEEDINGS                    22

them as much as possible, and so I certainly want to hear, you know, you can continue talking about sophistication and why you think that the, you know, the Funds are more appropriate in how they'll be able to manage counsel and the like versus the individual, but I still would also like to hear you on this question of I'll call it the appropriateness of the group from the perspective of is this a, I'll call it this organically created group or one that was created by counsel.  And to me the issue about the timing of when the group was formed, which, Hartmann's counsel points to this idea that this was a strategic move by lawyers, in particular is something I'd like to hear you address.

MR. ROSENFELD:  Sure.  First of all, Mr. Hartmann's counsel is speculating as to what happened. We filed the motion on time.  Typically, these things come together at the end right before the deadline.  In most securities class actions you'll have certifications signed the day before or the day of the deadline. That's just the way it works.  That's why there's a 60-day deadline.  As long as you file before the deadline, which is what our clients did, there's nothing wrong with that.  That's typically when these motions get filed, and these certifications get signed.  So there's

PROCEEDINGS                    23

nothing in the record to support Mr. Campisi's speculation about what was done here with regard to our clients.  There are no facts, and the PSRLA is very clear that in order to rebut the presumption afforded to the most (indiscernible) plaintiff, you need to offer proof, and there's no proof here other than his speculation what might've happened behind the scenes here.

I understand what Your Honor's saying about the different factors considered by the Vargee's (phonetic) court, but my point to that is that of all those cases that were cited talking about why our group is not a proper group, there's not a single one in which an individual investor was found to be more adequate than a group of institutional investors.  None of those cases support that position.  They all talk about individual versus individual or institution versus institution. None of them deal with a situation like here concerning an individual investor trying to defeat the losses of a group of institutional investors.

And, Your Honor, that's important because Congress has expressed its preference for institutional investors to get involved in these types of lawsuits. And, Your Honor, the lead plaintiff movants in our group

PROCEEDINGS                24

have experience seeking to be appointed as lead

plaintiff in securities class actions.  Two of them

already have had recoveries in cases.  Local 353 just

survived a motion to dismiss in one of its cases --

THE COURT:  Let me ask you this.  You speak to

sort of Congress' intent and Congress' interest in sort

of having institutional investors be the ones sort of

shepherding through this kind of litigation.  But is

there court precedent that you can point me to where an

individual, you know, in your words trying to sort of

unseat whether it's a collective or a single

institutional investors where the court has said that

paradigm, like an individual just is not going to be

adequate when compared to the institutional investor?

MR. ROSENFELD:  There are cases that talk about

the preference for institutional investors over

individual investors, Your Honor.

(pause in proceeding)

THE COURT:  When you say preference, that --

MR. ROSENFELD:  I mean over individual

investors.

THE COURT:  No, I understand.  There's one

thing, again, because we're talking about multiple

factors, sort of this weighs this way, this weighs this

PROCEEDINGS                    25

way, this weighs this way, and at the end of the day the court sort of balances everything.  But I take it that there is nothing where a court has said not just, yes, there's a preference for an institution but it says and, therefore, the individual is sort of disqualified based solely on that preference.

MR. ROSENFELD:  So, Your Honor, if I point Your Honor to page, it's docket 26 which is our reply memorandum, on page 6.  And you see the *Penicad* case being cited in there, where it says this preference, quote, "has even led courts to appoint an institutional investor with a slightly smaller financial interest and another lead plaintiff movant who was an individual investors," close quote.  So there certainly has been – and there are many other cases, Your Honor, I can't think of them off the top of my head at the moment, but there are definitely other cases where courts have expressed a preference in appointing an institutional investor over an individual investor.

(pause in proceeding)

MR. ROSENFELD:  Your Honor, anything further on that point?  Any other questions on that point, Your Honor?

THE COURT:  No.

PROCEEDINGS                    26

MR. ROSENFELD:  Okay, moving ahead, Your Honor, with regard to the schedule A that was inadvertently omitted from Oklahoma's certification, Your Honor, the certifications were all filed on time.  The schedule A which should've been attached to the certification and which was attached to the certification at the time that the representative from Oklahoma signed it was inadvertently omitted.  But the actual trading data which would've been on that schedule A and is, in fact, on schedule A which is now part of the record, that trading data was timely filed on the loss chart at the time of the lead plaintiff motion.

