UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKER'S PENSION FUND, *Individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>INARI MEDICAL, INC., et al,<br><br>Defendants. | **ORDER**<br><br>24-CV-3686 (JHR) (JW) |

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Before the Court are two sets of dueling motions by plaintiffs Paul Hartmann ("Hartmann") and Michiana Area Electrical Workers' Pension Fund ("Michiana")[1]. One set of motions are for the appointment of lead plaintiff and the other set of motions are for the appointment of lead counsel. For the following reasons, Michiana and the other pension funds' motions are **GRANTED**. The Court appoints the Pension Funds as lead plaintiffs and Grant & Eisenhofer P.A. ("G&E") and Robbins Geller Rudman & Dowd LLP ("RGRD") as lead counsels. Accordingly, Hartmann's motions to be appointed lead plaintiff and to have his choice of counsel appointed as lead counsel are **DENIED**.

---

[1] Michiana brought their action individually and on behalf of other similarly situated, which includes Oklahoma Law Enforcement Retirement System ("OLERS") and City of Pontiac Reestablished General Employees' Retirement System ("PGERS") (collectively "Pension Funds").

## BACKGROUND

On May 13, 2024, Michiana Area Electrical Workers' Pension Fund ("Michiana") filed the Michiana action. Michiana alleged that Defendants mislead investors by failing to disclose a bribery scheme. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 1, at 2. One month later, on June 18, 2024, Hartmann filed the Hartmann action. Hartmann involves the same defendants, the same claims, and the same allegations concerning Defendants' bribery scheme. Hartman, No. 24-CV-4662 (JHR) (JW), Dkt. No. 1, at 2.

In the month July 2024, the instant motions were made by Hartmann and the Pension Funds.[2] Hartmann moved to consolidate the Hartmann and Michiana actions and moved the Court to appoint him and his counsel as lead plaintiff and counsel. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 13. Michiana, joined by other pension funds, Oklahoma Law Enforcement Retirement System and City of Pontiac Reestablished General Employees' Retirement System, also moved to consolidate the two actions and have the Pension Funds and their counsels appointed as lead plaintiffs and counsels. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 18. These motions were referred to this Court, along with general pretrial matters. Oral argument for these motions was held on March 19, 2025. The Court has already granted the motions to consolidate the two cases. Hartman, No. 24-CV-4662 (JHR) (JW), Dkt. No. 31; Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 40.

---

[2] Arvin Nazerzadeh-Yazdi also filed a motion to consolidate and to have him and his counsel be appointed lead plaintiff and counsel, however he withdrew his motion once it became apparent that he did not "have the largest financial interest in this litigation." Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 21, at 1-2.

## DISCUSSION

### I.    Lead Plaintiff

The PSLRA asks courts to appoint the "most adequate plaintiff" as the lead plaintiff as soon as practicable after the consolidation decision is rendered. Constance Sczesny Tr., 223 F.R.D. at 322.

#### A. "[P]erson or [G]roup of [P]ersons"

As a preliminary mater, before the Court can choose the lead plaintiff, the Court must determine whether the group of three pension funds can be considered lead plaintiffs under the PSLRA. Hartmann argues that the Court should not appoint the "cobbled together" group as lead plaintiffs, because it would be "contrary to the purposes of the PSLRA to avoid lawyer-driven litigation." He also argues the Pension Funds lack a pre-litigation relationship and are a transparent effort by their counsels to manufacture the largest financial interest. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 23, at 2.

In response, the Pension Funds make several arguments. First, they argue that the text of the PSLRA "explicitly instructs that a *group* may be afforded the presumption of lead plaintiff." Id., Dkt. No. 26, at 1-2; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ("the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or *group of persons*...") (emphasis added). Second, they argue that small groups of institutional investors, even without

3

prior relationship, have been appointed lead plaintiffs in other cases. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 26, at 2.

