**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHIANA AREA ELECTRICAL WORKERS' PENSION FUND, individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br>   v. <br><br> INARI MEDICAL, INC., WILLIAM HOFFMAN, ANDREW HYKES, and MITCHELL C. HILL, <br><br>     Defendants. | No. 1:24-cv-03686-GHW-JW <br><br> (Consolidated with No. 1:24-cv-04662-GHW-JW) <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

KING & SPALDING LLP
1290 Avenue of the Americas
New York, New York 10104

50 California Street
San Francisco, California 94111

*Attorneys for Defendants Inari*
*Medical, Inc., William Hoffman,*
*Andrew Hykes, and Mitch C. Hill*

November 6, 2025

**TABLE OF CONTENTS**

**Page(s)**

A.    Plaintiffs Do Not Adequately Plead Any AKS Violation. ................................................... 1

    1.    Plaintiffs Must Plead an AKS Violation with Particularity. ..................................... 1

    2.    Plaintiffs Fail to Plead Any AKS Violation with Particularity. .............................. 3

B.    Plaintiffs Fail to Plead Falsity with Particularity. ............................................................... 7

    1.    Plaintiffs Plead No False or Misleading Revenue Statement. ............................... 8

    2.    Plaintiffs Plead No False or Misleading SG&A Statement. ................................. 10

    3.    Plaintiffs Plead No False or Misleading Risk Disclosure. .................................... 11

    4.    Plaintiffs Plead No False or Misleading Statement of Regulatory Compliance. ... 13

C.    Plaintiffs Fail to Plead a Strong Inference of Scienter. ...................................................... 14

    1.    Plaintiffs' Confidential Witness Allegations Do Not Support Scienter. ................ 14

    2.    The Individual Defendants' Public Statements Do Not Support Scienter. ........... 16

    3.    The Stock Sales and Compensation Do Not Support Scienter. ............................ 17

    4.    Plaintiffs' "Core Operations" Allegations Do Not Support Scienter. ................... 19

D.    Plaintiffs Fail to Plead a Scheme Under Rule 10b-5. ........................................................ 20

E.    Plaintiffs Fail to Plead a Claim Under Sections 20(a) or 20A. .......................................... 20

Conclusion ..................................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. Oak St. Health, Inc.*,
2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ...........................................................2

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)...................................................................19

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)...................................................................18

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022)..................................................................2

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017)...................................................................15

*Buhrke Family Revocable Trust v. United States Bancorp*,
726 F. Supp. 3d 315 (S.D.N.Y. 2024)........................................................... *passim*

*United States ex rel. Camburn v. Novartis Pharm. Corp.*,
124 F.4th 129 (2d Cir. 2024) .............................................................................3, 4

*United States ex rel. Chao v. Medtronic PLC*,
2021 WL 4816647 (C.D. Cal. Apr. 12, 2021) .........................................................5

*In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367 (S.D.N.Y. 2004).....................................................................9

*City of Pontiac General Employees' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)...................................................................17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)................................................................................12

*City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd. Co.*,
655 F. Supp. 2d 262 (S.D.N.Y. 2009).....................................................................1

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .........................................................5

*Dang v. Amarin Corp. plc*,
750 F. Supp. 3d 431 (D.N.J. 2024).......................................................................17

*Diabat v. Credit Suisse Grp. AG*,
    2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)........................................................................9

*In re Didi Glob. Inc. Sec. Litig.*,
    2024 WL 1119483 (S.D.N.Y. Mar. 14, 2024) ......................................................................12

*DoubleLine Cap. LP v. Odebrecht Fin. Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018).................................................................................9

*In re DraftKings Inc. Sec. Litig.*,
    650 F. Supp. 3d 120 (S.D.N.Y. 2023).................................................................................1

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...............................................................................................19

*Eden Alpha CI LLP v. Polished.com Inc.*,
    763 F. Supp. 3d 270 (E.D.N.Y. 2025)...............................................................................16

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)..........................................................................................18, 19

*Espy v. J2 Global, Inc.*,
    99 F.4th 527 (9th Cir. 2024) ..............................................................................................16

*In re Estée Lauder Co. Sec. Litig.*,
    2025 WL 965686 (S.D.N.Y. Mar. 31, 2025) ...................................................................9, 10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................................12

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
    2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015)......................................................................6

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008).......................................................................8, 11, 12

*Francisco v. Abengoa, S.A.*,
    481 F. Supp. 3d 179 (S.D.N.Y. 2020).................................................................................6

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010).................................................................................9

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)...............................................................................................1

*Gauquie v. Albany Molecular Rsch., Inc.*,
    2016 WL 4007591 (E.D.N.Y. July 26, 2016)......................................................................17

*George v. China Auto. Sys., Inc.*,
    2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) ..................................................................19

*In re GigaCloud Tech. Inc. Sec. Litig.*,
    2025 WL 307378 (S.D.N.Y. Jan. 27, 2025) ...................................................................6

*Gimpel v. Hain Celestial Grp., Inc.*,
    2025 WL 2749562 (2d Cir. Sept. 29, 2025) .................................................................19

*Halford v. AtriCure, Inc.*,
    2010 WL 8973625 (S.D. Ohio Mar. 29, 2010) ..............................................................2

*United States ex rel. Hart v. McKesson Corp.*,
    96 F.4th 145 (2d Cir. 2024) ........................................................................7, 15, 16

*In re IAC/InterActiveCorp Sec. Litig.*,
    695 F. Supp. 2d 109 (S.D.N.Y. 2010) ..........................................................................5

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) .......................................................................5, 6

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ..........................................................................19

*Mauss v. NuVasive, Inc.*,
    2015 WL 10857519 (S.D. Cal. Aug. 28, 2015) .............................................................2

*In re MBIA, Inc., Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010) ........................................................................15

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ......................................................................18

*United States ex rel. Mooney v. Americare, Inc.*,
    2013 WL 1346022 (E.D.N.Y. Apr. 3, 2013) ...............................................................3, 4

*Noto v. 22nd Century Grp., Inc.*,
    650 F. Supp. 3d 33 (W.D.N.Y. 2023) ......................................................................2, 15

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ......................................................................................6

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
    563 F. Supp. 3d 259 (S.D.N.Y. 2021) .........................................................................8