So it's not like we were concealing information.  The information was presented, Oklahoma timely asserted its financial interest, and there was no prejudice to anybody, there was no issue, there was inconsistency.  All the cases Mr. Campisi talked about had inconsistencies in the certification, missing information.  None of that was present here.  It was simply a filing error in which a piece of paper was not included as an attachment to a certification, but there was no prejudice to anybody because the data itself was presented.  And had Mr. Campisi contacted us earlier, we would have, of course, provided him with schedule A

PROCEEDINGS                    27

sooner.  As soon as we heard about it, it was a Friday afternoon, the oppositions were filed, (indiscernible) information.  Ms. Moyna filed a declaration on Monday attaching the declaration, attaching the schedule A that had been inadvertently omitted.  So there's been no prejudice to anybody and no harm done to anybody because the financial interest of Oklahoma was timely inserted at the time of the motion.

        With regard to multiple law firms, there are two law firms being proposed as the counsel in this case.  The third law firm is outside counsel to one of the funds that are seeking to be appointed lead plaintiff, the City of Pontiac fund.  They're simply on there so they get timely access to the documents that are filed in the case.  They're not doing any substantive work on the case.  (indiscernible) presenting information to their client, shared client, their general fund counsel to the pension fund, and they just want to be, you know, in constant, have constant access to information regarding the case.

        THE COURT:  Whether there's two or whether there's this third being involved in a significant way, what is your response to Hartmann's argument that just the existence of sort of multiple counsels is, you know,

PROCEEDINGS                    28

I wouldn't say frowned on but maybe viewed with some concern by courts because it does have inherent in it the possibility that there could be some disagreements and some conflicts and that could lead to sort of waste and inefficiency and the like.

MR. ROSENFELD:  Sure.  Your Honor, we have worked in the past with the Grant & Eisenhofer firm, most recently securing a $47 million settlement in the *Santander Securities* litigation.  We have worked in the past with them, I worked (indiscernible) in other litigation, we've had no issues.  And I'd like to point out to Your Honor that I have three recent lead plaintiff orders in which Mr. Campisi's firm serving as co-lead counsel either with two or three firms together. So I'm not sure why this case it's not okay (inaudible – not using microphone).

THE COURT:  Sure.

MR. ROSENFELD:  So I can read them into the record.  *Hasan v. Twitter* case in the Northern District of California, which is 19cv07149, in which the Kaplan Fox firm is serving as co-lead counsel.  And there's a third firm involved as well in that case as additional counsel, and that third firm is actually the (indiscernible) class action firm, unlike here with the

PROCEEDINGS                    29

third counsel.  You have the *Lewis v. YRC Worldwide* case which is the Southern District of New York, it's 19cv00001.  And that case Kaplan Fox is also serving as co-lead counsel together with another firm.  And finally you have the *In re Eastman Kodak Company Securities Litigation*, 21cv6418, in which the Kaplan Fox firm is also serving as lead counsel, and that's in the Western District of New York.

So two of the three cases are in the Southern District of New York.  So although they argue that courts in the Southern District of New York don't favor, I'm sorry, the Second Circuit do not favor co-lead counsel, there's three examples, two examples from this court, one example from another court of (indiscernible), Your Honor.

So we have worked together with the Grant & Eisenhofer firm efficiently, effectively, and there's no reason why we can't do so here.  Again, there's no proof being offered to rebut the presumption that we can work adequately together.

Your Honor, if I may just continue a little bit, a couple more points.  I would want to point out that there is an issue that we're concerned about, a risk of having a single individual investor serving as

PROCEEDINGS                    30

lead plaintiff.  And the risk, Your Honor, is that if that lead plaintiff should be disqualified, that would throw the whole case into jeopardy.  And I'm raising it now, Your Honor, because a couple of months ago a motion to disqualify was filed in the *Christiansen v. Spectrum Pharmaceuticals* case in front of Judge Caproni.  And in that case Kaplan Fox is serving as lead counsel.  The lead plaintiff in that case, the sole lead plaintiff was an individual investor (inaudible – not using microphone) and then went ahead and started negotiating settlement with the defendants (inaudible), and there's a motion to disqualify (inaudible) and there's a concern in that case (inaudible).

            (pause in proceeding)

            MR. ROSENFELD:  There's a real risk in appointing a single non-institutional investor as a lead plaintiff (indiscernible) already have these types of problems.

            One of the other arguments I raise in our papers and will rely on our papers for those arguments.  Unless Your Honor has specific questions, I have nothing further.