It is "indisputabl[e]" that groups can aggregate their losses to become lead plaintiff. In re Tarragon Corp. Sec. Litig., No. 07-CV-7972 (PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007). The lack of a pre-litigation relationship does not disqualify the Pension Funds consideration as lead plaintiffs because the PSLRA is "silent as to the relationship, if any, that members of the group must have with one another," and courts in this District have previously appointed groups who have no pre-litigation relationship as lead plaintiff. Peters v. Jinkosolar Holding Co., No. 11-CV-7133 (JPO), 2012 WL 946875, at *6 (S.D.N.Y. Mar. 19, 2012); Pack v. LuxUrban Hotels Inc., No. 24-CV-1030 (PAE), 2024 WL 3046258, at *3 (S.D.N.Y. June 18, 2024).

However, courts are reluctant to appoint a group as lead plaintiffs if the group was simply assembled to qualify as lead plaintiffs. Peters, 2012 WL 946875, at *6. As a result, a majority of courts in this District will appoint a group of plaintiffs lacking a pre-litigation relationship as lead plaintiffs on a "case-by-case" basis, if the "grouping would best serve the class." May v. Barclays PLC, No. 23-CV-2583 (LJL), 2023 WL 5950689, at *5 (S.D.N.Y. Sept. 13, 2023) (collecting cases). The five Varghese factors are typically used to determine whether a group can be considered as lead plaintiffs: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose

outside counsel, and not vice versa." Id. (citing Varghese v. China Shenghuo Pharm. Holdings, Inc., No. 09-CV-7422 (VM), 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).

Factor one leans against considering the Pension Funds as lead plaintiffs because the Pension Funds' declaration is unclear as to whether there was any pre-litigation relationship. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 20; Id., Dkt. No. 41, at 10.

Factors two, three, four, and five lean in favor of considering the Pension Funds as lead plaintiffs. As detailed below, the Pension Funds' declaration describes their "involvement" in the litigation, their "plans for cooperation," and their "sophistication." Id., Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 20-4, at 3. The Pension Funds have been significantly involved in the litigation's strategy. Id. The funds were individually interested in creating a group of "sophisticated institutional investors" when seeking lead plaintiff appointment and sought each other out because of their "comprehensive and complimentary purchasing patterns" would allow then to provide broad representation. Id. The Pension Funds have "plans for cooperation." Id., at 5. They are able to contact each other if a conflict arises, and as managers of pension funds, they "anticipate arriving at joint decisions consensually." Id.  The Pension Funds are "sophisticat[ed]" potential lead plaintiffs, as each fund has been lead plaintiff in prior securities class actions prior and understand that they will be responsible for "overseeing lead counsel[s]." Id., at 2-5. Lastly, Michiana chose G&E and RGRD as counsels [and not vice versa] because they worked with G&E and RGRD on prior securities litigation and had a good experience. Id., at 5; Id., Dkt. No.

41, at 33-34. After choosing G&E and RGRD as counsels, Michiana sought to work with other funds because they also had a great experience working with funds collaboratively in securities litigation. Id., Dkt. No. 41, at 33-34..

Here, after analyzing the Varghese factors, the Court finds that, as preliminary matter, the Pension Funds can be considered as lead plaintiffs under the PSLRA. Four of the five factors clearly lean in favor of allowing their aggregation. Although the lack of a pre-existing relationship weighs against the Pension Funds, this is not fatal to their motions. In re Paysafe Ltd. Sec. Litig., No. 21-CV-10611 (ER) (KHP), 2024 WL 1636415, at *6 (S.D.N.Y. Apr. 16, 2024) (No clear error in considering a group as lead counsel when the first Varghese factor leaned against aggregation but the remaining four factors leaned in favor); May, 2023 WL 5950689, at 11 ("[T]he Varghese factors weigh in favor of permitting the [group] to proceed as a group under the PLSRA. Though there is no pre-litigation relationship among most of the members, the members are sophisticated, every indication is that they selected counsel on their own accord, and there are plans in place for efficient and constructive cooperation among the members, who are sufficiently small in number to effectively manage the litigation."); Cohen v. Luckin Coffee Inc., No. 20-CV-01293 (LJL), 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (holding that the lack of pre-litigation relationship in a grouping of two pension funds was not disqualifying to their application to be appointed lead plaintiffs.). A group "that [has] no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." Peters, 2012 WL 946875, at

\*6 (citing Goldstein v. Puda Coal, Inc., No. 11-CV-2598 (BSJ), 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011)). The Pension Funds contain three members, which makes their grouping "small and presumptively cohesive." Id., at 7 ("Courts appear to generally agree that a group comprising five or fewer members is appropriate.").