*In re Oxford Health Plans, Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ...............................................................................18

*Saskatchewan Healthcare Emps.' Pension Plan v. KE Holdings Inc.*,
   718 F. Supp. 3d 344 (S.D.N.Y. 2024) ...................................................................15

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) .............................................................................1, 8, 13

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   930 F. Supp. 68 (S.D.N.Y. 1996) ......................................................................12

*In re Qudian Inc. Sec. Litig.*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019)......................................................5

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).............................................................................7, 12

*Shnayder v. Allbirds, Inc.*,
   2025 WL 1745596 (N.D. Cal. June 23, 2025) .....................................................16

*Sinay v. CNOOC Ltd.*,
   554 F. App'x 40 (2d Cir. 2014) ...........................................................................20

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019)...................................................................................13

*In re Skechers USA, Inc. Sec. Litig.*,
   444 F. Supp. 3d 498 (S.D.N.Y. 2020) .................................................................18

*Skiadas v. Acer Therapeutics Inc.*,
   2020 WL 3268495 (S.D.N.Y. June 16, 2020) ................................................15, 17

*In re SolarEdge Techs., Inc. Sec. Litig.*,
   2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025)........................................................17

*In re SolarEdge Techs., Inc. Sec. Litig.*,
   2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) .......................................................19

*In re Sotheby's Holdings, Inc.*,
   2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .....................................................15

*In re STMicroelectronics N.V. Sec. Litig.*,
   2025 WL 2644241 (S.D.N.Y. Sep. 15, 2025).......................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................14

*In re UiPath, Inc. Sec. Litig.*,
   755 F. Supp. 3d 498 (S.D.N.Y. 2024)...................................................................8

*In re Virtu Fin., Inc. Sec. Litig.*,
  770 F. Supp. 3d 482 (E.D.N.Y. 2025) ...................................................................17

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ...................................................................19

*Wilbush v. Ambac Fin. Grp., Inc.*,
  271 F. Supp. 3d 473 (S.D.N.Y. 2017) .....................................................................8

*Zornberg v. NAPCO Sec. Techs., Inc.*,
  778 F. Supp. 3d 516 (E.D.N.Y. 2025) ...................................................................18

**Statutes**

42 U.S.C. § 1320a-7b...............................................................................................1, 7

PSLRA ...............................................................................................................1, 7, 14

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................1

## <u>REPLY</u>

As explained in Inari's motion, Plaintiffs do not satisfy their burden under Rule 9(b) and the PSLRA to plead either falsity or scienter with particularity. Plaintiffs offer no persuasive response; their arguments misstate the law and the Complaint's allegations. The Court should, accordingly, dismiss the Complaint in full.

### A.    Plaintiffs Do Not Adequately Plead Any AKS Violation.

Plaintiffs' claims all fail for the fundamental reason that they do not adequately plead that Inari ever violated the AKS. Mot. 8-10.[1] Because Plaintiffs' entire theory of falsity is that Inari's statements were rendered misleading by a failure to disclose that Inari violated the AKS, Rule 9(b) and the PSLRA require Plaintiffs to plead *with particularity* that Inari violated the AKS. Because Plaintiffs fail to do so, all their claims should be dismissed.

### 1.    Plaintiffs Must Plead an AKS Violation with Particularity.

Plaintiffs' main response to Inari's argument is to misstate the law. Plaintiffs argue, relying on cases from outside the Second Circuit, that they need not plead an AKS violation with particularity. Opp. 11-12. But the Second Circuit has held unambiguously that "when a complaint claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 463 (2d Cir. 2019).[2] Because Plaintiffs' theory of falsity relies entirely on Inari's alleged nondisclosure of underlying AKS violations, Plaintiffs must plead those AKS violations *with particularity* under Rule 9(b) and the PSLRA.

---

[1] Plaintiffs do not dispute, and thus concede, that they fail to plead a violation of the False Claims Act ("FCA") with particularity. Mot. 11. Although Plaintiffs assert in passing that Inari violated the FCA (Opp. 9, 15), they do not deny that they plead *no* particular facts about *any* reimbursement claim, let alone a claim "resulting from" an AKS violation. 42 U.S.C. § 1320a-7b(g).

[2] *Accord Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021); *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 156-57 (S.D.N.Y. 2023); *City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd. Co.*, 655 F. Supp. 2d 262, 270 (S.D.N.Y. 2009).

Plaintiffs do not and cannot dispute the meaning of that clear Second Circuit law. Instead, they cite cases decided by district courts from other circuits. *Allison v. Oak St. Health, Inc.*, 2023 WL 1928119 (N.D. Ill. Feb. 10, 2023); *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 659 (M.D. Tenn. 2022); *Mauss v. NuVasive, Inc.*, 2015 WL 10857519 (S.D. Cal. Aug. 28, 2015); *Halford v. AtriCure, Inc.*, 2010 WL 8973625 (S.D. Ohio Mar. 29, 2010).[3] To the extent those cases hold that Plaintiffs need not plead an AKS violation with particularity, those cases conflict with Second Circuit precedent and cannot be followed.

The cases Plaintiffs cite are also distinguishable on their facts. *Halford* did not involve any allegations of AKS violations, and the plaintiffs' theory of falsity there was "not dependent on the legality or illegality of Defendants' promotion and sales activities." 2010 WL 8973625, at *9. Plaintiffs' theory of falsity, in contrast, *does* depend on Inari having violated the AKS. *Allison*, in turn, is inapt because defendants did not challenge the particularity of the plaintiffs' AKS allegations. 2023 WL 1928119. And the argument *Mauss* rejected—that a plaintiff "must allege a *per se* violation of the [AKS]," 2015 WL 10857519, at *8—is not Inari's argument. Inari argues not that Plaintiffs must plead a *per se* AKS violation (there is no such thing), but that Plaintiffs fail to plead *any* AKS violation with the required particularity. And the plaintiffs' AKS allegations in these cases were more detailed than Plaintiffs' here, including because (unlike Plaintiffs) they specifically identified the dollar amount of individual alleged kickbacks. *See Allison*, 2023 WL 1928119, at *2; *Mauss*, 2015 WL 10857519, at *2-3. Contrary to Plaintiffs' assertion (Opp. 12), the plaintiff in *Bond* did "alleg[e] . . . specific transactions." *See* 587 F. Supp. 3d at 658-59 (alleging specific transfer of "gift cards to a medical practice in Georgia").