            THE COURT:  I would like to hear your response to the issue raised by Hartmann that the Funds may not,

PROCEEDINGS                    31

I guess this sort of, again, goes to this idea of who is sort of leading the cause when it comes to the collection of funds, you know, them or the lawyers and this argument that the, some of the arguments that you all made about the, you know, about the potential timeframe that we should be looking at about what would be the operative complaint timeframe seem to be arguments that are designed to benefit the lawyers who if they now become class counsel, there's a benefit there versus to benefit the potential class because, one, shortening the timeframe which obviously eliminates your folks and that, number two, some of the funds themselves that are involved in the collective that have any shorter timeframe would hurt them because it is cutting down on their losses.

So that argument that Hartmann made that, you know, it sort of points to the idea that the collection is purely created to, you know, get over this financial hurdle and is not, in fact, one that would be the best to sort of shepherd and guard the interests of the entire class.

MR. ROSENFELD:  I'm glad you asked that, Your Honor, because I had a note to talk about that and I just forgot.  So, Your Honor, we do not denigrate Mr.

PROCEEDINGS                    32

Hartmann's complaint.  We simply say that if the Court were to find that the shortened class period is appropriate, that cuts him out and gives him the gain and that he no longer has standing to pursue the case on behalf of the class.  And then you have to reopen the lead plaintiff process, and assuming there is no issue with the statute of repose or statute of limitations, you can pursue the case again.  But we never denigrate his complaint.  We simply say that if the Court finds that the shorter class period is appropriate, then, it doesn't mean we're going to pursue the shorter class period, it means if the Court makes that determination that the shorter class period is appropriate, then Mr. Hartmann is out of luck.  He has no claim in this case, he has a gain on the stock.  That's our concern.

We studiously avoid taking a position with regard to which an appropriate class period at this point in time, and we've asserted both financial interest letting the Court know what our financial interest is in both situations, but we're simply saying that Mr. Hartmann himself would have no standing if this case were shortened.  Thank you, Your Honor.

THE COURT:  Thank you.  Hartmann, any responses you wanted to make, sir.

PROCEEDINGS                33

MR. CAMPISI:  Thank you, Your Honor.  I'll be brief.  A couple of points.  I think Mr. Rosenfeld said that these funds worked together in the past.  Maybe I misheard him.  The transcript will show.  But I didn't see anything in the declaration that shows that these three funds worked together in any case.  They worked in other cases but not together.

A second point to Mr. Rosenfeld --

THE COURT:  Look, let me pause you for a moment.

MR. CAMPISI:  Sure.

THE COURT:  I did hear that as well, so let me just sort of turn back to the Pension Funds' counsel just to make sure what your argument is.  Is the argument that these funds, because I thought that that was what I heard had worked together in the past and if so why is that not in the declaration?

MR. ROSENFELD:  Sure.  If I did say that, I certainly did not intend to say that.  That was not my intention.  They have not – they worked together with other funds in other securities class actions, and they worked with us and my co-counsel as lawyers in their case, in these cases, and courts have said that if you work with, if you chose that same counsel again to get

PROCEEDINGS                  34

involved in securities class action, then even if you're not the one who decided to work with other funds, the fact that you chose counsel that you've had experience and a good experience with, and then you go ahead and join together with other clients, that that's appropriate and that choice (indiscernible).

THE COURT:  All right, thank you very much for that clarification because I did also hear the --

MR. ROSENFELD:  I apologize for that.

(interposing)

THE COURT:  -- together which was part of sort of a larger conversation, but I also read that as the funds themselves did come together.  So I appreciate that clarification.  Please continue, counsel.

MR. CAMPISI:  Thank you, Your Honor.  I point out that Mr. Hartmann doesn't say in his declaration that he worked with counsel, but he's the CEO of, was the CEO of a very large construction company --

THE COURT:  The question is worked with counsel.  I think the idea is sort of --

MR. CAMPISI:  Supervised.

THE COURT:  -- supervising and - yeah.

MR. CAMPISI:  You know, that's something that Your Honor is interested in, I could get a declaration

PROCEEDINGS                    35

from Mr. Hartmann.  He had for many years been the CEO of a construction company.  Now he's more of a consistent, having sold the company, but as I understand it, that working with lawyers is something that happened routinely.  So the point I'm making is that he's a sophisticated businessman.  He's not a figurehead plaintiff which is really what the PSLRA was designed to defeat, plaintiffs with nominal interests who don't really care that much about the case and that results in lawyers basically taking control.