Lastly, the Court is not persuaded by Hartmann's argument that the group is cobbled together, "lawyer driven," or runs afoul of the PSLRA's purpose. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 23, at 7. The Pension Funds group is distinguishable because they are all institutional investors. "Congress enacted the PSLRA in 1995 with the consideration that the best way to prevent lawyer-driven litigation was to encourage institutional investors to serve as lead plaintiffs." Juliar v. Sunopta Inc., No. 08-CV-1070 (PAC), 2009 WL 1955237, at \*2 (S.D.N.Y. Jan. 30, 2009) (Although the individual investors suffered more losses, the "difference is minimal and … does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs"). There is nothing making the Pension Funds otherwise problematic nor is there evidence that would lead one to believe that the group would not serve the best interests of the class. May, 2023 WL 5950689, at \*9.

With that preliminary matter resolved, the Court turns to whether Hartmann or the Pension Funds will be appointed lead plaintiff.

### B. The "Most Adequate Plaintiff"

Under the PSLRA, there exists a presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "The PSLRA creates a rebuttable presumption that the

7

[most adequate] plaintiff should be the plaintiff who (a) has either filed a complaint or [timely] moved for lead plaintiff status; (b) has the largest financial interest in the relief sought; and (c) otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23." Goldenberg v. NeoGenomics, Inc., No. 22-CV-10314 (JHR), 2023 WL 6389101, at *2 (S.D.N.Y. Oct. 2, 2023); 15 U.S.C. § 78u-4(a)(3)(B)(iii). "The presumption that a movant is the most adequate may be rebutted only upon proof by a member of the purported plaintiff class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Goldenberg, 2023 WL 6389101, at *2 (quoting Seidel v. Noah Educ. Holdings Ltd., No. 08-CV-9203 (RJS), 2009 WL 700782, at *4 (S.D.N.Y. Mar. 9, 2009) (quotations omitted).

### 1. The Filing Requirement

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) requires a presumptive "most adequate plaintiff" to have "either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)." In other words, a presumptive "most adequate plaintiff" must have done one of two things. They may have either filed a complaint and, within 20 days of the filing of the complaint, published notice advertising the case in a widely circulated national business-oriented publication or wire service, or they moved to be the lead plaintiff within 60 days of receiving that notice. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); 15 U.S.C. § 78u-4(a)(3)(A)(i).

8

Both Hartmann and the Pension Funds meet the PSLRA's filing requirements. The Pension Funds filed the first action, the Michiana action. It was filed on May 13, 2024 and notice was published over Business Wire national wire service on the same day. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 14, at 7. The Pension Funds meet the filing requirements under 15 U.S.C. § 78u-4(a)(3)(A)(i).

With notice being published on May 13, 2024, the last day one could move to serve as lead plaintiff would be 60 days after or July 12, 2024. On July 12, 2024, Hartmann moved to be appointed lead counsel. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 13. Hartmann meets the filing requirements under 15 U.S.C. § 78u-4(a)(3)(A)(i).

### 2. The Rule 23 Requirement

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) requires a presumptive "most adequate plaintiff" to "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Under Rule 23(a), a class must satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). However, only two of the criteria "directly address the personal characteristics of the class representative," typicality and adequacy. Goldenberg, 2023 WL 6389101, at *3 (quoting In re Fuwei Films Sec. Litig., No. 07-CV-9416 (RJS), 247 F.R.D. 432, 436 (S.D.N.Y. 2008)). For this requirement, only a "preliminary showing of typicality and adequacy is required." Id. (quoting Gronich v. Omega Healthcare Invs., Inc., No. 17 CIV. 8983 (NRB), 2018 WL 1626078, at *3 (S.D.N.Y. Mar. 27, 2018)).