---

[3] The sole case from within Second Circuit that Plaintiffs cite has nothing to do with this issue. *Noto v. 22nd Century Grp., Inc.*, 650 F. Supp. 3d 33, 43 (W.D.N.Y. 2023). It did not even address allegations of falsity. *Id.* at 44-52 (addressing only scienter and loss causation).

For these reasons, this Court should reject Plaintiffs' attempt to escape binding Second Circuit precedent requiring them to plead Inari's alleged AKS violations with particularity.

### 2.    Plaintiffs Fail to Plead Any AKS Violation with Particularity.

The law in the Second Circuit is also clear that, to plead an AKS violation with particularity, a plaintiff must identify specific events that constitute kickbacks, including by identifying the dates of those events, "the doctors and attendees involved," and the "name and location" of physicians who allegedly received kickbacks. *United States ex rel. Camburn v. Novartis Pharm. Corp.*, 124 F.4th 129, 137-38 (2d Cir. 2024); *accord, e.g.*, *United States ex rel. Mooney v. Americare, Inc.*, 2013 WL 1346022, at *4 (E.D.N.Y. Apr. 3, 2013). Plaintiffs attempt (Opp. 11 n.4) to distinguish these cases because they were *qui tam* FCA cases rather than securities fraud cases, but that is irrelevant. To plead their securities claims, Plaintiffs must plead an underlying AKS violation with particularity. And the requirements for pleading an AKS violation with particularity do not change based on the kind of claim at issue. Plaintiffs offer no argument, and cite no authority, for the proposition that allegations insufficient to plead an AKS violation in an FCA case would somehow be sufficient in a securities case.[4]

Plaintiffs do not and cannot contend that they have alleged the details required to plead an AKS violation with particularity under *Camburn*. They do not deny that they have not identified any specific improper event or alleged details of what happened at the event, when or where it occurred, which physicians attended, what those physicians received, or the value of any alleged kickback. The allegations Plaintiffs cite (Opp. 9-10) are conclusory and nonspecific. Most of those allegations do not purport to describe *any* conduct by Inari, much less illegal conduct. ¶¶ 35-50. The remaining allegations make conclusory or nonspecific assertions of "improper and unethical

---

[4] Moreover, Plaintiffs *also* assert that Inari violated the FCA by violating the AKS. *E.g.*, ¶ 47; Opp. 9, 15. FCA cases directly govern that claim.

sales and marketing practices" without identifying a single specific example of an unlawful kickback or providing the required details of that supposed kickback. ¶¶ 55-64. That is significant because Plaintiffs' own allegations, and the documents on which they rely, make clear that a company can appropriately conduct training programs with physicians and pay for physicians' travel, lodging, meals, and refreshments connected with those programs. ¶¶ 42, 52, 141; Ex. 6 at 22-26. Without alleging details about specific alleged kickbacks, Plaintiffs cannot plead with particularity that Inari ever crossed the line separating a permissible expense from an illegal kickback. *Camburn*, 124 F.4th at 139; *Mooney*, 2013 WL 1346022, at *4.

For example, FE-1 asserts generally that "Inari paid for physicians to attend training sessions in vacation destinations, despite that the training event was not for the physician's specialty, or that the training session was intended for nurses rather than physicians." ¶ 59. But Plaintiffs do not describe any specific training session, physician, or payment. The mere fact that an alleged training was not in a particular physician's specialty or was designed for nurses does not establish that the training was useless for that physician or that paying for travel, lodging, and meals in connection with the training would be an unlawful kickback. Without alleging details about specific trainings, physicians, and payments, Plaintiffs cannot plead with particularity that any payment was illegal. Similarly, FE-1 asserts that Inari would schedule trainings around other desirable events "such as a NASCAR race," but Plaintiffs do not identify any specific time that happened. *Id.* In particular, FE-1 does not allege that Inari ever paid for a physician to *attend* a non-medical event, and it would not violate the AKS for Inari to try to increase attendance at lawful trainings by scheduling those trainings around other events that physicians might like to attend. Here too, Plaintiffs do not allege sufficient details to plead with particularity that any of Inari's alleged trainings or payments actually violated the AKS.

4

Plaintiffs' allegations about FE-2 and FE-3 are similarly nonspecific. Plaintiffs allege that FE-2 "spent approximately $5,000 on physician dinners in a three-month period" (¶ 62), but they do not allege how many physicians or dinners that amount represents or the context of any dinner. Without such allegations, Plaintiffs cannot establish that any particular dinner was an unlawful kickback rather than a lawful training expense.[5] The same is true of FE-2's purported assertion that "another rep . . . was 'congratulated and rewarded' for spending approximately $50,000 on dinners." *Id.* Similarly, FE-3 does not identify any particular physician hired by Inari as a consultant or plead details of any unlawful consultant payment. ¶ 63. It does not violate the AKS simply to hire a physician as a consultant or to pay the physician for that work. ¶ 43; *United States ex rel. Chao v. Medtronic PLC*, 2021 WL 4816647, at *8 (C.D. Cal. Apr. 12, 2021). Plaintiffs do not identify any instance in which Inari allegedly paid a physician-consultant for using Inari's devices rather than for lawful consulting work.  ¶ 63.

Plaintiffs' confidential witness ("CW") allegations also lack corroboration. Mot. 26-28. Contrary to Plaintiffs' argument (Opp. 13), courts regularly dismiss complaints due to inadequate CW allegations.[6] Here, Plaintiffs do not dispute that the Complaint "does not contain any independent [well-pled] factual allegations that corroborate [the] confidential source[s's] statements." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803 (S.D.N.Y. 2020) (quotations omitted). And FE-2's and FE-3's "job responsibilities are not described at a sufficient level of particularity to indicate a high likelihood that they actually knew facts underlying their allegations." *Id.* (quotations omitted). Plaintiffs contend (Opp. 13) that they identified FE-2's and FE-3's "title[s],

---

[5] For example, if 100 physicians attended a lawful training event and Inari reimbursed each physician $50 for dinner, those expenses would be lawful even under the Complaint's description of the AKS. ¶¶ 42, 50-52.