Here, Mr. Hartmann's financial interest is very substantial to him, he's very interested in pursuing the case and maximizing recovery.  So while he is not an institution, I would not classify him as a retail investor, as he has been characterized.  He is a sophisticated businessman with a very substantial interest in this case.

Your Honor asked about this question of whether an individual investor is somehow trumped by institutions, and there are a number of cases where the pension funds have made this very argument.  They said, well, Congress prefers pension funds, so appoint us over the individual, and courts in the *Tenarus* (phonetic) case, in *Sequans*, I think *Sequans* is one that the Funds

PROCEEDINGS                    36

cite in their papers, there the courts said it goes down to financial interest. The status does not trump the PSLRA. Just because you're a pension fund doesn't mean that an individual investor is somehow not appropriate as a lead plaintiff.

THE COURT: And to be clear, tell me a bit more about those two cases which is the argument that was made by the Fund was that no case that you all cited, you know, and perhaps they were talking about within a particular subset because there's many factors many sort of different test going on here. But I heard them to say that sort of the cases that you were citing about the appropriateness of a group let's say spoke to sort of it's a group versus another professional institutional investor or you've had individual versus individual and that there were no cases that you all have cited for that proposition where sort of the individual, their words, had wrested control away from the institution. You are now (indiscernible) to this *Tenarus* and this --

MR. CAMPISI: *Sequans*.

THE COURT: *Sequans,* for this concept that just because Congress sort of favor institutions that that doesn't mean presumptively an individual is

PROCEEDINGS                    37

disqualified.  But I guess the question is was the end result that the individual, in fact, was, who was appointed lead counsel over an institution or investor, investor, excuse me, were collected in those cases?

MR. CAMPISI:  And I believe that's the case in those cases, individuals were appointed even though the funds laid out the argument that Congress prefers pension funds.  Related to this point, Your Honor, the Funds mention this *Penicad* case which they rely on heavily, and Mr. Rosenfeld mentioned it, a critical distinction there is that the individual investor, his name is Mr. Chao, he did not have the largest financial interest as opposed to any of the other competing movants.  He had a smaller interest, he wasn't challenging whether he, he wasn't saying he had larger interest.  He was challenging the group structure.  So the issue there that he wasn't accepted as a plaintiff really doesn't fit with the scenario we have here.  He didn't have the largest financial interest, and aggregation wasn't necessary in that point, in that case.  So the court didn't, the court there agreed with the funds that Mr. chao shouldn't be appointed, came down to financial interest which isn't the issue here.

Your Honor, the handed up a motion that's

PROCEEDINGS                    38

pending in a totally unrelated case before Judge Caproni.  I'm lead counsel in that case, I know it well. The motion to disqualify hasn't been ruled on --

THE COURT:  Well, but look, I guess I look at – you raised the specter that when you have sort of co-lead counsel in different forums that there could potentially be, you know, disagreements and arguments down the road which could lead to problems.  And what I hear, you know, whatever happens in this other admittedly unrelated case, what I hear from the Funds is that they are raising the specter that if you have an individual who is the lead plaintiff and something goes wrong with them, either they kind of go, you know, into left field on their own and saying, which sounds like what's being alleged in this unrelated matter that I think you said is in front of Judge Caproni, or, you know, if we pick this, if a court were to pick the smaller timeframe as the appropriate class period, you know, taking the Michiana complaint, for example, or who knows what else, that there are scenarios in which if it is just Mr. Hartmann standing alone as lead counsel, that he could be disqualified and then that leads to problems versus if you have professional institutional investors and funds, that you don't have that sort of

PROCEEDINGS                    39

specter.

So while I don't take the whatever it is that's going on with this, alleged to be going on with this plaintiff in that case, (indiscernible) Mr. Hartmann's going to follow suit, I do think in the same way that you have concerns about, you know, it's one thing if you have one firm, it's another thing if you have multiple firms working together, there is the potential when you have an individual as lead plaintiff that something happens to disqualify them or they somehow disqualify themselves.  So regardless of the outcome of this (indiscernible) case, what is your response to that, to sort of this idea – and I guess this is partially why Congress may favor institutions and the like, but this idea that it's sort of more durable and more protective for the class to have an institution versus an individual who could have something go wrong with them. What's your response to that?

MR. CAMPISI:  I see them as two different issues.  The risk of the multiple firms and the inefficiencies, that's something that can be avoided now in terms of structure.  Whereas the issue relating to the plaintiffs and the litigation risks that happen in every case, whether it's a class cert or otherwise,

PROCEEDINGS                    40

there are always going to be risks to plaintiffs in terms of class period, standing, things that come up that we haven't even thought of that yet.  It's all speculation.  So while I appreciate Your Honor's point about there being one person, you know, there are steps like we did in the Caproni case where we just substitute a new plaintiff if something like that were to happen.