9

Both Hartmann and the Pension Funds have made a "preliminary showing of typicality." Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Hartmann's claims are typical of the other potential class members' claims, as he purchased Defendants' stock, like each member of the proposed class, at prices inflated by Defendants alleged bribery scheme, and suffered losses as a result. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 24, at 9. The Pension Funds' claims are also typical of the other potential class members' claims, as they also purchased Defendants' stock, at prices inflated by Defendants alleged bribery scheme, and suffered losses as a result. Id., at 19, at 9. Typicality has been found in these circumstances. See Goldenberg, 2023 WL 6389101, at *4; Teran v. Subaye, Inc., No. 11-CV-2614 (NRB), 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011); Gronich v. Omega Healthcare Invs., Inc., No. 17-CV-8983 (NRB), 2018 WL 1626078, at *3 (S.D.N.Y. Mar. 27, 2018).

Both Hartmann and the Pension Funds have also made a "preliminary showing of … adequacy." The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation, (2) there is no conflict between the proposed lead plaintiff and the members of the class, and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous

advocacy." Goldenberg, 2023 WL 6389101, at *4 (citing Teran, 2011 WL 4357362, at *5).

Hartmann's choice of counsel is "qualified, experienced, and generally able to conduct the litigation" because of their substantial experience in securities litigation. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 15. There are no alleged conflicts between Hartmann and the other members of the class. Id., Dkt. No. 23, at 6. Hartmann also lost a significant amount of money due to Defendants' alleged bribery scheme, so they have a sufficient interest in the outcome of the case. Id., Dkt. No. 15-6, at 2-3.

Likewise, the Pension Funds' choice of counsels is "qualified, experienced, and generally able to conduct the litigation" because of their substantial experience in securities litigation." Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 20-4, at 5; Dkt. No. 19, at 10. There are no alleged conflicts between the Pension Funds and the other members of the class. Id., at Dkt. No. 19, at 10. The Pension Funds also lost a significant amount of money due to Defendants' alleged bribery scheme, so they have a sufficient interest in the outcome of the case. Id.

### 3. The "Largest Financial Interest" Requirement

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) requires a presumptive "most adequate plaintiff" to have the "largest financial interest in the relief sought by the class." The PSLRA does not give courts a method to calculate the "largest financial interest," but courts in this district "typically consider four factors, known as the *Lax/Olsen* factors, to evaluate financial interest: (1) the number of shares purchased during the class

11

period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." May, 2023 WL 5950689, at *7 (citing In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996)) (collecting cases). Courts generally consider the fourth factor, losses suffered, "to be the most important factor." Id.

Both Hartmann and the Pension Funds argue that they have the largest financial interest in the relief sought by the class.[3] The interest differs depending on the class period used. The class period used by the Pension Funds is February 24, 2022 to February 28, 2024. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 22, at 4. The class period used by Hartmann is March 10, 2021 to February 28, 2024. Id. Courts have held that the lead plaintiff analysis should use the "most inclusive class period" because it includes more potential class members. In re Bear Stearns Companies, Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (Erisa) Litig., No. 08-MDL-1963 (RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (citing In re Doral Fin. Corp. Sec. Litig., No. 05-MDL-1706 (RO), 414 F.Supp.2d 398, 402–03 (S.D.N.Y.2006). Accordingly, the Court will use the class period used by Hartmann,

---

[3] Hartmann asks the Court to not credit the losses asserted by OLERS because they failed to timely submit its transactions in Inari common stock with its sworn certifications, as required by the PSLRA. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 23, at 2 (citing 15 U.S.C. § 78u–4(a)(2)(A)(iv)). Without crediting OLERS losses, Hartmann's loses would exceed the Pension Funds' losses. In response, the Pension Funds argue that the submitted certification from OLERS describes their loses, See Id., at 20-1, at 4, but invertedly omitted to attach OLERS' Schedule A to their certification when it was filed with the Court. Id., at 25, at 1. The Pension Funds provided OLER's Schedule A shortly after they learned of their mistake. Id., at 25, at 6. The Court declines to discredit OLERS' losses because the losses were in the timely certification despite the lack of an attached Schedule A, and ultimately, the deficiency was remedied promptly. In re SLM Corp. Sec. Litig., No. 08-CV-1029 (WHP), 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.").

12

March 10, 2021 to February 28, 2024, as it is the more inclusive of the two provided class periods.