[6] *E.g.*, *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016); *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010).

dates of employment, and specific role[s]," but that is not sufficient without a description of their *responsibilities*. *Id*.[7] With respect to FE-3 in particular, it is not the case that the Complaint alleges that he "regularly interacted with HCPs and attended meetings wherein Inari employees were instructed and encouraged to carry out the kickback scheme." Opp. 13. For the most part, Plaintiffs identify *no* basis for FE-3's alleged information. ¶ 63. Plaintiffs allege that FE-2 and FE-3 attended "regular national sales meeting" (¶ 64), but they do not provide sufficient details about any particular meeting, including dates, attendees, "details about the timing of the meetings in relation to defendants' statements, or how discussions at those meetings were contradictory to defendants' public statements." *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *19 (S.D.N.Y. Aug. 19, 2015); *accord, e.g.*, *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020), *vacated in part on other grounds*, 2025 WL 2825369 (2d. Cir. 2025).

Finally, Plaintiffs continue to misrepresent the August 9, 2024 Deutsche Bank report. Plaintiffs suggest (Opp. 10) that the report contained negative comments from "multiple Inari sales reps," but that is false. The report cited "critical comments" from "*one* ex-sales rep." Ex. 7 at 3 (emphasis added). An analyst's summary of hearsay comments from one unnamed ex-employee is not sufficient to plead AKS violations with particularity, especially when the report did not *endorse* any of those criticisms but instead cautioned that "former employees can have a strong negative bias toward their old company," explained that the "commentary provided in the majority of our conversations ranged from benign to positive," and gave Inari a "Buy" rating. *Id.* at 1, 3. Moreover, the unsourced (and inaccurate) accusations that "sales reps [were] pressured to upsell unnecessary tech upgrades" or to "push the 24F catheter even in cases where it can be dangerous" (Opp. 10-11

---

[7] Plaintiffs' cases are inapposite. *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000), made no finding "as to whether the plaintiffs' allegations … were sufficiently particularized." In *In re GigaCloud Tech. Inc. Sec. Litig.*, 2025 WL 307378, at *7-8 (S.D.N.Y. Jan. 27, 2025), the plaintiff alleged the sort of details about the CWs' job responsibilities that are entirely lacking for FE-2 and FE-3 here.

(emphases omitted)) have nothing to do with whether Inari paid unlawful kickbacks.

Nor do Plaintiffs adequately plead that Inari acted "knowingly and willfully" in providing any alleged kickbacks, 42 U.S.C. § 1320a-7b(b)(2)(B), because they do not allege specific facts giving rise to a strong inference that Inari "act[ed] with knowledge that [its] conduct was unlawful," *United States ex rel. Hart v. McKesson Corp.*, 96 F.4th 145, 157 (2d Cir. 2024) (quotations omitted). Plaintiffs assert that "FE-1 confirms that Inari's executives had knowledge of the scheme." Opp. 13. That is incorrect. The most FE-1 can assert is that the Individual Defendants knew FE-1 "*believed*" Inari's actions "to be improper." ¶ 59 (emphasis added). Plaintiffs allege no facts establishing with particularity that FE-1's "belief was shared by others" or could "be imputed to [the defendant] as a whole." *Hart*, 96 F.4th at 161. FE-1's assertion that the Individual Defendants "fl[ew] to and participat[ed] in physician events and dinners" is transparently insufficient to support a conclusion that the Individual Defendants "personally participated in" the alleged "kickback scheme." ¶ 60. The AKS does not prohibit "physician events and dinners," and Plaintiffs plead no facts suggesting that any of the events the Individual Defendants allegedly attended constituted an illegal kickback rather than a permissible training event.

## B.    Plaintiffs Fail to Plead Falsity with Particularity.

Even if Plaintiffs did plead AKS violations with particularity—and they do not—they still do not plead with particularity that those AKS violations rendered any of Inari's challenged statements materially false or misleading. Mot. 11-28. Indeed, Plaintiffs fail to address the vast majority of the statements challenged in the Complaint. Despite purporting to challenge a broad array of statements, Plaintiffs' opposition discusses only a handful of challenged statements while ignoring the rest. With respect to the statements Plaintiffs do not address, they utterly fail to satisfy their burden under the PSLRA to "demonstrate with specificity *why* and *how*" each challenged statement was false or misleading. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (emphases

added); *see also In re UiPath, Inc. Sec. Litig.*, 755 F. Supp. 3d 498, 511 n.5 (S.D.N.Y. 2024);

*Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 487 n.9 (S.D.N.Y. 2017). Even as to the

statements Plaintiffs address, they do not establish that those statements were rendered materially

false or misleading by any alleged undisclosed AKS violation.

### 1.    Plaintiffs Plead No False or Misleading Revenue Statement.

Plaintiffs do not plead with particularity that any of Inari's revenue statements was

materially false or misleading. To begin, Plaintiffs discuss only four of those statements. *See* Opp.

16-17 (addressing ¶¶ 80, 82, 88, 91). Plaintiffs offer no argument with respect to the remaining 25

revenue statements in the Complaint. Opp. 16 n.9. Plaintiffs' failure to address those statements

confirms that they have not established the statements' falsity with particularity.

As to the four statements Plaintiffs address, Plaintiffs do not contend that any of those

statements was *false* (Opp. 16), and it is well-settled that "accurately reported financial statements

do not automatically become misleading by virtue of the company's nondisclosure of suspected

misconduct that may have contributed to the financial results." *Plumber & Steamfitters*, 11 F.4th

at 98-99. To plead that Inari's revenue statements were actionably misleading, therefore, Plaintiffs

must plead that there was "a sufficiently close nexus between the affirmative statement[s] and the

alleged omission" to put Inari's AKS compliance "'in play.'" *In re Omega Healthcare Invs., Inc.*

*Sec. Litig.*, 563 F. Supp. 3d 259, 272-73 (S.D.N.Y. 2021).