THE COURT:  Well, but I still don't – look, certainly no one knows what will happen down the line and you're absolutely right that we would start talking about actually certifying a class, and we've got, you know, a lot more specifics, there can be issues that develop with any, you know, prospective class and any prospective lead plaintiffs.  But the point that I was asking to sort of address is the idea that there, I think I'll sum it in this way, that there are fewer potential issues if there's sort of a certainness in a conglomerate if you've got institutions versus one sole individual.

So I absolutely take your point that, you know, you could have the funds and something, as lead plaintiffs, and something still goes wrong when it comes to certification, but they were sort of teeing up the idea that this wasn't their language but putting all

PROCEEDINGS                    41

your eggs in one basket if you're choosing an individual.  And so you're right, it's kind of speculation across the board, but their argument is it's safer to have an institution and in this situation collective institutions versus an individual.  What's your response to that?

MR. CAMPISI:  Your Honor, again, I think this is something that happens all the time.  Say there was an issue at class cert, my firm, Mr. Rosenfeld's firm, class representatives, if there's some issue to protect, there are mechanisms under Rule 23 to deal with it, but I hear Your Honor's point that there's risks, there are different risks either way.  But I don't think that the risks with Mr. Hartmann are unique; there are risks whichever route the Court decides to go.

I don't have anything further, Your Honor, unless you have questions for me.

THE COURT:  I do not, thank you.  Again, it's sort of everybody's motion, so it's everybody's burden. I had planned to end with Hartmann because he's the one who requested oral argument, but if you want something else, you know, I would always rather get the proper legal arguments and as many facts as I can get.  So if there is something else that you wanted to say on behalf

PROCEEDINGS                    42

of the Funds, I'll certainly hear you.  I'm not forcing you to go if you didn't have more to say, but if you did more to say, I'll hear you.  And I have not forgotten about you, defendants' counsel.  I'll return to you in just a moment in the unlikely event that you would like to say something, you'll be able to do as well.

MR. ROSENFELD:  I appreciate the opportunity, Your Honor, but I think we're good.

THE COURT:  All right.

MR. ROSENFELD:  Thank you.

THE COURT:  And to defendant.

MR. McDONOUGH:  For the record, Your Honor, defendants believe consolidation is appropriate.  As Your Honor commented, we understand that consolidation will be ordered.  Defendants take no position as to the lead plaintiff motion aspects.  Thank you.

THE COURT:  All right, thank you very much.  All right, so, you know, I had been a criminal litigator for years before becoming a judge.  When I switched from state court to federal court, I was sort of surprised and dismayed at how often things were decided on papers because I always felt like, you know, coming in and being able to respond to questions and enhance arguments was always best.  And so I mention that because I

PROCEEDINGS                    43

appreciate the fact that you asked for oral argument.  I think it was helpful across the board.  There were things from the various papers that I think I did understand, and I got right, but there were certain things that in terms of both potential lead plaintiffs that were sort of enhancements and lead to me having a greater understanding.

So I do think, while I initially had not thought that, you know, there would necessarily be that much that would be added in oral argument, I think this is the case when you have good counsel which we have on both sides, and all sides, sir, you said very little, but I trust you're good as well.  So I have found this to be helpful which makes my job a little harder.  Kind of got to go back and look at what I was thinking and put the things that you've argued into context.

What I would ask, so I'm still hoping to get this out shortly, I've taken what I think were fairly detailed notes.  I assume my law clerk has done the same.  But I will also file a short order when I get back upstairs.  (indiscernible) the parties to please order a copy of the transcript sort of post haste just in case there's something I got wrong in my notes just so that I will have that in addition to the papers when

PROCEEDINGS                    44

I finalize my order which, again, I expect to see on the docket quite soon.

So other than that, everyone have a good rest of your day, and we will be adjourned.

MR. CAMPISI:  Thank you.

MR. ROSENFELD:  Thank you, Your Honor.

MR. McDONOUGH:  Thank you, Your Honor.

(Whereupon, the matter is adjourned.)

45

C E R T I F I C A T E


I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of MICHIANA AREA ELECTRICAL WORKERS PENSION FUND v. INARI MEDICAL, Docket #24cv3686, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:  March 21, 2025