The first factor leans in favor of Hartmann, as he purchased more shares during the class period. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 23, at 5 (Pension Funds' 41,265 versus Hartmann's 99,327). The second factor leans in favor of the Pension Funds, as they purchased more net shares during the class period. Id., Dkt. No. 23, at 5 (Pension Funds' 21,663 versus Hartmann's 19,287). The third factor leans in favor of the Pension Funds, as they expended more net funds during the class period. Id., Dkt. No. 23, at 5 (Pension Funds' $1,822,002 versus Hartmann's $1,545,897). The fourth and, "most important factor," the approximate losses suffered during the class period, leans in favor of the Pension Funds, as they suffered more losses during the class period. Id., Dkt. No. 23, at 5 (Pension Funds' $877,491 versus Hartmann's $716,925).

Given that three of the four factors, including the "most important factor," leans in favor of the Pension Funds, the Court finds that the Pension Funds have the largest financial interest in the relief sought by the class. As a result, the Court finds that the Pension Funds are the presumptive "most adequate plaintiffs."

### C. Rebuttal

The presumption of "most adequate plaintiff" can be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" will either "not fairly and adequately protect the interests of the class" or

13

"is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Hartmann seeks to rebut the Pension Funds' presumptive status with several arguments. First, he argues that the Pension Funds will not adequately protect the interests of the class because their choice of "two co-lead counsel and additional counsel" will "lead to wasteful expenses and duplication, none of which is in the best interests of a class." Michiana, No. 24-CV-3686, Dkt. No. 23, at 13-14. In response, the Pension Funds argue that speculation about inefficiencies is insufficient to rebut their presumptive status. Id., Dkt. No. 26, at 7.

Here, the Court finds that the Pension Funds' presumptive status is not rebutted. At oral argument, the Pension Funds clarified that the "additional counsel" Hartmann points out is "outside counsel" to one of the funds, PGERS. Id., Dkt. No. 41, at 27. The two remaining firms working as proposed lead counsel, G&E and RGED, have successfully and efficiently worked together in prior securities litigation. Id. Courts in this District have appointed co-counsel in PSLRA actions and as a result the Court declines to rebut the presumptive status based on the Pension Funds choice of co-counsels. Omdahl v. Farfetch Ltd., No. 19-CV-8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020) (Appointing co-counsel that had "extensive involvement in complex securities class action litigation."). Without a rebuttal to the presumption, the Court appoints the Pension Funds as lead plaintiffs of the consolidated action.

## II.     Appointment of Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." Goldenberg, 2023 WL 6389101, at *6 (quoting Topping v. Deloitte Touche Tohmatsu CPA, No. 14-CV-2814 (ER), 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)). The Pension Funds have selected both G&E and RGED as lead counsels. Michiana, No. 24-CV-3686 (JHR) (JW), Dkt. No. 19, at 12. G&E has substantial securities litigation experience, given the long list of case citations provided, and has collected "billions of dollars for shareholders, including as lead counsel in some of the largest securities class actions in history." Id. RGRD, likewise has substantial securities litigation experience, given their also long list of case citations provided, which includes recovering awards as large as one billion dollars. Id. The Court concludes that G&E and RGRD are qualified to serve as lead counsel and approves the Pension Funds' selection of counsels.

## CONCLUSION

For the previously mentioned reasons, the Court orders the following:

1. The Pension Funds' motion to be appointed as lead plaintiff is **GRANTED**. The Pension Funds' motion for their counsels, G&E and RGRD, to be appointed lead counsels is also **GRANTED.**

2. Accordingly, Hartmann's motion to be appointed lead plaintiff is **DENIED**. Hartmann's motion to have his counsel appointed as lead counsel is **DENIED**.

3. The Pension Funds, now as lead plaintiffs, are to confer with Defendants on a schedule for filing an amended complaint and responses thereto and file a proposed schedule with the Court. See <u>Michiana</u>, No. 24-CV-3686, Dkt. No. 8.

**The Clerk of Court is respectfully requested to close the following docket numbers:**

1. <u>Michiana</u>, No. 24-CV-3686, **Dkt. Nos. 13, 16, 18**

2. <u>Hartmann</u>, No. 24-CV-4662, **Dkt. Nos. 16.**

   SO ORDERED.

DATED:   New York, New York
         March 27, 2025

_____
JENNIFER E. WILLIS
United States Magistrate Judge

16