No such "close nexus" exists here. Contrary to Plaintiffs' argument (Opp. 16-17), it is not

sufficient merely for Inari to have (truthfully) identified some sources of its revenue. *In re FBR*

*Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 356 & n.6 (S.D.N.Y. 2008). Rather, Inari must have made

statements that would lead "a reasonable investor [to] draw[] inferences about the [allegedly]

omitted information" about AKS violations. *Buhrke Family Revocable Trust v. United States*

*Bancorp*, 726 F. Supp. 3d 315, 340 (S.D.N.Y. 2024). Here, that would at least require Inari to have

discussed its physician training or marketing practices. But none of Inari's challenged revenue statements did that, so no investor reading Inari's statements would have inferred anything one way or the other about whether Inari's practices complied with the AKS. *E.g.*, *Buhrke*, 726 F. Supp. 3d at 340-41; *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *12, 15-16 (S.D.N.Y. Sept. 19, 2024); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 378 (S.D.N.Y. 2004).

The cases Plaintiffs cite do not establish otherwise because the statements in each of those cases *specifically referenced* the conduct the plaintiffs alleged to be unlawful. In *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 408, 442-44 (S.D.N.Y. 2018), the defendant touted its "successful bidding" on construction contracts while failing to disclose that *those very contracts* were obtained through bribery.[8] In *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 176-77, 182-89 (S.D.N.Y. 2010), the defendant *affirmatively misrepresented* its loan origination and underwriting practices. And in *In re Estée Lauder Co. Sec. Litig.*, 2025 WL 965686, at *1-2 (S.D.N.Y. Mar. 31, 2025), the defendant *affirmatively misrepresented* the extent of its reliance on gray-market sales in China and *affirmatively misrepresented* the cause of declining sales attributable to China's crackdown on gray markets. The defendant's challenged statements also *specifically discussed* its sales in China without disclosing that those sales occurred through gray markets. *Id.* at *2. The court held that the statements specifically referencing Chinese sales put the propriety of those sales at issue, but that other challenged statements did not. *Id.* at *3-4. At most, therefore, these cases might support an allegation of falsity if a company's revenue statements touted its training and marketing practices without disclosing that those practices (allegedly) violated the AKS. Only in that instance would the lawfulness of those practices be "in

---

[8] Indeed, *DoubleLine* rejected Plaintiffs' "expansive" argument "that a company that places its success in issue is obligated to disclose information regarding the source of its success," finding that such a "holding could easily lead to Section 10(b) claims based on information too tenuously related to the alleged misstatement itself." 323 F. Supp. 3d at 442 n.8. That is precisely what Plaintiffs seek to do here.

play." Because none of Inari's challenged statements referenced its training and marketing practices, its statements did not put AKS compliance in play, and the statements could not be rendered materially misleading by any alleged failure to disclose AKS violations.

### 2. Plaintiffs Plead No False or Misleading SG&A Statement.

Plaintiffs address only one of Inari's alleged SG&A statements (Opp. 17-18 (discussing ¶ 127 but not ¶ 126 or ¶ 128)), and they do not plead with particularity that that statement was false or misleading. Again, Plaintiffs do not contend that the statement itself was false (Opp. 18), and they cannot establish that the statement would have misled a "reasonable investor" into believing something allegedly false about Inari's AKS compliance. *Buhrke*, 726 F. Supp. 3d at 340.

The one statement Plaintiffs discuss implies nothing about Inari's training or marketing practices or Inari's AKS compliance.[9] The statement reads: "the efficiency of our sales organization, if you look at the SG&A as a percentage of revenue consumed, is much lower than almost anybody who's grown as fast ever. . . . We doubled our spend in R&D, we continue to add sales professionals at a very rapid clip. They don't consume cash like most do because they become productive very, very quickly." Opp. 17 (quoting ¶ 127). The "subject matter" of that statement simply does not "relate closely enough to the allegedly omitted information" to have been rendered materially misleading by any alleged failure to disclose AKS violations. *Buhrke*, 726 F. Supp. 3d at 340. As discussed above, *Estée Lauder*—the only case Plaintiffs cite on this issue—is distinguishable because the challenged statements there both directly referenced the defendant's improper conduct and contained affirmative misrepresentations about that conduct. 2025 WL 965686, at *1-4. Inari's challenged SG&A statements did not.

---

[9] Plaintiffs assert otherwise (Opp. 18-19), but the statement they cite (¶ 76) is not an SG&A statement.

### 3.    Plaintiffs Plead No False or Misleading Risk Disclosure.

Plaintiffs address only one of Inari's three allegedly misleading risk disclosures (Opp. 14-15 (addressing ¶ 67 but not ¶ 70 or ¶ 73)), and Plaintiffs do not deny that Inari explicitly warned investors of the precise risk that ultimately materialized: that Inari could "be subject to significant penalties" if its "operations [were] found to be in violation of" the AKS. (¶ 67.) Plaintiffs contend those disclosures were misleading because "the risk ha[d] already materialized" (Opp. 14-15), but that is incorrect. The risks about which Inari warned—the risk of penalties or other adverse consequences from a finding of AKS noncompliance—undisputedly had *not* occurred at the time of Inari's statements. Plaintiffs claim only that Inari was violating the AKS at that time, but Inari's risk disclosures did not warn investors about the *fact* of alleged AKS violations. Inari warned only about the potential consequences of a *finding of* or *investigation into* such violations.

Courts have squarely rejected Plaintiffs' attempts to conflate disclosures about the risk of *consequences* of alleged misconduct with disclosures about the misconduct itself. In *FBR*, for example, the plaintiff argued that the disclosure of "financial loss" caused by "noncompliance with securities regulations" was misleading because the defendant did not disclose that it was violating securities regulations. 544 F. Supp. 2d at 362. The court rejected that argument, holding that although "the alleged noncompliance had occurred," the disclosed risk was only that "noncompliance with securities regulations would actually cause a loss to the company or its shareholders." *Id.* Because that risk "had neither 'transpired' nor become a 'near certainty'" at the time of the defendant's risk disclosure, the disclosure was not misleading. *Id.* Similarly, in *Buhrke*, the court held that the disclosure of a risk of "financial loss resulting from a failure to safeguard personal information" was not rendered misleading by the alleged failure to disclose that defendant in fact had failed to safeguard information. 726 F. Supp. 3d at 349. As in *FBR*, the risk disclosure was not misleading because "the *specific risk* that [the defendant] warned against … had not

11

materialized at that point." *Id.* (emphasis added). Those holdings are on all fours with this case.

The cases Plaintiffs cite are not to the contrary. In their primary case, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 515-16 (S.D.N.Y. 2013), the defendant "warned that increased mobile usage and product decisions '*may* negatively affect [its] revenue' when, in fact, these factors allegedly already '*had* negatively impacted [its] revenue.'" *Id.* at 514 (emphases in original). In *In re Didi Glob. Inc. Sec. Litig.*, 2024 WL 1119483, at *8 (S.D.N.Y. Mar. 14, 2024), the defendant warned about risks related to "the Chinese legal and regulatory landscape" while omitting that the Chinese government had *specifically warned* the defendant "that it did not think that [the defendant] was fully compliant with [Chinese] laws." In *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996), the defendant warned that the "residual value [of its aircraft] *could* decline" when in fact it knew "that residual values of its aircraft *would* decline radically." [10] *Id.* (emphases in original). That is, in each of these cases, the *specific risk* the defendant warned about had already materialized. That is not the case here, where the risk Inari warned about—"significant penalties" resulting from a finding of AKS liability—had *not* materialized. Plaintiffs instead rely solely on "the risk of noncompliance" (Opp. 15), which was not the risk disclosed in Inari's statements. That cannot render Inari's accurate disclosures misleading. *FBR*, 544 F. Supp. 2d at 362.

In short, Inari truthfully disclosed the risk of consequences that could result if it were found to have violated the AKS. Inari had no obligation to go further and confess "uncharged, unadjudicated wrongdoing" in advance. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (quotations omitted). The Court should dismiss all of Plaintiffs' claims to the extent they rely on Inari's risk disclosures.

---

[10] *Rombach v. Chang*, 355 F.3d 164, 173-76 (2d Cir. 2004), found that the defendant's risk disclosures were *not* misleading.

### 4.    Plaintiffs Plead No False or Misleading Statement of Regulatory Compliance.

Finally, Plaintiffs do not establish that either of Inari's alleged contractual statements of regulatory compliance was false or misleading. Plaintiffs ignore the statement they challenge from the LimFlow® purchase agreement. ¶ 78. As Inari demonstrated in its motion, that statement on its face did not refer to *Inari*'s compliance but only to the compliance of the LimFlow® entities Inari was acquiring. Ex. 8 at 3. Plaintiffs instead focus solely on the statement in Inari's underwriting agreement with two banks (¶ 76), but Plaintiffs again mischaracterize the full nature of that statement. The underwriting agreement did not guarantee perfect compliance. It represented compliance "***except*** where instances of non-compliance would not, singly or in the aggregate, reasonably be expected to result in a Material Adverse Effect" in the context of the underlying agreement. ¶ 76 (emphasis added). Plaintiffs do not address that qualification or dispute that they have not alleged that Inari's purported "instances of non-compliance" would have "result[ed] in a Material Adverse Effect" as defined in the agreement. *Id.* Plaintiffs thus cannot establish that Inari's qualified statement of compliance was materially false or misleading.

Plaintiffs also do not engage with Second Circuit precedent, discussed in Inari's motion, holding that "simple and generic assertions" of compliance cannot be materially false or misleading. *Singh v. Cigna Corp.*, 918 F.3d 57, 63-64 (2d Cir. 2019); *see* Mot. 24-25. Only "detailed" and "specific" statements "of compliance efforts" can render "[a]ssertions of satisfactory regulatory compliance … materially misleading." *Plumber & Steamfitters*, 11 F.4th at 103 (quotations omitted). Plaintiffs do not contend that Inari's statements contained any such "detailed descriptions" of compliance, *Singh*, 918 F.3d at 63-64, and they plainly did not. That is particularly true in light of the fact that the statements appeared only in private contracts that were appended to SEC filings rather than in the SEC filings themselves. Plaintiffs ignore that fact and

do not cite any case basing Exchange Act liability on such vague, nonspecific statements buried in attachments to an SEC filing.

### C.    Plaintiffs Fail to Plead a Strong Inference of Scienter.

Even if Plaintiffs pleaded falsity with particularity—and they do not—all of their claims should still be dismissed for failure to plead scienter with particularity. The PSLRA's "'strong inference' standard 'unequivocally raise[d] the bar for pleading scienter.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (citations omitted). That standard requires Plaintiffs to plead particularized facts leading to "an inference of scienter [that is] more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.

Plaintiffs do not plead facts making an inference of scienter at least as compelling as the nonfraudulent inference that Inari intended to host lawful training sessions to educate healthcare professionals about its innovative devices. Plaintiffs admit that Inari's business required significant educational communications to physicians (Opp. 1-2), and Plaintiffs correctly do not contend that there is anything inherently improper about holding educational programs for physicians. To the contrary, Plaintiffs' own allegations confirm that companies may permissibly pay for healthcare professionals' travel, lodgings, meals, drinks, and other expenses in connection with such programs. ¶¶ 42, 50-52; Ex. 6 at 10, 24-25. Plaintiffs also allege that Inari adopted numerous practices and guardrails to avoid AKS violations and affirmatively reported all of the expenses Plaintiffs claim were unlawful. ¶¶ 48-53. In light of these allegations, Plaintiffs identify no facts creating a strong inference that any payments were *intentionally* or *recklessly* illegal, as opposed to permissible or, if improper, improper only through mistake or carelessness.

### 1.    Plaintiffs' Confidential Witness Allegations Do Not Support Scienter.

To argue that they have alleged scienter with particularity, Plaintiffs primarily rely on

statements from their CWs. But those statements, in addition to being insufficiently detailed (*supra* A.2.), do not make an inference of scienter at least as compelling as the nonfraudulent inference.

*First*, Plaintiffs rely on FE-1 to assert that "Hykes participated in Inari's kickback scheme by flying to and attending physician events and dinners that violated the AKS." Opp. 20. But the allegation Plaintiffs cite does not allege that the events Hykes attended violated the AKS. ¶ 60. Nor, as explained above, do Plaintiffs plead the sort of details that would be required to plead with particularity that those events were illegal, much less that Hykes participated while *knowing* they were illegal. That distinguishes the cases Plaintiffs cite, in which the plaintiffs alleged specific, corroborated facts showing that executives were directly involved in unlawful conduct. *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 764-65 (S.D.N.Y. 2017) (plaintiffs "allege[d] in detail that executives … coordinated payments to … political officials"); *In re Sotheby's Holdings, Inc.*, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (plaintiffs "alleged facts" showing that executives "were directly involved in arranging the illegal price-fixing agreement").

*Second*, Plaintiffs rely on FE-1's alleged statement to Hykes that he "believed" Inari's actions "to be improper." ¶ 59; *see* Opp. 21-22. But Plaintiffs do not dispute that they have not alleged that any Defendant "shared" FE-1's belief. *Hart*, 96 F.4th at 161. Plaintiffs simply deny that they must plead such facts, but they cite no case holding as much.[11] Nor do Plaintiffs cite any case endorsing their remarkable argument that any internal complaint from a CW automatically "suffices to demonstrate knowledge" or "the requisite recklessness." Opp. 22.[12] In contrast,

---

[11] *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495 (S.D.N.Y. June 16, 2020), bears no resemblance to this case. It found scienter based on the special "case law addressing misstatements relating to FDA approval," which does not apply here. *Id.* at *10 (quotations omitted). *Noto* also has nothing to do with these issues. 650 F. Supp. 3d at 49-50.

[12] Anyway, the Complaint does not allege that FE-1 "presented Defendants with *information* . . . contradict[ing] their public statements." Opp. 22 (emphasis added, quotation marks omitted). The Complaint alleges only that FE-1 told Hykes he was "uncomfortable" with Inari's practices (¶ 60), without alleging that FE-1 presented any concrete data that would make disagreement with his opinion necessarily reckless. *Saskatchewan Healthcare Emps.' Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 390 (S.D.N.Y. 2024) (Woods, J.); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 590 (S.D.N.Y. 2010).

multiple cases have held that CWs' complaints to executives "do not, without more, plausibly suggest that [the] executives adopted employees' views." *Shnayder v. Allbirds, Inc.*, 2025 WL 1745596, at *23 (N.D. Cal. June 23, 2025); *accord, e.g.*, *Hart*, 96 F.4th at 161; *Espy v. J2 Global, Inc.*, 99 F.4th 527, 536-37 (9th Cir. 2024); Mot. 33 & n.11. Here too, FE-1's "own belief" that Inari was violating the AKS "does not help show that [Inari] believed the same." *Hart*, 96 F.4th at 161. Nor is it enough for Plaintiffs to allege only that FE-1's supervisor was fired after FE-1's complaints. *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 298-99 (E.D.N.Y. 2025); *contra* Opp. 20. Unlike in the case Plaintiffs cite, *In re STMicroelectronics N.V. Sec. Litig.*, 2025 WL 2644241, at *2-3 (S.D.N.Y. Sep. 15, 2025), Plaintiffs do not allege facts suggesting that FE-1's supervisor was fired *because of* FE-1's complaints. ¶ 60.

*Third*, Plaintiffs' allegations about meetings supposedly attended by FE-2 and FE-3 (Opp. 22) do not support a strong inference of scienter. As discussed above, Plaintiffs do not allege the necessary details about specific meetings. That aside, nothing about FE-2's or FE-3's allegations suggests fraud or recklessness by the Individual Defendants. It is hardly surprising, or indicative of fraudulent intent, that a company whose business depended on persuading physicians to use its groundbreaking devices would "track" its sales to physicians. Opp. 22; ¶¶ 62-64. In fact, it would be more surprising if a medical device company did *not* keep track of how often physicians were using its devices. None of those allegations suggests that Inari was knowingly or recklessly *violating the AKS* by paying physicians *for using* its devices.

### 2.    The Individual Defendants' Public Statements Do Not Support Scienter.

Plaintiffs advance a remarkable argument that the mere fact that the Individual Defendants made public statements acknowledging the AKS's existence demonstrates that the Individual Defendants intentionally or recklessly *violated* the AKS. Opp. 23-24. If that were the law, then no Exchange Act plaintiff could *ever* fail to plead scienter, because every securities fraud case

necessarily involves public statements about the subject matter of the alleged fraud. Unsurprisingly, therefore, that is not the law. *See Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 476 (D.N.J. 2024) ("[T]he fact that a company officer makes a statement about a topic does not necessarily support the inference that he knows all facts relevant to that topic.")

Nothing Plaintiffs cite holds otherwise. In *In re SolarEdge Technologies, Inc. Sec. Litig.*, 2025 WL 1031154, at *13 (S.D.N.Y. Apr. 6, 2025), the court found that the defendants knew about "monthly reports of sales and inventory" because they referenced *those specific reports* in public statements. The court in *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2-3 (E.D.N.Y. July 26, 2016), found scienter based on a number of different factors, not merely the defendants' public statements.[13] And those public statements "consistently asserted that [the defendant] was focused on acquisitions with facilities that had clean regulatory records," while failing to disclose known information about contamination at an acquired facility. *Id.* at *1, 2. That is far afield from Plaintiffs' allegations here. *See Dang*, 750 F. Supp. 3d at 476 n.29 (distinguishing *Gauquie*). In *City of Pontiac General Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012), executives "made specific statements" about the very financial projections that were alleged to be false, and the plaintiffs alleged other facts showing that those executives received information about those projections.[14] None of these cases supports Plaintiffs' argument that Inari's mere general references to the AKS support an inference—much less a *strong* inference—that any Defendant knew that Inari was allegedly violating the AKS.

### 3. The Stock Sales and Compensation Do Not Support Scienter.

Plaintiffs next attempt to rely on their allegations about the Individual Defendants' stock

---

[13] Similarly, the complaint in *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 524-25 (E.D.N.Y. 2025), involved numerous detailed allegations about the defendants' access to information beyond public statements.
[14] *Skiadas* is irrelevant because it applied law unique to the FDA-approval context. 2020 WL 3268495, at *10.

sales and compensation, but they have no persuasive response to the overwhelming precedent finding such allegations insufficient to create a strong inference of scienter. *See* Mot. 30-32.

**First**, it is well-settled that the mere amount of the Individual Defendants' stock sales is not suspicious, particularly where, as here, those stock sales occurred over a three-year period. Mot. 31. Nothing in Plaintiffs' allegations suggests that the Individual Defendants' sales were "*unusually* large," *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (emphasis added), or "highly unusual in timing and amount" when compared to their "trading practices … before the class period or since the class period," *Zornberg v. NAPCO Sec. Techs., Inc.*, 778 F. Supp. 3d 516, 526 (E.D.N.Y. 2025).[15] Indeed, Plaintiffs make no attempt whatsoever to compare the Individual Defendants' stock sales to their "previous or subsequent sales," as Plaintiffs are required to do. *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444 (S.D.N.Y. 2005); *see* Mot. 31-32. Plaintiffs say (Opp. 27) "such allegations are not necessary," but even the one out-of-Circuit case they cite says that is true only in an "unusual" case where "there is no trading period" unaffected by the alleged fraud. *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007). Plaintiffs do not contend that exception applies here.[16]

**Second**, Plaintiffs challenge the timing of the Individual Defendants' sales (Opp. 25-26) but that too "is insufficient to generate a strong inference of scienter." *In re Skechers USA, Inc. Sec. Litig.,* 444 F. Supp. 3d 498, 524 (S.D.N.Y. 2020). That is particularly true when Plaintiffs do not deny that the Individual Defendants' sales were all conducted pursuant to predetermined 10b5-1 trading plans. Opp. 27-28. Plaintiffs argue a 10b5-1 plan does not undermine scienter when a defendant enters into the plan during the class period (*id.*), but Plaintiffs' own cases hold that is

---

[15] Contrary to Plaintiffs' mischaracterization, *Emps. Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 308-09 (2d Cir. 2015), relied on the "patterns" of insiders' stock sales to find scienter, not the amount of those sales.
[16] Even if it did, *Middlesex* found the stock sales alone "insufficient to establish scienter." 527 F. Supp. 2d at 1187.

true only when the plaintiff *also* "sufficiently alleges that the purpose of the plan was to take advantage of an inflated stock price." *Blanford*, 794 F.3d at 309; *see George v. China Automotive Sys., Inc.*, 2012 WL 3205062, at *9 (S.D.N.Y. Aug. 8, 2012) (holding plan does not undermine scienter when it "is entered into—or strategically amended—to take advantage of an inflated stock price or insider information"). Plaintiffs do not argue that they have alleged any facts suggesting that the Individual Defendants entered into their 10b5-1 plans "'strategically,'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), or that "the plans were themselves suspect," *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 764 (S.D.N.Y. 2018). To the contrary, it is undisputed that the Individual Defendants renewed plans yearly before and after the Class Period. Ex. 9 at 1, 4-5; Ex. 10 at 3; Ex. 11 at 3, 14.

*Third*, Plaintiffs' allegations about the Individual Defendants' compensation do not support a strong inference of scienter. Standing alone, incentive payments provide nothing more than the sort of inadequate allegations about "[m]otives that are common to most corporate officers." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Plaintiffs rely on cases in which the defendants allegedly "overstated" the very financial metrics that determined their compensation. *Gimpel v. Hain Celestial Grp., Inc.*, 2025 WL 2749562, at *14 (2d Cir. Sept. 29, 2025); *accord In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003). That is not the case here, where the alleged connection between the Individual Defendants' compensation and the alleged misleading statements is far less direct. In these circumstances, the Individual Defendants' compensation does not support a strong inference of scienter. Mot. 32.

### 4.    Plaintiffs' "Core Operations" Allegations Do Not Support Scienter.

Finally, Plaintiffs do not dispute that the "core operations" theory is not "independently sufficient to raise a strong inference of scienter." *In re SolarEdge Techs., Inc. Sec. Litig.*, 2024 WL

4979296, at *15 (S.D.N.Y. Dec. 4, 2024) (quotations omitted). That aside, Plaintiffs cannot invoke the theory merely by arguing that the Individual Defendants would have known about Inari's training and marketing expenses. Opp. 30. To support scienter, Plaintiffs must allege facts establishing that the Individual Defendants knew those marketing expenses *constituted illegal kickbacks*. *See Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42-43 (2d Cir. 2014) (no scienter when allegations did not "provide a factual basis for inferring that the problems … were apparent to [defendants]"). Plaintiffs plead no such facts.

### D. Plaintiffs Fail to Plead a Scheme Under Rule 10b-5.

Plaintiffs' defense of their "scheme" claim (Opp. 32-34) misunderstands Inari's argument. Inari does not argue, as Plaintiffs seem to think, that a scheme claim cannot be based on the same allegations as a misstatement claim. Rather, the problem with Plaintiffs' scheme claim is that it relies on the same *inadequate* allegations as their misstatement claim. Mot. 35. Plaintiffs' scheme claim should be dismissed because, as with their misstatement claim, they do not plead with particularity that Inari engaged in any fraudulent scheme. *Buhrke*, 726 F. Supp. 3d at 362-63.

### E. Plaintiffs Fail to Plead a Claim Under Sections 20(a) or 20A.

Plaintiffs concede that their Section 20(a) and 20A claims require an underlying predicate violation of the Exchange Act. Opp. 34. Because Plaintiffs fail to plead a predicate Section 10(b) violation, their Section 20(a) and 20A claims must be dismissed as well. Mot. 35.

## <u>CONCLUSION</u>

The Court should dismiss Plaintiffs' Complaint in full, with prejudice.

Dated: November 6, 2025                          Respectfully submitted,

Lisa Bugni (admitted *pro hac vice*)            */s/ Christopher E. Duffy*
KING & SPALDING LLP                              Craig Carpenito
50 California Street, Suite 3300                 Christopher E. Duffy
San Francisco, California 94111                  Alvina Pillai
Tel: (415) 318-1200                              KING & SPALDING LLP
LBugni@kslaw.com                                 1290 Avenue of the Americas
                                                 New York, New York 10104
                                                 Tel: (212) 556-2100
*Of counsel*:                                    CCarpenito@kslaw.com
Matthew V.H. Noller                              CDuffy@kslaw.com
Emily Yonan                                      APillai@kslaw.com

## Certificate of Word Count

I, Christopher E. Duffy, hereby certify that the foregoing memorandum of law is 20 pages in length, using the font and spacing requirements set forth in Rule 7.1(b) of the Local Rules of the United States District Court for the Southern District of New York, as stated on the record during the telephone conference held on August 13, 2025. Additionally, the memorandum of law contains 6,941 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and the certificate.

Dated: November 6, 2025

/s/ Christopher E. Duffy
Christopher E. Duffy